

Ira S. Sacks

Akerman LLP
666 Fifth Avenue
20th Floor
New York, NY  10103
Tel:  212.880.3800
Fax:  212.880.8965

Dir:  212.880.3827
ira.sacks@akerman.com

May 13, 2016

**VIA ECF**
Hon. Joseph F. Bianco
United States District Court Judge
United States District Court for the Eastern District of New York
100 Federal Plaza, Courtroom 920
Central Islip, NY 11722

       Re:     *Finkel v. Zizza & Associates Corp. et al.*
                 Case No. 12-cv-4108-JFB-GRB

Dear Judge Bianco:

      As Your Honor knows, we represent defendants Zizza & Associates Corp. ("Zizza Associates"), Bergen Cove Realty, Inc. ("Bergen") and Salvatore J. Zizza ("Mr. Zizza," and with Zizza Associates and Bergen, "Defendants") in the above-referenced action (the "Action).

      On December 21, 2015, the Court denied Plaintiff's and Defendants' motions for summary judgment (the "SJ Order").  On April 28, 2016, the Court denied Defendants' motion for reconsideration relating to a single issue decided in the SJ Order (the "Reconsideration Order," and with the SJ Order, the "Orders").

      Pursuant to 28 U.S.C. § 1292(b), Defendants respectfully request that the Court certify the Orders for interlocutory appeal because (i) the Orders involve controlling questions of law as to which there is substantial ground for difference of opinion, and (ii) an immediate appeal from the Orders will materially advance the ultimate termination of this litigation. 28 U.S.C. §1292(b).

      The following four issues are appropriate for immediate appellate review:

1.     Whether Plaintiff asserted a claim for controlled group liability against Bergen in this case.

2.     Whether Zizza Associates and Bergen allegedly evaded or avoided ERISA withdrawal liability or merely a judgment.

3.     Whether Bergen engaged in any "transaction" to evade or avoid withdrawal

{38201503;5}

Hon. Joseph F. Bianco
May 13, 2016
Page 2

---

        liability under 29 U.S.C. § 1392.

4.     Whether *Ret. Plan of the Unite Here Nat'l Ret. Fund v. Kombassan Holdings*, 629 F.3d 282 (2d Cir. 2010) ("*Kombassan*") governs the alter-ego analysis in this case.[1]

A court may certify an order for interlocutory appeal under 28 U.S.C. § 1292(b) where (i) the order presented for certification involves a controlling question of law, (ii) there is a substantial ground for difference of opinion regarding the controlling question of law, and (iii) the immediate appeal may materially advance the ultimate termination of the litigation. *Laurent v. Pricewaterhousecoopers LLP*, 2014 WL 251986, *1-2 (S.D.N.Y. Jan. 22, 2014); *Rep. of Colombia*, 619 F. Supp. 2d at 9; *New York Racing Ass'n, Inc. v. Perlmutter Pub., Inc.*, 959 F. Supp. 578, 583 (N.D.N.Y. 1997). Courts place particular weight on the third factor. *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013); *Rep. of Colombia*, 619 F. Supp. 2d at 9 ("Some courts primarily consider efficiency in determining whether to certify an order for interlocutory appeal").

This Court has "broad discretion to determine whether to certify an order for interlocutory review." *Laurent*, 2014 WL 251986, *1.

    **I.**    <u>**Controlling Questions of Law**</u>

Each of the above four issues is a pure question of law that the Second Circuit can decide quickly and cleanly with minimal, if any, reference to the record. *Capitol Records, LLC*, 972 F. Supp. 2d at 551. Indeed, the facts relating to the four issues are undisputed. Thus, these four questions are appropriate for immediate appellate review. *Laurent*, 2014 WL 251986, *1 (finding that order from which interlocutory appeal was sought made a "quintessentially legal determination" in interpreting a provision of ERISA); *Capitol Records, LLC*, 972 F. Supp. 2d at 551 ("controlling question of law" factor satisfied where the issue turned almost exclusively on a question of statutory interpretation and therefore reviewing court could decide it quickly and cleanly without having to study the record).

The four issues are not only pure questions of law, but they are also "controlling." The Second Circuit has recognized that resolution of an issue need not necessarily terminate an action in order to be "controlling" for purposes of 28 U.S.C. § 1292(b). *Fed. Housing Fin. Agency v. UBS Americas, Inc.*, 858 F. Supp. 2d 306, 337 (S.D.N.Y. 2012); *New York Racing Ass'n, Inc.*,

---

[1] This Court need not find that the requirements of 28 U.S.C. § 1292(b) have been met for each of these issues. *Rep. of Colombia v. Diageo North Am. Inc.*, 619 F. Supp. 2d 7, 10 n.1 (E.D.N.Y. 2007). Rather, once this Court determines that a single issue addressed in the Orders satisfies 28 U.S.C. § 1292(b), the Court has the discretion to certify the Orders for immediate appeal. *Id.* Once the Orders are certified for immediate appeal, the Second Circuit is free to consider any issue raised in the Orders if it accepts the appeal. *Id.*

959 F. Supp. at 583.[2]  Rather, "[i]t only has to be an issue that could materially affect the outcome of the case." *New York Racing Ass'n, Inc.*, 959 F. Supp. at 583. *See Fed. Housing Fin. Agency*, 858 F. Supp. 2d at 337 ("Rather, it is enough to satisfy the statute's first prong that the issue is one 'that may importantly affect the conduct of [the] action'").  That being said, the resolution of these issues will in our view terminate the Action.

As discussed in more detail below, resolution of these issues would clearly materially affect the outcome of the case.  A finding for Defendants on the first issue would eliminate one claim from the case and deprive the Court of subject matter jurisdiction.  A finding for Defendants on the second or third issues would eliminate additional causes of action from the case.  A finding for Defendants on the fourth issue would prevent the parties from trying this case under the wrong legal standard, and would likely result in the elimination of another two claims after renewed motions for summary judgment.  Thus, not only do these issues materially affect the outcome of this case, but reversal may *terminate* the action due to the absence of subject matter jurisdiction. *Fed. Housing Fin. Agency*, 858 F. Supp. 2d at 338 (finding question of law to be "controlling" where the appeal might significantly narrow the proof that the parties would be able to present at trial, saving the parties and the public time and money); *New York Racing Ass'n, Inc.*, 959 F. Supp. at 583 (certifying order for interlocutory appeal where the relevant issues were central to the court's analysis and materially affected the outcome of the case).

In sum, these issues involve controlling questions of law and therefore the first requirement of 28 U.S.C. § 1292(b) is satisfied.

## II.   Substantial Ground for Difference of Opinion

The second requirement of 28 U.S.C. § 1292(b) is satisfied here because there is conflicting authority on these issues and/or these issues are particularly difficult and of first impression for the Second Circuit. *Capitol Records, LLC*, 972 F. Supp. 2d at 551.

### A. Whether Plaintiff asserted a claim for controlled group liability against Bergen in this case.

With regard to the first issue, we refer the Court to Defendants' memoranda of law in support of Defendants' Motion for Reconsideration (Doc. Nos. 112 and 114).  Those briefs fully demonstrate that Plaintiff never asserted a claim for controlled group liability against Bergen and that Plaintiff's attempt to add that claim through his summary judgment papers was improper.  We will not unnecessarily burden the Court by repeating the arguments and authorities addressed in those briefs.  Simply put, Plaintiff knew how to assert a controlled group liability claim, did so in the past, and did not do so in this Action.

---

[2] On the flip side, a question of law is certainly "controlling" if reversal of the district court's order *would* terminate the action. *Laurent*, 2014 WL 251986, *1.

Hon. Joseph F. Bianco
May 13, 2016
Page 4

---

In the Reconsideration Order, the Court cited *I.L.G.W.U. Nat'l Ret. Fund v. ESI Group, Inc.*, 2002 WL 999303 (S.D.N.Y. May 15, 2002) ("*ESI*") as supporting that Plaintiff asserted a claim for controlled group liability against Bergen in this case. The Court stated that this decision holds that "controlled group liability is a subset of withdrawal liability." Tr. 3:21–4:3. We respectfully disagree.[3]

*ESI* did not concern whether a plaintiff had pled a controlled group theory in its complaint. Indeed, there is no suggestion in the decision that the defendant challenged whether that claim existed in the case and it appears that all parties agreed that claim was part of the case. Instead, the issues in *ESI* were (i) whether certain entities were under "common control" under the relevant treasury regulations, and (ii) whether, for purposes of the timeliness of initiating arbitration, notice to one member of a controlled group is notice to members who claim to have severed their relationship with the controlled group prior to the time of notice. *ESI* does not hold that any lawsuit involving withdrawal liability automatically includes a claim for controlled group liability, and it does not support that Plaintiff asserted a claim for controlled group liability against Bergen in this case.

### B. Whether Zizza Associates and Bergen allegedly evaded or avoided ERISA withdrawal liability or merely a judgment.

With regard to the second issue, the Supreme Court's decision in *Peacock v. Thomas*, 516 U.S. 349 (1996) is on point. In *Peacock*, a plaintiff that had obtained an ERISA judgment in federal court against his former employer for benefits due under the employer's pension benefits plan filed a second lawsuit in federal court, purportedly under ERISA, claiming that a shareholder and officer of the former employer was personally liable (i) for siphoning and fraudulently conveying assets from the employer to prevent satisfaction of the ERISA judgment, and (ii) under a veil-piercing theory. Plaintiff filed the second lawsuit after he had been unsuccessful in collecting on the ERISA judgment from the former employer. The Supreme Court held that the federal court did not have subject matter jurisdiction over the lawsuit for three main reasons:

First, the Supreme Court rejected plaintiff's suggestion that the lawsuit arose under ERISA: the lawsuit did not arise under ERISA because it alleged **no violation of ERISA or of the plan**. *Peacock*, 516 U.S. at 353. Indeed, the wrongdoing alleged in the complaint occurred some four to five years after the employer's ERISA plan was terminated, and the plaintiff conceded that the defendant's alleged wrongdoing did not occur with respect to the administration or operation of the plan. *Id.*

---

[3] We also respectfully disagree with the Reconsideration Order to the extent that it found that (i) Defendants were on notice that a controlled group theory potentially existed (Tr. 3:20-21), (ii) the prayer for relief in the Second Amended Complaint can be said to include a controlled group claim (Tr. 4:16-23), and (iii) interrogatories or deposition questions have any relevance (Tr. 4:24–5:10).

Hon. Joseph F. Bianco
May 13, 2016
Page 5

---

Second, the Supreme Court observed that there is **no** "*provision of ERISA that provides for imposing liability for an extant ERISA judgment against a third party*." *Id.* (emphasis added) (citing *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 833 (1988) ("ERISA does not provide an enforcement mechanism for collecting judgments…")). Consistent with that principle, the Supreme Court held that "[p]iercing the corporate veil is not itself an independent ERISA cause of action, but rather is a means of imposing liability on an underlying cause of action." *Id.* at 354 (internal quotations omitted). Thus, "[e]ven if ERISA permits a plaintiff to pierce the corporate veil to reach a defendant not otherwise subject to suit under ERISA, [plaintiff] could invoke the jurisdiction of the federal courts only by independently alleging a violation of an ERISA provision or term of the plan." *Id*.

Third, the Supreme Court held that federal courts do not possess ancillary jurisdiction over new actions in which a federal judgment creditor seeks to impose liability for a money judgment on a person not otherwise liable for the judgment. *Id.* at 351. *See id.* at 357 ("We have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment").[4]

*Peacock* is consistent with the proposition that Defendants argued in their motion to dismiss and motion for summary judgment: that the prior judgment against Primary Capital Resources, Inc., Zizza & Company, Ltd. ("Zizza Company") and Hall-Mark Electrical Supplies Corp. ("Hall-Mark") (the "Prior Judgment") is merely a "judgment" and not withdrawal liability for ERISA purposes. We are aware of no Second Circuit decision interpreting *Peacock* differently. On the contrary, the Second Circuit has confirmed that ERISA does not create federal law on veil-piercing or on the enforcement of judgments generally. *Romney v. Lin*, 105 F.3d 806, 811 (2d Cir. 1997).

The Second Circuit has also interpreted *Peacock* as having "rejected the notion that wrongdoing that occurs after an ERISA plan has been properly terminated can give rise to a claim under § 502(a)(3)." *Carlson v. Principal Fin. Group*, 320 F.3d 301, 308 (2d Cir. 2003).

---

[4] Two courts in the Second Circuit applying the holding of *Peacock* are: *Romita v. Anchor Tank Lines, LLC,* 2013 WL 432903, *3 (S.D.N.Y. Feb. 1, 2013) (plaintiffs previously obtained a judgment against predecessor entities of defendants and brought suit under ERISA claiming that defendants were liable for the judgment obtained against the predecessor entities; court granted a motion to dismiss for lack of subject matter jurisdiction on the grounds that (i) ERISA did not provide the court with jurisdiction to impose liability for an extant ERISA judgment against a third party; (ii) plaintiffs failed to allege that defendants committed any independent violation of ERISA or the terms of the employee benefit plan; and (ii) ancillary jurisdiction was improper because the lawsuit sought to impose an obligation to pay an existing federal judgment on defendants, who were not already liable for that judgment); *Gesualdi v. Danielle Rigging, Inc.,* 2011 WL 2516521, *2 (E.D.N.Y. June 23, 2011) (plaintiff brought successor and alter-ego claims under ERISA to enforce a previously obtained judgment against the defendant's alleged predecessor; court held that *Peacock* applied and dismissed the claim for lack of subject matter jurisdiction).

Hon. Joseph F. Bianco
May 13, 2016
Page 6

---

*See* Plaintiff's Second Amended Complaint, ¶¶ 2, 7, 61, 66 (specifying § 502(a)(3) as Plaintiff's bases for jurisdiction and authority to bring the evade and avoid claims).

Nor does the fact that *Peacock* dealt with an alter ego claim – as opposed to an evade/avoid claim – matter. *Peacock* would have no teeth if a plaintiff could circumvent that ruling by simply characterizing its complaint as one for evade or avoid liability. Indeed, that is precisely what Plaintiff has done here. At bottom, Plaintiff's alter ego claims and evade/avoid claims are both efforts to collect the Prior Judgment. But the Supreme Court has held that there is ***no provision of ERISA that provides for imposing liability for an extant ERISA judgment against a third party***. We are confident that the Second Circuit would find Plaintiff's evade/avoid claims to be an improper attempt to turn 29 U.S.C. § 1392 into the collection mechanism for which ERISA does not provide. *I.L.G.W.U. Nat. Ret. Fund v. Meredith Grey, Inc.*, 190 F.R.D. 324, 328 (S.D.N.Y. 1999) ("The 'evade or avoid' provision, 29 U.S.C. § 1392(c), does not, in and of itself, create a cause of action").

We respectfully submit that the SJ Order expanded ERISA far beyond that intended by Congress. Even if this Court disagrees with Defendants, it is important that the Second Circuit be given an opportunity to weigh in on such an important issue. *Capitol Records, LLC*, 972 F. Supp. 2d at 553 (granting certification where resolution of the issue would have far-reaching implications).

**C. Whether Bergen engaged in any "transaction" to evade or avoid withdrawal liability under 29 U.S.C. § 1392.**

As for the third issue, it is clear that, with regard to Bergen, Plaintiff cannot identify any "transaction" that seeks to evade or avoid ERISA withdrawal liability. The facts and law as set forth in Defendants' briefs on the summary judgment motions makes that clear (Doc. Nos. 87, 98, 103). The only possible "transactions" identified by Plaintiff are that Mr. Zizza (i) caused improper expense payments to be made by Zizza Company, and (ii) "redirected" fee income from BAM to Zizza Associates to Zizza Company's detriment. Even assuming the truth of these allegations, ***they completely fail to raise any issue of fact as against Bergen***. Nor did this Court in the SJ Order identify any transaction involving Bergen. Tr. 11:22–12:24, 13:15–23, 20:7-22, 21:24–22:24. The fact that Bergen is conducting business, in and of itself, is not a "transaction" for purposes of 29 U.S.C. § 1392. It is clear that assets need to be transferred. *See LoPresti v. Pace Press Inc.*, 2011 WL 2150458, *3 (S.D.N.Y. May 31, 2011) ("Accordingly, any ***assets that were transferred*** in order to 'evade or avoid liability,' as well as ***the parties to whom they were improperly transferred***, must be within the reach of [29 U.S.C. § 1392(c)]") (internal quotations omitted) (emphasis added) (quoting *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993)).

**D. Whether Kombassan governs the alter-ego analysis in this case.**

With regard to the fourth issue, it is likely that the Second Circuit would find that *Kombassan* does not govern the alter-ego analysis here. *Kombassan* is used to determine

_____

whether a third party is the alter ego *of the employer obligated to make contributions to the plan or fund*. "One effect of the alter ego doctrine is to 'provide [] an analytical hook *to bind a non-signatory to a collective bargaining agreement*." *Kombassan*, 629 F.3d at 288 (emphasis added). *See Lihli Fashions Corp., Inc. v. N.L.R.B.*, 80 F.3d 743, 747 (2d Cir. 1996) ("If two companies are deemed alter egos of each other, then each is bound by the collective bargaining agreements signed by the other").

Here, Plaintiff is not seeking to bind Bergen or Zizza Associates to any collective bargaining agreement, nor find that either is the alter ego of Hall-Mark. We are aware of no decision by the Second Circuit applying *Kombassan* this broadly. In fact, the Second Circuit has cautioned against extending alter ego liability in the ERISA context too far. *See Burke v. Hamilton Equip. Installers, Inc.*, 2006 WL 3831380, *11 (W.D.N.Y. Oct. 16, 2006) ("Plaintiffs argue that Professional should be held liable because it is somehow responsible for the obligations of Equipment, the alter ego [of the contributing employer]. However, plaintiffs have failed to cite any cases (nor has this Court's research uncovered any cases) where an entity was held liable for the pension contributions *of the alter ego*."), *aff'd* 528 F.3d 108 (2d Cir. 2008) ("Other than familial relationships among the principals of the firms, Professional has no connection to Installers' [the contributing employer] ERISA liability or to the circumstances surrounding the founding of Equipment [an entity created in part to avoid Installers' obligations under the CBA]…Professional therefore had nothing to do with Installers' incurring ERISA liability or with Equipment's creation as Installers' alter ego.").

In sum, there is substantial ground for difference of opinion regarding these issues, and therefore the second requirement of 28 U.S.C. § 1292(b) is satisfied. *Fed. Housing Fin. Agency*, 858 F. Supp. 2d at 338 (granting certification even though there were only "weak" grounds for a difference of opinion); *New York Racing Ass'n, Inc.*, 959 F. Supp. at 583 (certifying order for interlocutory appeal where there was "clearly room for difference of opinion" on the issues presented).

### III. Materially Advance the Ultimate Termination of the Litigation

There is no question that an immediate appeal will materially advance the ultimate termination of this case. As discussed above, a finding for Defendants on the first, second and/or third issues would eliminate certain causes of action from this case. A finding for Defendants on the fourth issue would prevent the parties from trying this case under the wrong legal standard, and would likely result in the elimination of another two claims after renewed motions for summary judgment. Thus, the time and expense of trial will be dramatically reduced.

What is more, a finding for Defendants on the first issue will terminate this Action completely because the Court will not have subject matter jurisdiction under *Peacock*. It is well-settled that the Court *must* consider the issue of subject matter jurisdiction at this stage of the proceedings. "Issues relating to subject matter jurisdiction may be raised at any time, even on appeal, and even by the court *sua sponte*. If a court perceives at any stage of the proceedings that it lacks subject matter jurisdiction, then it must take proper notice of the defect by

Hon. Joseph F. Bianco
May 13, 2016
Page 8

---

dismissing the action." *Cave v. East Meadow Union Free School Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) (citing *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 740 (1976)) (internal citation omitted). Indeed, the Supreme Court has "noted the existence of an 'inflexible' rule that 'without exception' requires federal courts, on their own motion, to determine if jurisdiction is lacking." *Id*. (citing *Mansfield, Coldwater & Lake Michigan Railway Co. v. Swan*, 111 U.S. 379 (1884)). *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court *must* dismiss the action") (emphasis added).

As in *Peacock*, (i) Plaintiff filed a previous lawsuit arising under ERISA and obtained a judgment against employers who had failed to make contributions to an employee benefit plan; (ii) when Plaintiff was unable to collect on that judgment, he filed this lawsuit seeking to impose the obligation to pay the earlier judgment on three parties not already liable for that judgment; (iii) Plaintiff's Second Amended Complaint does not allege any independent violation of ERISA or of the plan; and (iv) this lawsuit is founded not only upon different facts than the prior ERISA suit, but also upon entirely new theories of liability. Furthermore, like in *Peacock*, the wrongdoing alleged in the Second Amended Complaint occurred after (i) Hall-Mark ceased operations and withdrew from the fund, (ii) Hall-Mark failed to remit payment for its alleged withdrawal liability, and (iii) judgment was entered in the prior action. At bottom, "[o]ther than the existence of the ERISA judgment itself, this suit has little connection to the ERISA case. This is a new action based on theories of relief that did not exist, and could not have existed, at the time the court entered judgment in the ERISA case." *Peacock*, 516 U.S. at 359. Thus, a finding for Defendants on the first issue requires dismissal of this Action.

Moreover, even if Defendants are unsuccessful on appeal, that will still materially advance this case. *Fed. Housing Fin. Agency*, 858 F. Supp. 2d at 338 (finding that, even if the Second Circuit affirmed, an immediate appeal would still materially advance the ultimate termination of the litigation because such a decision "is likely to significantly affect the parties' bargaining positions and may hasten the termination of this litigation through settlement").

Finally, an immediate appeal will not delay this Action. The Court indicated during the December 21, 2015 telephone conference that it does not expect this matter to proceed to trial until late 2016, given the Court's calendar. Nor can Plaintiff claim that it is prejudiced or that it needs to get to trial quickly. As demonstrated in Defendants' letter, filed March 23, 2016 (Doc. No. 116), Plaintiff's counsel has made no effort to move this Action along. His delays in preparing the joint pretrial order have led to multiple adjournments of the date for submission of that document. Moreover, Defendants will seek expedited review in the Second Circuit. *Fed. Housing Fin. Agency*, 858 F. Supp. 2d at 340-341.

In sum, Defendants respectfully request that the Court certify the Orders for immediate appeal. As the Court knows, Defendants repeatedly have respectfully disagreed with the Court's view of the controlling law applicable to this Action. As the Court also knows, this is not the usual ERISA case where a Union sues an employer, leaving deep pockets on both sides. In our view, §1292(b) certification is the most efficient means of advancing and disposing of this case.

Hon. Joseph F. Bianco
May 13, 2016
Page 9

_____

       We thank the Court in advance for its consideration.

                                       Respectfully,

                                       *s/ Ira S. Sacks*

                                       Ira S. Sacks

cc:    David R. Hock, Esq. (by email)