```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DR. GERALD FINKEL, AS CHAIRMAN OF
THE JOINT INDUSTRY BOARD OF THE
ELECTRICAL INDUSTRY,                                           REPORT &
                                                               RECOMMENDATION
                    Plaintiff.                                 12-CV-4108 (JS) (GRB)

         -against-

ZIZZA & ASSOCIATES CORP., BERGEN COVE
REALTY, INC., AND SALVATORE J. ZIZZA,

                    Defendants.
------------------------------------------------------------X
```

**GARY R. BROWN, United States Magistrate Judge:**

In this highly-contested litigation arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, aimed at collecting withdrawal liability, defendants Zizza & Associates Corp. ("Zizza & Associates"), Bergen Cove Realty, Inc. ("Bergen Cove"), and Salvatore J. Zizza ("Zizza"), once again, move for summary judgment, seeking to dispose of claims against defendant Bergen Cove, principally based upon an argument that such claims are barred by the applicable statute of limitations. Docket Entry ("DE") 179. Because defendants rely on communications which affirmatively misrepresented the relationship between Zizza and Bergen Cove in an ill-conceived attempt to attribute constructive knowledge of that relationship to the plaintiff Dr. Gerald Finkel, the undersigned respectfully recommends that the motion be DENIED in all respects.

## PROCEDURAL HISTORY

Plaintiff commenced this action by filing a complaint on August 16, 2012, seeking to collect $358,852.05 in withdrawal liability and statutory damages against Zizza and Zizza &

1

Associates, resulting from a judgment entered in a 2007 case. *See generally* Compl., Docket Entry ("DE") 1. The 2007 case had been filed against three entities constituting a "controlled group." *Id*. at 1. On April 12, 2013, plaintiff filed an amended complaint adding new factual allegations, which rendered a motion to dismiss moot. DE 14-15. The parties briefed a second motion to dismiss, which was denied in a detailed oral decision by the Honorable Joseph F. Bianco, who also rejected an application to convert that motion to one for summary judgment. DE 33, 35. Defendants answered and discovery proceeded apace. DE 36.

In May 2014, following additional motion practice, plaintiff obtained leave to file a second amended complaint, this time adding Bergen Cove as an additional defendant, allegedly "because the transfer of substantially all of the business of Zizza & Co. to Zizza & Associates and later to Bergen Cove constituted a transaction or transactions to evade and avoid the payment of withdrawal liability or were fraudulent transfers." DE 50. Judge Bianco denied defendants' motion for Federal Rule of Civil Procedure 11 sanctions—which motion was filed at a time when discovery was still ongoing—in an oral ruling on November 25, 2014. DE 73 at 16 (finding that "there's an insufficient basis for any type of sanction" and noting that "the Court granted plaintiff's request to file the pleading that the defendants now challenge").

Cross-motions for summary judgment followed. In an oral ruling, Judge Bianco denied the cross-motions, including one as to plaintiff's claim under ERISA Section 4212(c), 29 U.S.C. § 1392(c), noting that "if plaintiff's evidence is credited and all the reasonable inferences from the record drawn in plaintiff's favor, a reasonable fact finder can conclude that Mr. Zizza redirected the business from BAM, [Inc.,] that that is a transaction [as defined in the statute], and again could conclude potentially that Zizza & Company could avoid -- it was done to avoid paying withdrawal liability." DE 110 at 12. As a result, Judge Bianco found that "defendants' motion

2

for summary judgment on Section 4212(c) on those claims must be denied because there are disputed issues of fact that cannot be resolved based upon the current record." *Id.* at 13.  A motion to reconsider that determination was similarly denied.  DE 120.  Defendants sought a certificate of appealability, having identified four issues which, they argued were "appropriate for immediate appellate review."  DE 121.  On July 31, 2017, Judge Bianco denied that motion.  DE 125.  In rejecting that motion, in connection with the question of "whether Zizza Associates and Bergen allegedly evaded or avoided ERISA withdrawal liability or merely a judgment," Judge Bianco determined that:

> *Peacock* [*v. Thomas,* 516 U.S. 349, (1996)], as well as the Second Circuit precedent applying *Peacock* made clear that district courts do not have subject matter jurisdiction over claims based on theories of alter ego or successor liability that involved another entity's ERISA violation -- and I emphasize this part -- unless some independent ground for federal jurisdiction exists.  In this particular case, first of all, there is the control group liability which is an independent ground and, I believe, that the evade or avoid liability is itself under Section 1392(c), an independent ground. There is no basis to dispute that, because . . . the standard for evade or avoid liability [is] set forth in a number of opinions. . . .[W]hen a contributing employer enters the transaction with the principle purpose of  the transaction to evade or avoid withdrawal liability under the statute, [the Second Circuit has]  made clear that it also applies to parties to whom the improper transfer is made -- can also be liable and creates and, specifically, has ruled creates subject matter jurisdiction with respect to those parties.  That's set forth in a case called *IUE AFL/CIO Pension Fund vs. Herman*, 9 F.3d 1049 ([2d] Cir. 1993). Herman continues to be controlling, it's not overruled by *Peacock* in any way. Other courts have, citing *Herman*, come to the same conclusion that *Peacock*'s not applicable when an independent cause of action for evade or avoid liability, including against the parties [to which the assets were transferred] are being sued.

DE 128 at 8-11 (also noting, as a factual matter, that "in my view, based upon this record, there is certainly a disputed issue of fact of whether or not there are transactions that may involve Bergen Cove that may have taken place in order to evade and avoid withdrawal liability").  At that time, the parties had submitted a pre-trial order, based upon which submission Judge Bianco anticipated that the trial would take one week and set an October 2017 trial date.  *Id*. at 13-15.

3

Following a flurry of pre-trial filings, motions and rulings, the parties submitted trial briefs, proposed *voir dire* and proposed jury instructions in anticipation of July 2018 trial date. In a "supplemental" trial brief, counsel for defendants identified two issues, which, it asserted, were dispositive and should be addressed in advance of trial.[1] DE 170. First, defendants claimed that the controlled-group claim against Bergen Cove is time-barred and, if that claim were dismissed, the Court lacks subject-matter jurisdiction.[2] *Id.* at 3-4. The instant motion, briefing these purportedly unexplored, dispositive issues, was fully briefed and filed by October 19, 2018. DE 179. In July 2019, the case was reassigned to the Honorable Joanna Seybert, and Judge Seybert referred the instant motion to the undersigned on October 8, 2019. Electronic Order dated Oct. 8, 2019.

## FACTS

The following facts have either been expressly admitted in the parties Local Rule 56.1 statements, or have been ineffectively disputed such that they are deemed admitted, following appropriate review of the record, for the purposes of this motion. *See Southside Hosp. v. New York State Nurses Ass'n*, No. CV 15-2282 (JS)(GRB), 2017 WL 9485721, at *2–3 (E.D.N.Y. Jan. 26, 2017), *report and recommendation adopted*, 2017 WL 837673 (E.D.N.Y. Mar. 3, 2017), *aff'd*,

---

[1] After review of the massive submission made on this, their second summary judgment motion, counsel's explanation for this eleventh hour filing – that during a review of an unrelated 2014 district court decision they "were reminded of two significant and dispositive legal issues" – proves less than satisfactory. DE 170 at 1. Indeed, the fact that defendants' counsel – by admission – had previously raised this very issue in this case undermines this assertion and suggests that defendants were merely seeking a proverbial second bite at the apple. DE 170 at 1-2 ("Defendants argued both at summary judgment . . . and on their motion for reconsideration of the Court's order denying the parties' cross motions for summary judgment . . . that any claim for controlled group liability against Bergen Cove is time-barred") (citing DE 98 at 9-10 (arguing that claims against Bergen Cove were time barred under 29 U.S.C. §1451(f)(2)).

[2] Remarkably, the subject-matter jurisdiction claim seems premised on the assertion that "under Peacock, Plaintiff's 'evade and avoid' claims and alter-ego claims do not arise under ERISA." DE 170 at 5. As discussed, this argument seems to have been fully disposed by Judge Bianco's decision in connection with the motion for interlocutory appeal. *See* DE 128 at 8-11.

732 F. App'x 53 (2d Cir. 2018).

In 2007, Plaintiff was pursuing the collection of liability incurred by an entity known as Hall-Mark Electrical Supplies Corp. ("Hall-Mark") as against controlled group members and investigating the ownership structure of potential controlled group members. Defs.' 56.1 Statement ¶¶ 10-11, DE 182; Pl.'s 56.1 Response ¶¶ 10-11, DE 187 (collectively Defs.' & Pl.'s 56.1 Statements"). Hall-Mark's former counsel, Deborah A. Hulbert ("Hulbert"), informed plaintiff in November 2007 that Hall-Mark had no assets with which to satisfy the demand for payment of withdrawal liability, that the company had no control over its finances and all of its assets had been seized. Defs.' & Pl.'s 56.1 Statements ¶¶ 14-15.

On June 13, 2007, plaintiff commenced a lawsuit against Hall-Mark in this District, *Finkel v. Hall-Mark Electrical Supplies Corp.*, No. 07-CV-2376-NGG ("Prior Action"). *Id.* at ¶ 16. In the amended complaint of the Prior Action, plaintiff sought, *inter alia*, a judgment "[ordering and compelling [Hall-Mark] to provide . . . controlled group information. . ." *Id.* at ¶ 22. On October 23, 2009, this Court entered a default judgment against (i) Hall-Mark, alone, in the amount of $62,996.01, and (ii) Hall-Mark, Primary Capital and Zizza & Company, jointly and severally, in the total amount of $358,862.05 (consisting of $273,209.00 in withdrawal liability, $23,811.45 in statutory interest, $54,641.50 in statutory liquidated damages, $6,601.80 in attorneys' fees and $598.00 in litigation costs). *Id.* at ¶ 27.

In response to plaintiff's demands for control group information, on January 23, 2008, Hulbert wrote to David R. Hock ("Hock"), plaintiff's then-outside counsel, advising that (i) Mr. Zizza had "ownership interests in several other entities," (ii) "Hall-Mark was not a member of a controlled group of corporations or trades or businesses under common control," and (iii) Hall-Mark was not a member of a brother-sister controlled group because "none of the other entities in

5

which Mr. Zizza has an ownership interest is also owned by four or fewer other natural persons, trusts or estates." *Id.* at ¶ 31.

Shortly thereafter, along with a second letter, dated March 11, 2008, Hulbert provided a list of businesses in which Zizza had an ownership interest and the percentage of such interest. *Id.* at ¶ 34. As relevant herein, that list stated that Zizza owned 76% of Bergen Cove. *Id.* at ¶ 35. The list makes no reference to the remaining ownership interests in any of the businesses referenced and does not disavow the earlier statement that the businesses identified were not "owned by four or fewer other natural persons." *Id.* at ¶ 36.

On October 17, 2011, during a deposition of Zizza as part of post-judgment discovery in the Prior Action, he acknowledged that he owned "70 percent" of Bergen Cove, while his sons owned "10 percent each." *Id.* at ¶¶ 52-54. As part of his April 2013 motion to dismiss, Zizza submitted a declaration, in which he stated, *inter alia*, that "I have decided to wind down Zizza & Associates and perform my services directly at Bergen [Cove]." DE 10. By April 2014, Zizza filed a declaration swearing that Bergen Cove had "no relationship" with Hall-Mark or Zizza and Associates. DE 65 at ¶ 4. In support of defendants' Rule 11 sanctions motion, Zizza submitted a declaration which provided that "When I moved to Bergen Cove, I did not take any assets, in-process consulting work, or corporate opportunities of Zizza & Associates with me*.*" *Id*. at ¶ 13. There is apparently evidence that raises questions about such assertions, which though not required for the resolution for this motion, may present additional issues for trial. *See, e.g.*, DE 73 at 12.

## DISCUSSION

*1. Standard of Review*

The instant motion for summary judgment is decided under the oft-repeated and well understood standard for review of such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor,* 97 F. Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd sub nom. Bartels v. Schwarz,* 643 F. App'x. 54 (2d Cir. 2016), which discussion is incorporated by reference herein.

*2. The Limitations Period*

Section 1451(f) of Title 29, United States Code, applicable to withdrawal liability, provides as follows:[3]

> An action under this section may not be brought after the later of—
>
> (1) 6 years after the date on which the cause of action arose, or
> (2) 3 years after the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action; except that in the case of fraud or concealment, such action may be brought not later than 6 years after the date of discovery of the existence of such cause of action.

29 U.S.C. § 1451(f). In *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of California,* 522 U.S. 192, 198 (1997), the Supreme Court construed this section as follows:

> Suit under § 1451 must be filed within the longer of two limitations periods: "6 years after the date on which the cause of action arose," § 1451(f)(1), or "3 years after the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action," § 1451(f)(2). The Act extends the latter period to six years "in the case of fraud or concealment." *Ibid.*

*Id.*

---

[3] Plaintiff argues that the Court should apply the 20-year statute of limitations set forth in N.Y. C.P.L.R. § 211(b) for the collection of judgments. Pl.'s Br. 9, DE 184-3. However, the undersigned finds that applying the shorter ERISA statute of limitations is appropriate here, as the ERISA cause of action represents the sole basis for the exercise of original jurisdiction. *See generally* Am. Compl., DE 14.

Applying the three-year period running from "the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action" contained in subsection 1451(f)(2), the question is a relatively simple one: should this period commence from the date of the Hulbert letters, rendering the action untimely, or from the date of Zizza's 2011 deposition, in which he more clearly explained the ownership structure of Bergen Cove?

The undisputed facts in the matter compel a clear conclusion. In the January 2008 Hulbert letter, in response to the plaintiff's demand for control group information, counsel for Zizza affirmatively misrepresented the ownership structure of Bergen Cove, representing to counsel for plaintiff that "none of the other entities in which Mr. Zizza has an ownership interest is also owned by four or fewer other natural persons, trusts or estates," and denying that Bergen Cove was part of a controlled group. Defs.' & Pl.'s 56.1 Statements ¶ 31. Hulbert's supplement to this letter, issued a month later, failed to dispel this falsehood. While the supplemental letter indicated that Zizza owned 76% of Bergen Cove, it did not provide any clue that the earlier submission was wrong and misleading. *Id.* at ¶¶ 34-36. Indeed, plaintiff correctly asserts that defendants' misrepresentation concerning Bergen Cove's ownership structure could well be construed as a violation of 29 U.S.C. § 1399(a), which requires an employer to "furnish such information as the plan sponsor reasonably determines to be necessary to enable the plan sponsor to comply with [ERISA] requirements." Pl.'s Br. 4, 13, 18; *cf. Cent. States, Se. & Sw. Areas Pension Fund v. Rogers,* 843 F. Supp. 1135, 1141 (E.D. Mich. 1992) ("In general, plan sponsors have no way of knowing all the other possible entities commonly owned by a participating corporation. In contrast, stockholders and officers of corporations certainly are aware of their holdings."), *aff'd,* 14 F.3d 600 (6th Cir. 1993).

8

Indeed, defendants should not be permitted to benefit from their own misrepresentation. Furthermore, viewed through the lens of a summary judgment motion, it is a disputed fact that plaintiff "should have known" that Bergen Cove was potentially liable for withdrawal liability based upon plaintiff's incomplete and misleading 2008 disclosures. Therefore, the date of the misleading submissions by defendants cannot be used as a trigger for the limitations period here; rather, Zizza's 2011 deposition, during which he more accurately disclosed the ownership structure is the most pertinent date.

This outcome is consistent with similar ERISA decisions. *See, e.g.*, *Chaaban v. Criscito*, No. 08-CV-1567 (GEB), 2011 WL 322556, at *11 (D.N.J. Jan. 31, 2011), *aff'd*, 468 F. App'x 156 (3d Cir. 2012) (applying six year statute of limitations where defendant "concealed his fraudulent conduct and therefore tolled the statute of limitations"); *Stier v. Satnick Dev. Corp.*, 974 F. Supp. 436, 440 (D.N.J. 1997) (statute of limitations tolled where defendant made "misstatements" and there was, as here "no basis on which the plaintiffs could have discovered the misstatements from the face of the reports"). Here, the Court need not decide that the six year statute applies as the complaint was filed within three years of the 2011 deposition, though the facts could well justify application of the six year statute. As the Second Circuit has held in the context of equitable tolling (which is embedded in the statutory language here), the statute should be tolled "where the facts show that the defendant engaged in conduct . . . that concealed from the plaintiff the existence of the cause of action." *Cerbone v. Int'l Ladies' Garment Workers' Union,* 768 F.2d 45, 48 (2d Cir. 1985). In fact, defendants could be deemed to be estopped from raising the statute of limitations as a defense, where, as here, "(1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment." *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488,

9

1493 (2d Cir. 1995). Under all these authorities and principles, defendants are not entitled to summary judgment.[4]

The cases relied upon by defendants do not compel a different conclusion. For example, the decision in *Cent. States, Se. & Sw. Areas Pension Fund v. Mississippi Warehouse Corp.*, 853 F. Supp. 1053, 1059 (N.D. Ill. 1994) is plainly inapplicable, as the court determined that plaintiff there "should have known that it had a cause of action against" the subject control group member.[5] As noted, there is no basis to conclude that plaintiff should have known about its cause of action against Bergen until the 2011 deposition. Moreover, defendants' multiple citations to *Cent. States, Se. & Sw. Areas Pension Fund v. Navco,* 3 F.3d 167 (7th Cir. 1993), containing a single caveat that the decision was "abrogated on *other* grounds," reflects both an unconventional use and a less than perfect understanding of those words. See Defs.' Br. 6-10; *see Bay Area Laundry & Dry Cleaning Pension Tr. Fund*, 522 U.S. at 206, *abrogating Navco*, 3 F.3d at 172-73.

Thus, defendants' motion for summary judgment should be denied.

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that defendants' second motion for summary judgment be DENIED in its entirety.[6]

---

[4] Finding the motion as to the ERISA claim to be meritless, the Court need not reach defendants' arguments concerning ancillary jurisdiction as to the remaining claim. *See generally* Defs.' Br. 19, 21, DE 183.

[5] In fact, several of the quotations from this case by defendants are non-contextual and apply to interpretation of subsection (f)(1). *See Cent. States, Se. & Sw. Areas Pension Fund*, 853 F. Supp. at 1059.

[6] Going forward, defendants' counsel would be well advised to more carefully consider its positions in this litigation, which has been unfairly delayed by aggressive litigation tactics.

**OBJECTIONS**

A copy of this Report and Recommendation is being provided to all counsel via ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. 28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. **Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals.** *Meija v. Roma Cleaning, Inc.,* No. 17-3446, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision."); *cf. Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* review or any other standard, when neither party objects to those findings"). This is particularly true, where, as here, a party has been "warned of the consequences of not objecting to the Magistrate's findings." *Meija*, 2018 WL 4847199, at *1.

Dated: Central Islip, New York
      January 6, 2020

                                                /s/ Gary R. Brown
                                                GARY R. BROWN
                                                United States Magistrate Judge