UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
DR. GERALD FINKEL, AS CHAIRMAN OF
THE JOINT INDUSTRY BOARD OF THE
ELECTICAL INDUSTRY,

                  Plaintiff,

           -against-

ZIZZA & ASSOCIATES, CORP.,
BERGEN COVE REALTY, INC., and
SALVATORE J. ZIZZA,

                  Defendants.
------------------------------------X

<u>MEMORANDUM & ORDER</u>
12-CV-4108(JS)(ARL)

APPEARANCES
For Plaintiff:      David Ronald Hock, Esq.
                  Michael Seth Adler, Esq.
                  Peter D. DeChiara, Esq.
                  Cohen, Weiss & Simon, LLP
                  900 Third Avenue, 21st Floor
                  New York, New York 10022

                  Michael Eckstein Abram, Esq.
                  917 Lotus Vista Drive, Suite 101
                  Altamonte Springs, Florida 32714

For Defendants:     Ira S. Sacks, Esq.
                  Benjamin Reid Joelson, Esq.
                  Akerman Senterfitt LLP
                  666 Fifth Avenue, 20th Floor
                  New York, New York 10103

                  Michael Darren Traub, Esq.
                  Davis Wright Tremaine LLP
                  1251 Avenue of the Americas
                  New York, New York 10020

SEYBERT, District Judge:

Currently pending before the Court is the Report and Recommendation of then-Magistrate Judge Gary R. Brown[1] ("R&R," D.E. 193), recommending that the Court deny defendants Zizza & Associates Corp. ("Zizza & Associates"), Bergen Cove Realty, Inc. ("Bergen Cove"), and Salvatore J. Zizza's ("Mr. Zizza") (collectively "Defendants") motion for summary judgment (Defs. Mot., D.E. 179) on Plaintiff's claim for controlled group liability against Bergen Cove as barred by the statute of limitations.  For the following reasons, Defendants' objections (Defs. Obj., D.E. 194) are OVERRULED, the R&R is ADOPTED as stated herein, and the motion is DENIED.

## BACKGROUND[2]

Dr. Gerald Finkel ("Plaintiff"), as chairman of the joint industry board of the electrical industry, initiated this action under the Employee Retirement Income Security Act of 1974 ("ERISA") against Mr. Zizza and Zizza & Associates on August 16, 2012 to collect $358,852.05 in withdrawal liability and statutory damages arising from a default judgment entered on

---

[1] Judge Brown has since been confirmed as a District Court Judge for the Eastern District of New York.

[2] The following facts are drawn from the Second Amended Complaint (Sec. Am. Compl., D.E. 50) and the parties' Local Civil Rule 56.1 Statements and Counterstatements.  (Defs. 56.1 Stmt., D.E. 182; Pl. 56.1 Stmt, D.E. 184-2; Defs. 56.1 Response, D.E. 187.) Where there is agreement, the Court cites to only Defendants' Rule 56.1 statement and notes any relevant factual disputes.

October 23, 2009 (the "Judgment") in <u>Finkel v. Hall-Mark Electrical Supplies Corp.</u>, No. 07-CV-2376, in the Eastern District of New York (the "Prior Action"). (<u>See</u> Compl., D.E. 1, ¶ 1.)

I.    <u>Factual History</u>

        Plaintiff administers various employee benefit plans established and maintained pursuant to collective bargaining agreements ("CBA") between Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO (the "Union") and employers in the electrical, elevator, sign, television, burglar alarm and other related industries. (Sec. Am. Compl., ¶ 4.)  From May 1, 2005 through April 30, 2008, non-party Hall-Mark Electrical Supplies Corporation ("Hall-Mark") was bound to a CBA with the Union, among others, that required Hall-Mark to remit employee benefit contributions on behalf of each employee covered by the CBA. (Sec. Am. Compl. ¶¶ 14-15; Defs. 56.1 Stmt. ¶ 1.)

        On or about May 24, 2007, Hall-Mark ceased operations. (Defs. 56.1 Stmt. ¶ 3-4.)  By letter dated May 30, 2007, Plaintiff calculated Hall-Mark's withdrawal liability and requested Hall-Mark to advise whether it had been a member of a group of trades or businesses under common control and if so, to provide the names and addresses of each entity within the control group. (Defs. 56.1 Stmt. ¶ 5; <u>see</u>, Sessa Decl., Joelson Decl. Ex. D, D.E. 181-4, at ¶¶ 23-25.)  By August 30, 2007, Plaintiff determined that Hall-Mark defaulted on its withdrawal liability. (Defs. 56.1 Stmt.

¶¶ 7-8.)   By letter dated September 26, 2007, Plaintiff accelerated payment of the full withdrawal liability amount and demanded payment in full. (Defs. 56.1 Stmt. ¶ 9.)  In the fall of 2007, Plaintiff researched and sought information regarding Hall-Mark's controlled group members and their ownership structures. (Defs. 56.1 Stmt. ¶¶ 10-11.)  The parties dispute when Plaintiff possessed sufficient information to determine what entities, if any, were within Hall-Mark's controlled group.  (Defs. 56.1 Stmt. ¶ 10; Pl. 56.1 Stmt. ¶ 10.)

On September 26, 2007 and October 18, 2007, Plaintiff contacted non-party Metropolitan Paper Recycling, Inc. to recover Hall-Mark's withdrawal liability because it believed that Metropolitan Paper Recycling was "jointly owned" and "related" to Hall-Mark. (Defs. 56.1 Stmt. ¶¶ 12-13.)  In November 2007, Deborah A. Hulbert ("Hulbert"), Hall-Mark's former outside counsel, informed Plaintiff that Hall-Mark had no assets to satisfy the demand for payment of withdrawal liability. (Defs. 56.1 Stmt. ¶ 14.)  In March 2008, Hulbert informed Plaintiff that Hall-Mark had no control over its finances and all of its assets had been seized. (Defs. 56.1 Stmt. ¶ 15.)

II.  <u>The Prior Action</u>

On June 13, 2007, Plaintiff initiated the Prior Action against Hall-Mark to collect unpaid contributions and on October 18, 2007 amended the complaint to add a claim for

withdrawal liability and for an order directing Hall-Mark to provide controlled group information. (Defs. 56.1 Stmt. ¶¶ 16, 18, 19-22.) On November 27, 2007, Hulbert emailed Plaintiff's in-house counsel to introduce herself and Plaintiff's counsel responded and renewed the request, pursuant to Section 4219(a) of ERISA, for Hall-Mark to advise whether it was or is a member of a control group "within the meaning of ERISA Section 4001(b)(1) and Sections 414 and 1563 of the Internal Revenue Code." (See, Joelson Decl., Ex. H, D.E. 181-8, at 1.) On the same day, Hulbert wrote that she "will get back to [Plaintiff's counsel] on the controlled group inquiry." (Joelson Decl., Ex. H, at 1.)

On January 23, 2008, Hulbert responded to Plaintiff's demands for control group information and advised that (i) Mr. Zizza had "ownership interests in several other entities," (ii) "Hall-Mark was not a member of a controlled group of corporations or trades or businesses under common control," and (iii) "Hall-Mark was not a member of a brother-sister controlled group because none of the other entities in which Mr. Zizza has an ownership interest is also owned by four or fewer other natural persons, trusts or estates." (Defs. 56.1 Stmt. ¶ 31.)

In a letter dated March 11, 2008, Hulbert provided Plaintiff with a list that "identifie[d] all businesses in which [Mr. Zizza], the 80% shareholder of Hall-Mark, has an interest and the percentage of his interest." (See, Joelson Decl., Ex. I, D.E.

5

181-9, at 1.)    This list, titled "Sal Zizza Investments," identified that Mr. Zizza had a 76 percent interest in Bergen Cove. (Joelson Decl., Ex. I, at 2.)    The parties dispute whether the March 11, 2008 letter (1) disavows the representation in the January 23, 2008 letter that there were no controlled group members that meet the brother-sister test, (2) disavows the statement that the businesses referenced were not "owned by four or fewer other natural persons," and (3) provides information regarding the remaining ownership interests of the listed entities. (Pl. 56.1 Stmt. ¶¶ 36-37.)

On April 22, 2008, the parties met to discuss a settlement of the alleged withdrawal liability. (Defs. 56.1 Stmt. ¶ 44.)    The parties agree that they discussed whether Hall-Mark was a member of a controlled group however Plaintiff argues that Mr. Zizza "refused to commit to the existence of any controlled group members." (Defs. 56.1 Stmt. ¶ 45; Pl. 56.1 Stmt. ¶ 45.) Mr. Zizza also provided a document containing his financial position as of December 31, 2007 that disclosed his investment in Bergen Cove to be $1,800,000. (Defs. 56.1 Stmt. ¶¶ 46-47; Pl. 56.1 Stmt. ¶¶ 46-47.)    While Plaintiff agrees that it "could have inquired further regarding Bergen Cove's ownership structure," Plaintiff argues Mr. Zizza and his counsel "could have corrected their prior false statements about" the ownership structure. (Defs. 56.1 Stmt. ¶¶ 48-51; Pl. 56.1 Stmt. ¶¶ 48-51.)

6

Based on the information contained in the March 11, 2008 letter, on or about July 16, 2008, Plaintiff filed a second amended complaint adding Zizza & Company Ltd. ("Zizza & Co.") and Primary Capital Resources Inc. ("Primary Capital") (collectively, the "Prior Action Defendants") as defendants. (Defs. 56.1 Stmt. ¶¶ 23-24, 40.) The second amended complaint alleged that the Prior Action Defendants were 100 percent owned by Mr. Zizza on the date of withdrawal and therefore were jointly and severally liable for Hall-Mark's withdrawal liability as members of a controlled group. (Defs. 56.1 Stmt. ¶¶ 25-26.) On October 23, 2009, the Court entered the Judgment against Hall-Mark, alone, and against the Prior Action Defendants, jointly and severally. (Defs. 56.1 Stmt. ¶ 27.)

On October 17, 2011 Mr. Zizza appeared for a post-discovery deposition and testified that he owned 70 percent of Bergen Cove and that his sons owned "10 percent each." (Defs. 56.1 Stmt. ¶¶ 52-54.)

III. Procedural History

On April 12, 2013, Plaintiff filed a First Amended Complaint in this action. (Am. Compl., D.E. 14.) On December 11, 2013, then-District Judge Joseph F. Bianco[3] issued an

---

[3] This matter was reassigned to the undersigned on July 15, 2019 after Judge Bianco's appointment to the Second Circuit Court of Appeals.

7

oral ruling denying, among other things, Defendants' motion to dismiss the First Amended Complaint. (Dec. 11, 2013 Order, D.E. 33; Dec. 11, 2013 Tr., D.E. 35.) On May 15, 2014, Plaintiff filed a Second Amended Complaint and added Bergen Cove as a defendant because "the transfer of substantially all the business of Zizza & Co. to Zizza & Associates and later to Bergen Cove constituted a transaction or transactions to evade and avoid the payment of withdrawal liability or were fraudulent transfers." (See Sec. Am. Compl. ¶ 1.)

On or around April 3, 2015, the parties filed cross-motions for summary judgment. (Defs. 2015 Summ. J. Mot., D.E. 83; Pl. 2015 Summ. J. Mot., D.E. 88.) As relevant here, Defendants argued, for the first time in opposition and in reply, that a controlled group liability claim against Bergen Cove was untimely. (Defs. 2015 Summ. J. Opp., D.E. 98, at pp. 9-10; Defs. 2015 Summ. J. Reply, D.E. 103, at pp. 9-10.)

On December 21, 2015, Judge Bianco denied the cross-motions in an oral ruling. (Dec. 21, 2015 Order, D.E. 109; Dec. 21, 2015 Tr., D.E. 110.) Judge Bianco found that it was "clear that [P]laintiff's argument with respect to this litigation as to Bergen Cove's control group liability is part of its claim for withdrawal liability under Section 4212(c)" and that there is a "disputed issue of fact as to whether the interest held by

Mr. Zizza's children can be attributed to him."[4]   (Dec. 21, 2015 Tr. 4:19-22; 8:16-19.)   On January 13, 2016, Defendants filed a motion for reconsideration (Reconsid. Mot., D.E. 111) arguing that (1) Plaintiff did not state a claim for controlled group withdrawal liability against Bergen Cove and (2) a claim for controlled group liability against Bergen Cove is time barred.   (Reconsid. Br., D.E. 112, at pp. 5-12.)   As to the second argument, Defendants argued that the statute of limitations expired in September 2013, six years after Plaintiff accelerated and demanded payment in full. (Reconsid. Br. at p. 11.)   Defendants also argued that Plaintiff learned of Bergen Cove's existence by March 11, 2008 and "learned of Bergen Cove's ownership structure, at the very latest, during Mr. Zizza's October 2011 deposition."   (Reconsid. Br. at p. 11.)

On May 2, 2016, Judge Bianco denied the reconsideration motion but did not explicitly address the statute of limitations. (May 2, 2016 Order, D.E. 119; May 2, 2016 Tr., D.E. 120.)   On May 13, 2016, Defendants asked the Court to issue a certificate of appealability with respect to certain portions of the Court's decisions denying summary judgment and reconsideration but not with respect to their argument that the controlled group liability

---

[4] Plaintiff argues that "once Mr. Zizza's [children's] shares are attributed to [him], he's treated as owning 90% of Bergen Cove on the date of withdrawal and thus Bergen Cove is considered under common control with Hall-Mark and Zizza & Company." (Dec. 21, 2015 Tr. 8:2-6.)

claim against Bergen Cove is time-barred. (See Defs. Appeal Mot., D.E. 121.)  On March 30, 2017 Judge Bianco issued an oral ruling denying Defendants' request for a certificate of appealability and set an October 2017 trial date. (Mar. 30, 2017 Order, D.E. 125; Mar. 30, 2017 Tr., D.E. 128).

As relevant here, Judge Bianco reiterated that the Second Amended Complaint "should be construed to contain" information to put Defendants on notice that Plaintiff asserted a claim for control group liability against Bergen Cove. (Mar. 30, 2017 Tr. 5:1-11.)  Further, Judge Bianco exercised his "discretionary power to deem the complaint to be amended to include such a claim." (Mar. 30, 2017 Tr. 5:17-21.)  Judge Bianco then addressed "a statute of limitations issue with respect to any such amendment" and found that "the law is clear that, in this situation, that any control group claim would certainly, for statute of limitations purposes, relate back to the prior pleading and . . . because it was based on the same series of transactions and occurrences, under which the original claim for withdrawal liability arose." (Mar. 30, 2017 Tr. 6:21-7:4.)

Trial was rescheduled to July 23, 2018 and on July 16, 2018, the parties submitted a number of pre-trial filings. On July 17, 2018, six days before trial, Defendants filed a "supplemental" trial brief that identified "two contested and dispositive legal issues" to be decided in advance of trial.

(Defs. Supp. Trial Br., D.E. 170.)  Defendants argued that (1) the controlled-group liability claim against Bergen Cove is time-barred (Defs. Supp. Trial Br. at 1-4), and (2) if the controlled-group claim against Bergen Cove is dismissed, the Court lacks subject matter jurisdiction (Defs. Supp. Trial Br. at 4-5).

On July 19, 2018, Judge Bianco held a hearing and, in addressing his prior rulings, stated that Defendants did not waive the statute of limitations argument and that he did not address the issue of whether "even if [the Bergen Cove controlled group liability claim] related back to the time that Bergen Cove was first named as a defendant, [ ] it's still untimely . . . and that it does not relate back to the initial complaint [ ] when Bergen Cove was not a party."  (July 19, 2018 Min. Entry, D.E. 175; July 19, 2018 Tr., D.E. 176, 3:19-4:25; 5:1-17.)  Judge Bianco further stated that "the statute of limitations question should be decided prior to the trial, if it can" but if he "were to determine there's a factual dispute about [the timing of who knew the ownership structure of Bergen Cove], then that factual dispute would have to be put to the jury." (July 19, 2018 Tr. 5:25-6:10.)

Judge Bianco set a schedule for the parties to brief the issues raised in Defendants' supplemental trial brief and on August 29, 2018, Defendants filed the motion currently before the Court:  (1) for summary judgment on the ground that the statute of limitation bars the controlled group liability claim against

11

Bergen Cove and (2) to dismiss the remaining claims for lack of subject matter jurisdiction. (Defs. Br., D.E. 183; Pl. Opp., D.E. 184-3; Defs. Reply, D.E. 188.) On November 5, 2018, Judge Bianco heard oral argument (D.E. 191) and on October 8, 2019, this Court referred the motion to Judge Brown for a report and recommendation (see Oct. 8, 2019 Elec. Order).

On January 7, 2020, Judge Brown issued the R&R recommending that this Court deny Defendants' motion in its entirety. (See generally R&R.) Judge Brown found that the facts "in the matter compel a clear conclusion" that Mr. Zizza's 2011 deposition, "during which he more accurately disclosed" Bergen Cove's ownership structure, "is the more pertinent date" for statute of limitation purposes. (R&R at 8-9.) Thus, Judge Brown held that Plaintiff's claim for controlled group liability against Bergen Cove is not time barred and recommended that the Court deny Defendants' motion for summary judgment. (See generally R&R.) Defendants timely objected to the R&R. (Defs. Obj., D.E. 194; Pl. Obj. Opp., D.E. 195; Defs. Obj. Reply, D.E. 196.)

<u>ANALYSIS</u>

I.   <u>Legal Standards</u>

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also FED. R. CIV. P. 72. Where a party "makes only conclusory or general objections, or

simply reiterates [the] original arguments, the Court reviews the Report and Recommendation only for clear error." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (quoting Barratt v. Joie, No. 96-CV-324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)). The district judge must evaluate proper objections de novo and "may accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3).

A district court will grant summary judgment only if the records reveals no genuine issues of material fact. Rodriguez v. Vill. Green Realty, Inc., 788 F.3d 31, 39 (2d Cir. 2015) (citing FED. R. CIV. P. 56(a)). "Material facts are those which 'might affect the outcome of the suit under the governing law,' and a dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Coppola v. Bear Stearns & Co., 499 F.3d 144, 148 (2d Cir. 2007) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)).

## II. Defendants' Objections

### A. Statute of Limitations – Controlled Group Liability against Bergen Cove

As a preliminary matter, a comparison between Defendants' underlying summary judgment brief and the objections reveals that they "have done little more than rearrange their

13

arguments, often using largely identical wording."[5]  <u>Media Glow</u> <u>Digital, LLC v. Panasonic Corp. of N. Am.</u>, No. 16-CV-7907, 2019 WL 1434311, at *3 (S.D.N.Y. Mar. 29, 2019), <u>on reconsideration in</u> <u>part</u>, 2019 WL 2281375 (S.D.N.Y. May 29, 2019); <u>compare</u> Defs. Br. at 8-10 <u>with</u> Defs. Obj. at 9-10 (Defendants arguing that the statute of limitations began to run when Plaintiff accelerated payment of the full withdrawal liability amount); <u>compare</u> Defs. Br. at 10-13 <u>with</u> Defs. Obj. at 11-15 (Defendants arguing that the "undisputed facts show" that Plaintiff should have acquired knowledge that Bergen Cove was potentially in the controlled group in March 2008); <u>compare</u> Defs. Br. at 15-18 (Defendants arguing that (1) whether Mr. Zizza had an ownership interest in an entity owned by four or fewer other natural persons is not material and (2) the January 23, 2018 Letter did not prevent Plaintiff from discovering Bergen Cove's ownership) <u>with</u> Defs. Obj. at 18-21 (arguing that Judge Brown failed to consider Defendants' materiality and discovery arguments).  As such, Defendants "have merely reiterated their original arguments and the Court will, therefore, review this part of the Report for clear error." <u>Media</u> <u>Glow</u>, 2019 WL 1434311, at *3.  Finding no clear error in Judge Brown's legal analysis, the Court adopts the R&R.

---

[5] Moreover, Defendants also asserted nearly identical arguments in their 2015 summary judgment opposition and reply papers. (<u>See</u> Def. 2015 Summ. J. Opp., at pp. 9-10; Def. 2015 Summ. J. Reply, at pp. 9-10.)

The Court adopts the R&R even under <u>de novo</u> review. 29 U.S.C. § 1451(a)(1) provides that, "a plan fiduciary, employer, plan participant or beneficiary, who is adversely affected by the act or omission of any party . . . may bring an action for appropriate legal or equitable relief, or both." 29 U.S.C. § 1451(f) ("Section 1451(f)") provides that:

> An action under this section may not be brought after the later of--
>
> (1)  6 years after the date on which the cause of action arose, or
>
> (2)  3 years after the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action; except that in the case of fraud or concealment, such action may be brought not later than 6 years after the date of discovery of the existence of such cause of action.

In <u>Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corporation of California</u>, 522 U.S. 192, 118 S. Ct. 542, 139 L. Ed. 2d 553 (1997), the Supreme Court addressed when the statute of limitations begins to run for a claim to recover unpaid withdrawal liability under Section 1451(f)(1). The Supreme Court held that:

> The plan's interest in receiving withdrawal liability does not ripen into a cause of action triggering the limitations period until two events transpire. First, the trustees must calculate the debt, set a schedule of installments, and demand payment pursuant to § 1399(b)(1). Second, the employer must default on an installment due and payable under the trustees' schedule. Only then has the employer violated an obligation owed the plan under the Act.

15

Id., 522 U.S. at 200-02, 118 S. Ct. at 549.  Where, as here, the trustees elect to accelerate the liability by demanding payment in full following an employer's default, the six year period begins to run when the liability is accelerated. See Id. at 522 U.S. at 209 & n.5, 118 S. Ct. at 552 ("The statute of limitations on an accelerated debt runs from the date the creditor exercises its acceleration option . . . .").

Recently, in Intel Corporation Investment Policy Committee v. Sulyma, 140 S. Ct. 768, 768 (U.S. Feb. 26, 2020), the Supreme Court held that to satisfy "actual knowledge" for purposes of Section 1113 of ERISA, the "plaintiff must in fact have become aware of that information."  The Supreme Court explained that the provision at issue, like Section 1451(f), also contains three time periods, "each with different triggering events."  Id. at 774 (emphasis added) (explaining the three different time periods and congressional intent).

In explaining the plain meaning of "actual knowledge," the Supreme Court cited to Section 1451(f)(1)-(2) to state that "[m]ultiple provisions contain alternate 6-year and 3-year limitations periods, with the 6-year period beginning at 'the date on which the cause of action arose' and the 3-year period starting at 'the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the existence of such a cause of

action." Id. at 777 (emphasis in original); see also id. (explaining that other ERISA limitations periods, such as Section 1451(f)(2), "encompass both what a plaintiff actually knows and what he reasonably could know.").

Defendants argue that the statute of limitations begins to run "from the date that the withdrawal liability was accelerated," regardless of when Plaintiff obtained knowledge that Bergen Cove was a potential member of Hall-Mark's controlled group. (Defs. Obj. at 8-11.) The Court disagrees. Defendants' arguments belie the Supreme Court's explanation of alternate 6-year and 3-year limitations periods, "each with different triggering events," and would render Section 1451(f)(2)'s discovery rule superfluous in context of unknown and allegedly concealed control group members. Intel Corp., 2020 WL 908881, at *2. Accordingly, the Court agrees with Judge Brown that a question exists as to when the limitations period commences: "from the date of the Hulbert letters, rendering the action untimely, or from the date of Zizza's 2011 deposition, in which he more clearly explained the ownership structure of Bergen Cove." (R&R at 8.)

Defendants repeatedly cite Central States, Southeast and Southwest Areas Pension Fund v. Mississippi Warehouse Corporation, 853 F. Supp. 1053 (N.D. Ill. 1994) that directly addresses the issue before the Court. (see, e.g., Defs. Obj. at 9, 13-15; Defs. Br. at 8). Mississippi Warehouse is instructive because there,

after a withdrawing employer failed to satisfy a judgment for withdrawal liability, the plaintiffs initiated a separate action to collect that judgment by arguing the defendants were jointly and severally liable for controlled group withdrawal liability. Id. at 1056.  The defendants there argued that the action was barred by Section 1451(f) (id. at 1056) while the plaintiffs argued that Section 1451(f) applies only to "the initial action brought by a pension fund to collect withdrawal liability and that subsequent actions brought against entities under common control are governed by the state statute of limitations" to collect on a judgment (id. at 1057).

After determining that the plaintiffs were proceeding under ERISA and were "not merely seeking to enforce its judgment against" the withdrawing employer, the Mississippi Warehouse court found that plaintiffs were "bound by the limitations period in § 1451(f)." Id. at 1059.  The court first determined that Section 1451(f)(1) barred the action and then turned to the "three-year-after knowledge provision of Section 1451(f)(2)." Id.  The court held that "[t]he second provision of § 1451(f)(2) allows a plaintiff to bring a cause of action up to six years after discovering the identity of an unknown controlled group member if the plaintiff was unable to reasonably discover the identity of other potential controlled group members due to fraud or concealment." Id. at 1061 (emphasis added).  Turning to the

record, the court held that the plaintiff was "barred by the three-years-after knowledge provision" of § 1451(f)(2) because the case-specific facts indicated that plaintiff "should have known that it had a cause of action against" the defendant more than three years before initiating the action. Id. at 1059-61. The court next found that under "fraud and concealment" portion of Section 1451(f)(2), "a reasonable juror could not find that [the plaintiff] was prevented from discovering [the defendant's] relationship to [the withdrawing employer] because of [the withdrawing employer's] alleged fraud or concealment." Id. at 1061-62.

Defendants, drawing an analogy to the Mississippi Warehouse plaintiffs, argue that once Plaintiffs had knowledge that Hall-Mark had no assets to satisfy the withdrawal liability, Plaintiffs had a duty "to inquir[e] further" but "did absolutely nothing." (Defs. Obj. at 14 (emphasis deleted).) Defendants' argument assumes that Plaintiffs wholly failed to ascertain the identity of all controlled group members after September 26, 2007. However, the Court cannot rule as a matter of law that Plaintiffs "did absolutely nothing" before March 11, 2008, as Defendants suggest. Cf. Central States, Southeast and Southwest Areas Pension Fund v. Navco, 3 F.3d 167, 171-73 (7th Cir. 1993) (applying Section 1451(f)(1) to plaintiff's controlled group liability claim where plaintiff "chose not to investigate," saw the "six years as a period of rest and recuperation," and where a defendant was

19

previously identified as an equity investor of employer in bankruptcy schedules).

Finding <u>Mississippi Warehouse</u> consistent with Supreme Court precedent, to successfully state a claim for control group withdrawal liability within the first limitations period of Section 1451(f)(2), there must be no dispute as to whether Plaintiff knew, or should have known but did not adequately investigate, that Bergen Cove was a potential control group member. See <u>Mississippi Warehouse</u>, 853 F. Supp. at 1061-62. To fall under the second provision of Section 1451(f)(2), the Plaintiff must show that "a reasonable trier of fact could find that [Plaintiff] was unable to reasonably discovery [Bergen Cove's] identity due to [Hall-Mark's] fraud or concealment." <u>Id.</u> at 1061. If so, Plaintiff is "entitled to bring an action up to six years after learning that [Bergen Cove] was potentially liable for [Hall-Mark's] withdrawal liability." <u>Id.</u> Applying this standard to the facts of this case, the determination turns on a factual dispute and summary judgment is therefore not appropriate. See <u>Houston v. Cotter</u>, 7 F. Supp. 3d 283, 292 (E.D.N.Y. 2014) (collecting cases.).

Defendants also object to the R&R on the ground that Judge Brown "incorrectly determined that Plaintiff should not have acquired knowledge of the existence of its claim against Bergen Cove until 2011" because the "undisputed facts show that, at the latest, Plaintiff should have acquired knowledge that Bergen Cove

was potentially in the controlled group in March 2008." (Defs. Obj. at 11-24.) Here, too, the issue of whether Plaintiff knew in March 2008 that Bergen Cove was in the controlled group and failed to investigate further turns on a factual dispute that must be submitted to the fact finder. (See July 19, 2018 Tr. 6:10-15 ("[A]lthough the statute of limitations question is a legal question for the Court if it hinges upon a factual issue, then the law is clear that factual issue should be put to the jury, have them decide the factual issue and then the court will be in a position to rule on the statute of limitations question.").)

        B. Jurisdiction

        Judge Brown did "not reach [D]efendants' arguments concerning ancillary jurisdiction as to the remaining claim" because the "motion as to the ERISA claim [was] meritless." (R&R at 10 n.4.) Defendants object on the ground that Judge Brown did not address the "subject matter jurisdiction issue" and argue that "[r]egardless of whether the controlled group claim is dismissed as time-barred, the Court must still consider" jurisdiction. (Defs. Obj. at 24-25; Defs. Obj. Reply at 10.)

        In their underlying brief, Defendants argue that the Court lacks jurisdiction over the remaining claims because they "do not arise under federal law, and they do not derive from the same nucleus of operative fact as the controlled group claim." (Defs. Br. at 18.) Specifically, Defendants argue that under

21

Peacock v. Thomas, 516 U.S. 349, 116 S. Ct. 862, 133 L. Ed. 2d 817 (1996), Plaintiff's evade or avoid claims do not arise under ERISA because the complained of conduct occurred after (1) Hall-Mark "ceased operations and withdrew from the fund," (2) Hall-Mark's "ERISA plan terminated," (3) Hall-Mark "failed to pay its alleged withdrawal liability," and (4) the Judgment "was entered in the Prior Action." (Defs. Br. at 20-21.) According to Defendants, they were "at most, evading or avoiding a judgment, not withdrawal liability." (Defs. Br. at 20 n.14.)

At oral argument, Judge Bianco expressed concern as to whether an evade or avoid claim is actionable under ERISA where the evade or avoid transaction occurred "after the company ceased operating, and after a judgment had been entered." (Nov. 5, 2018 Tr. 26:22-27:8.) Plaintiff thereafter provided the Court with cases decided after Peacock where a court found an independent basis of jurisdiction for a suit against an affiliate of an employer alleging evade or avoid liability under ERISA. (Pl. Nov. 15, 2018 Letter, D.E. 190; Defs. Letter Resp., D.E. 192.)

These concerns, however, are moot. The parties do not dispute Judge Bianco's ruling that it is "clear" that "Bergen Cove's control group liability is part of its claim for withdrawal liability under Section 4212(c)" and that "Peacock has no application" because "there is control group liability which is an independent ground" for subject matter jurisdiction. (Dec. 21,

22

2015 Tr. 4:19-22; Mar. 30, 2017 Tr. 8:19-9:12 (citations omitted).) Therefore, there is an independent basis for jurisdiction and Peacock is no bar. Cf. Bd. of Trustees v. Allure Metal Works, Inc., No. 16-CV-1303, 2017 WL 372051, at *3 (E.D.N.Y. Jan. 25, 2017) ("Peacock, as well as the Second Circuit precedent applying Peacock, make clear that district courts do not have subject matter jurisdiction over a claim based on theories of alter ego or successor liability that involve another entity's ERISA violation unless some 'independent ground' for federal jurisdiction exists.").

Further, having determined that there is a factual dispute as to whether the controlled group liability claim is time-barred, "Peacock does not stand for the proposition that a plaintiff cannot join parties to a pending ERISA action in order to hold them liable under an alter ego/single employer veil-piercing theory or a common control theory." Ferrara v. Smithtown Trucking Co., 29 F. Supp. 3d 274, 281 (E.D.N.Y. 2014) (finding the Court has federal subject matter jurisdiction over alter-ego claims where plaintiffs asserted claims under ERISA, "namely, a single control group under 29 U.S.C. § 1301.") (collecting cases). Accordingly, joining Zizza & Associates "would not and cannot destroy that jurisdiction [and the Defendants have] not shown that a separate jurisdictional basis is required to join [Zizza & Associates]." Id. (collecting cases).

Defendants urge the Court to ignore Judge Bianco's oral ruling denying Defendants' request for a certificate of appealability wherein he squarely addressed this issue. (See Defs. Obj. Reply at 10; see Mar. 30, 2017 Tr. 8-11.)  However, Judge Bianco analyzed whether "Zizza & Associates and Bergen [Cove] allegedly evaded or avoided ERISA withdrawal liability or merely a judgment" and stated that he was not aware of any "case law that suggests that when a judgment is entered [ ] withdrawal liability ceases to exist." (Mar. 30, 2017 Tr. 8:4-19 (citing Cent. States, Se. & Sw. Areas Pension Fund v. Lloyd L. Sztanyo Tr., 693 F. Supp. 531, 534 (E.D. Mich. 1988)); see also Dec. 21, 2015 Tr. 9:22-10:2 (ruling on Defendants' 2015 summary judgment motion and holding that "withdrawal liability was [not] extinguished once the collective bargaining agreement ceased and default judgment was entered" and finding issue of fact precluded summary judgment on Plaintiff's evade or avoid claim under ERISA); see also Mar. 30, 2017 Tr. 12:25-13:9 (finding unpersuasive Defendants' argument that there was no act by a "contributing employer" because "the employer in this instance was Hall-Mark, who is not alleged to have taken action to evade liability.").)  Judge Bianco also found that there is "no basis to dispute" that evade or avoid liability arises under ERISA because, among other reasons, "it applies to parties to whom the improper transfer is made." (Mar. 30, 2017 Tr. 9:12-11:23 (collecting cases); 9:11-12 ("the evade or avoid

24

liability is itself under Section 1392(c), an independent ground.").) Seeing no reason to depart from this guidance, subject matter jurisdiction exists because Plaintiff is not "merely" collecting on a judgment but rather seeking to recover against Defendants for evading and avoiding withdrawal liability under ERISA.[6]

As for the remaining claims, 28 U.S.C. § 1367 provides that the district court <u>may</u> exercise supplemental jurisdiction over state law claims which are related to federal claims over which the court has original jurisdiction. "The rule, however, is a flexible one and a district court may exercise supplemental jurisdiction depending on the particular facts of the case" and in consideration of the "'values of co-judicial economy, convenience, fairness and comity.'" <u>Koul v. Strong Mem'l Hosp.</u>, 282 F. Supp. 3d 569, 570 (W.D.N.Y. 2017) (quoting <u>Carnegie–Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988)).

---

[6] Defendants also argue that at a July 19, 2018 conference, "Judge Bianco recognized that the issue relating to subject matter jurisdiction remained outstanding and, at the November 5, 2018 oral argument, he was critical of Plaintiff's legal positions relating to subject matter jurisdiction." (Def. Obj. Reply at 10.)  Upon review of the transcripts, Judge Bianco's questions surrounding the applicability of <u>Peacock</u> assumes Plaintiff seeks <u>only</u> to collect on a judgment.  Here, not only is there an independent basis for jurisdiction under ERISA for control group liability against Bergen Cove, but Plaintiff seeks to hold Defendants liable for evading and avoiding withdrawal liability under ERISA separate and apart from the Judgment.

Therefore, the Court will continue to exercise jurisdiction over Plaintiff's remaining claims.

CONCLUSION

For the foregoing reasons, Defendants' objections are OVERRULED, the R&R is ADOPTED as stated herein, and Defendants' motion for summary judgment is DENIED. Within thirty (30) days of the date of this Order, the parties are to submit a joint letter advising the Court whether (1) there are any outstanding substantive or scheduling issues to address prior to trial and (2) whether they wish to schedule a settlement conference with Magistrate Judge Arlene R. Lindsay.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: March   31 , 2020
       Central Islip, New York