UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
DR. GERALD FINKEL, as Chairman
of the Joint Industry Board of
the Electrical Industry,

                Plaintiff,

                                  MEMORANDUM & ORDER

       -against-               14-CV-4108(JS)(ARL)

ZIZZA & ASSOCIATES CORP., BERGEN
COVE REALTY INC., SALVATORE J.
ZIZZA,

                Defendants.
--------------------------------X
APPEARANCES
For Plaintiff:      Peter D. DeChiara, Esq.
                   Michael S. Adler, Esq.
                   Cohen, Weiss, and Simon LLP
                   900 Third Avenue, Suite 2100
                   New York, New York  10022

For Defendants:     Ira S. Sacks, Esq.
                   Benjamin R. Joelson, Esq.
                   Akerman LLP
                   520 Madison Avenue, 20th Floor
                   New York, New York  10022

SEYBERT, District Judge:

          Dr. Gerald Finkel, as chairman of the joint industry board of the electrical industry ("Plaintiff" or the "Joint Board"), commenced this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA")[1] and New York State law against defendants Zizza & Associates Corp. ("Zizza & Associates"), Bergen Cove Realty, Inc. ("Bergen Cove"), and

---

[1] Later amended by the Multiemployer Pension Plan Amendments Act of 1980, or the MPPAA.

Salvatore J. Zizza ("Mr. Zizza" and collectively "Defendants"). On April 30, 2021, a jury found Zizza & Associates and Bergen Cove liable on Plaintiff's claim for withdrawal liability under ERISA, and Mr. Zizza liable on Plaintiff's claim under the New York Business Corporation Law ("NY BCL"). Before the Court is Defendants' motion under Federal Rules of Civil Procedure 50 and 59 for judgment as a matter of law or, in the alternative, a new trial,[2] which Plaintiff opposes.[3]  For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

<u>BACKGROUND</u>[4]

Plaintiff initiated this ERISA action against Mr. Zizza and Zizza & Associates on August 16, 2012 to collect $358,852.05 in withdrawal liability and statutory damages arising from a default judgment entered on October 23, 2009 (the "Judgment") in <u>Finkel v. Hall-Mark Electrical Supplies Corp.</u>, No. 07-CV-2376, in the Eastern District of New York (the "Prior Action"). Plaintiff added claims against Bergen Cove in the operative Second Amended

---

[2] (Defs. Mot., ECF No. 235; Support Memo, ECF No. 235-1; Reply, ECF No. 237.)

[3] (Opp'n, ECF No. 236.)

[4] The facts are recited as relevant to the Court's analysis and are drawn from the Docket, the Second Amended Complaint, pre-trial proceedings, and the Trial Transcript ("Tr."). Citations to "SF" refer to stipulated facts, "PX" refer to Plaintiff's exhibits, and "DX" refer to Defendants' exhibits. The Court presumes familiarity with the entire record.

Complaint.  (See generally SAC, ECF No. 50.)  After several years of discovery and motion practice, this case was tried before a jury on April 29 and 30, 2021.  As summarized infra, the jury rejected Defendants' statute of limitations defense and found Defendants liable on all claims.  (Verdict Form, ECF No. 232.)  As a result, Defendants filed the instant motion for judgment as a matter of law or, in the alternative, for a new trial.  The Court first summarizes the allegations in Plaintiff's Second Amended Complaint and this case's procedural history before turning to the evidence at trial.

I.    The Operative Complaint

In the operative Second Amended Complaint, Plaintiff asserts the following causes of action: (1) evade-or-avoid liability under ERISA as against Zizza & Associates and Bergen Cove; (2) alter ego liability as against Zizza & Associates and Bergen Cove; and (3) violation of NY BCL § 720 as against Mr. Zizza.  (See SAC ¶¶ 60-79.)  In its prayer for relief, Plaintiff seeks to hold Zizza & Associates and Bergen Cove jointly and severally liable for the Judgment, and to hold Mr. Zizza accountable for alleged breaches of his fiduciary duty to Zizza & Company Ltd. ("Zizza & Co."), a defendant in the Prior Action, plus reasonable attorney's fees and costs.

II.  Pre-Trial Proceedings

The Court presumes the parties' familiarity with the procedural background as set forth in this Court's March 31, 2020 Memorandum & Order, which adopted then-Magistrate Judge Brown's Report and Recommendation as to Defendants' most-recent motion for summary judgment.  (Mar. 31, 2020 M&O, ECF No. 197, at 7-12.)  In its March 31, 2020 Memorandum & Order, this Court denied Defendants' request for summary judgment as to Plaintiff's control group liability claim against Bergen Cove.  In so doing, the Court first rejected Defendants' contention that the statute of limitations ran from the date that withdrawal liability was accelerated regardless of when Plaintiff obtained knowledge that Bergen Cove was a potential member of Hall-Mark's controlled group.  (Id. at 17.)  Then, the Court found genuine disputes of material fact precluded the Court from concluding as a matter of law when Plaintiff knew, or should have known had it diligently investigated, that Bergen Cove was a potential control group member for statute of limitations purposes.  (Id. at 18-21.)

Having resolved the remaining outstanding substantive issues, the Court set the case down for jury trial to begin on February 8, 2021, which was later adjourned to April 28, 2021.  At trial, the jury heard the following evidence relevant to Defendants' post-trial motion.

III. <u>The Trial Evidence</u>

    A.   <u>Hall-Mark Ceases Operations, Triggers Withdraw Liability</u>

        Plaintiff administers various employee benefit plans established and maintained pursuant to collective bargaining agreements ("CBA") between Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO (the "Union") and employers in the electrical, elevator, sign, television, burglar alarm, and other related industries. (Tr. 30:4-16; SF ¶¶ 2-4.) From May 1, 2005 through April 30, 2008, non-party Hall-Mark Electrical Supplies Corporation ("Hall-Mark") was bound to a CBA with the Union, among others, that required Hall-Mark to remit employee benefit contributions on behalf of each employee covered by the CBA. (Tr. 48:5-9; SF ¶ 48.) On or about April 20, 2007, Hall-Mark ceased operations. (Tr. 92:23-25; SF ¶ 51.) By permanently ceasing its operations, Hall-Mark's obligations to remit employee benefit contributions under the CBA ceased, and it thereby incurred withdrawal liability under Section 4203(a) of ERISA, 29 U.S.C. § 1383(a). (Tr. 50:4-16; SF ¶ 53.) At the time Hall-Mark ceased operations, Mr. Zizza owned 80% of Hall-Mark. (SF ¶ 45.)

        By letter dated May 30, 2007, Plaintiff calculated Hall-Mark's withdrawal liability and requested Hall-Mark advise whether it had been a member of a group of trades or businesses under common control and, if so, to provide the names and addresses of

each entity within the control group.  (Tr. 51:17-52:6, 64:5-20;
DX CC.)  By August 30, 2007, Plaintiff determined that Hall-Mark
defaulted on its withdrawal liability.  (Tr. 53:1-7; DX H ¶ 28.)
By letter dated September 26, 2007, Plaintiff accelerated payment
of the full withdrawal liability amount and demanded payment in
full.  (Tr. 53:10-22; DX M.)

    B.    <u>Plaintiff Initiates the Prior Action Against Hall-Mark</u>

On June 13, 2007, Plaintiff initiated the Prior Action
against Hall-Mark to collect unpaid contributions, and on October
18, 2007, Plaintiff amended the complaint to add a claim for
withdrawal liability and to seek an order directing Hall-Mark to
provide controlled group information.  (Tr. 53:25-54:5; DX P.)

On September 26, 2007 and October 18, 2007, Plaintiff
contacted non-party Metropolitan Paper Recycling, Inc.
("Metropolitan Paper") to recover Hall-Mark's withdrawal
liability, because it believed, based on "research" it had
conducted, that Metropolitan Paper was "jointly owned" and
"related" to Hall-Mark.  (Tr. 65:16-66:15; DX M; Tr.66:19-67:14;
DX N.)

On November 27, 2007, Deborah A. Hulbert ("Ms.
Hulbert"), Hall-Mark's former outside counsel, emailed Plaintiff's
in-house counsel, Christine Sessa ("Ms. Sessa"), to introduce
herself and to advise Plaintiff that Hall-Mark had no assets to
satisfy the demand for payment of withdrawal liability.  (DX O.)

In response, Ms. Sessa renewed Plaintiff's request for Hall-Mark to advise whether it was or is a member of a controlled group "within the meaning of ERISA Section 4001(b)(1) and Sections 414 and 1563 of the Internal Revenue Code." (Id.)  On the same day, Ms. Hulbert wrote that she "will get back to [Ms. Sessa] on the controlled group inquiry." (Id.)

On January 23, 2008, Ms. Hulbert responded to Plaintiff's demands for control group information and advised that (1) Mr. Zizza had "ownership interests in several other entities," (2) "Hall-Mark was not a member of a controlled group of corporations or trades or businesses under common control," and (3) "Hall-Mark was not a member of a brother-sister controlled group because none of the other entities in which Mr. Zizza has an ownership interest is also owned by four or fewer other natural persons, trusts or estates." (Tr. 71:20-72:4; DX S.)  In a subsequent letter dated March 11, 2008, Ms. Hulbert provided Plaintiff with a list that "identifie[d] all businesses in which [Mr. Zizza], the 80% shareholder of Hall-Mark, has an interest and the percentage of his interest." (Tr. 74:17-75:14; DX J.)  This list, titled "Sal Zizza Investments," identified that Mr. Zizza had a 76% interest in Bergen Cove. (Tr. 75:15-16; DX J.)

On April 22, 2008, the parties met to discuss a settlement of the alleged withdrawal liability. (Tr. 78:3-9.) The parties discussed whether Hall-Mark was a member of a control

group (id. at 78:11-13; see also DX G ¶ 14), although Plaintiff argues that Mr. Zizza "refused to commit to the existence of any controlled group members" (DX G ¶ 14).  Mr. Zizza also provided a document containing his financial position as of December 31, 2007, which disclosed his investment in Bergen Cove to be in the amount of $1,800,000.  (Tr. 185:1-11; DX L.)

Based on the information contained in the March 11, 2008 letter concerning the entities Mr. Zizza had ownership interests in, on or about July 16, 2008, Plaintiff filed a second amended complaint in the Prior Action that added Zizza & Co. and Primary Capital Resources Inc. ("Primary Capital") as defendants.  (Tr. 41:9-13; DX R.)  Mr. Zizza provided advisory and consulting business to Bergen Cove, Metropolitan Paper, and a third company, BAM, through Zizza & Co.  (SF ¶¶ 36, 38.)  The second amended complaint alleged that Zizza & Co. and Primary Capital were 100% owned by Mr. Zizza on the date of Hall-Mark's withdrawal, thereby rendering Zizza & Co. and Primary Capital jointly and severally liable for Hall-Mark's withdrawal liability as members of a controlled group.  (DX R.)  On October 23, 2009, the Court entered the Judgment against Hall-Mark, alone, and against Zizza & Co. and Primary Capital, jointly and severally.  (Tr: 42:21-43:7; SF ¶ 56.)

C.    Mr. Zizza Moves His Advisory and Consulting Business

In November 2009, shortly after the Judgment was entered, Mr. Zizza shifted the advisory services he provided for Bergen Cove, BAM, and Metropolitan Paper from Zizza & Co. to Zizza & Associates, which was newly incorporated in the State of New York on November 30, 2009.  (SF ¶ 60-61.)  Mr. Zizza owns 70% of Zizza & Associates, with his three sons owning the remaining 30%, in equal shares, as beneficiaries of three discrete irrevocable trusts.  (SF ¶¶ 63-64.)

In April 2013, Mr. Zizza decided to stop performing his consulting services through Zizza & Associates, and instead began to perform them through Bergen Cove.  (SF ¶ 68.)  At an October 17, 2011 post-judgment deposition, Mr. Zizza testified that he owned 70% of Bergen Cove and that his three sons owned 10% each. (Tr. 79:12-21.)

DISCUSSION

I.   Legal Standard

A successful motion under Federal Rule of Civil Procedure ("Rule") 50 requires the moving party show that, after a full hearing on an issue at trial, "there is no legally sufficient evidentiary basis for a reasonable jury" to resolve the issue in favor of the non-moving party.  Fed. R. Civ. P. 50(a)(1). The post-verdict Rule 50 motion merely renews the motion made prior to the submission of the case to the jury, and therefore, is

limited to the grounds raised by the losing party in that motion. See AIG Global Secs. Lending Corp. v. Banc of Am. Sec., LLC, 386 F. App'x 5, 6 (2d Cir. 2010). "In reviewing a Rule 50 motion, a court may consider all the record evidence, but in doing so it 'must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" Cross v. N.Y. City Transit Auth., 417 F.3d 241, 247-48 (2d Cir. 2005) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)). At the close of all the evidence, Defendants moved for judgment as a matter of law on the issues of control group liability, statute of limitations, evade-or-avoid liability, alter ego liability, and liability under the NY BCL, so those issues are properly before the Court. (Tr. 206-12.)

The moving party faces a heavy burden on a Rule 50 motion. Judgment as a matter of law is reserved for situations where there "exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair-minded [persons] could not arrive at a verdict against [it]." Cangemi v. Town of East Hampton, 374 F. Supp. 3d 227, 232 (E.D.N.Y. 2019) (Seybert, J.), aff'd sub nom. Cangemi v. United States, 13 F.4th 115 (2d Cir. 2021); see also Kosmynka v. Polaris Indus., 462 F.3d 74, 79 (2d Cir. 2006). The Court should not substitute its own

factual assessment of the evidence for the jury's and must deny a motion for judgment as a matter of law unless "the evidence is such that . . . there can be but one conclusion as to the verdict that reasonable men could have reached." Samuels v. Air Transp. Local 504, 992 F.2d 12, 14 (2d Cir. 1993) (internal quotation marks omitted). Accordingly, in an order determining a Rule 50(b) motion, the district court may: "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." FED. R. CIV. P. 50(b).

Rule 59 is less stringent than Rule 50 in two respects. First, the court can grant a new trial "even if there is substantial evidence supporting the jury's verdict." Manley v. AmBase Corp., 337 F.3d 237, 244-45 (2d Cir. 2003). Second, the trial judge can weigh the evidence independently, without having to view it in the light most favorable to the verdict winner. See DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 133-34 (2d Cir. 1998). In short, Rule 59 motions are granted where the "trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." Medforms, Inc. v. Healthcare Mgmt. Sols., Inc., 290 F.3d 98, 106 (2d Cir. 2002). Although the moving party faces a slightly lower burden on a Rule 59 motion, the hurdle is still high. The Court cannot

disturb a jury verdict unless it is "egregious."  DLC Mgmt. Corp.,
163 F.3d at 134.

II.  Analysis

        The Court begins with the statute of limitations issue
before  addressing  control  group  liability,  evade-or-avoid
liability, alter ego liability, and liability under the NY BCL.

    A.    Statute of Limitations

        Defendants first argue for judgment as a matter of law
or a new trial on the grounds that Plaintiff's control group claim
against Bergen Cove, filed on May 15, 2014, is time barred.  The
Court disagrees.

        Under  ERISA,  "a  plan  fiduciary,  employer,  plan
participant or beneficiary, who is adversely affected by the act
or omission of any party . . . may bring an action for appropriate
legal  or  equitable  relief,  or  both."   29 U.S.C. § 1451(a)(1).
Further, 29 U.S.C. § 1451(f) ("Section 1451(f)") provides that:

> An action under this section may not be brought after
> the later of--
>
> (1)  6 years after the date on which the cause of action
>      arose, or
>
> (2)  3 years after the earliest date on which the plaintiff
>      acquired or should have acquired actual knowledge of the
>      existence of such cause of action; except that in the
>      case of fraud or concealment, such action may be brought
>      not later than 6 years after the date of discovery of
>      the existence of such cause of action.

29 U.S.C. § 1451(f).

To begin, Defendants renew their argument that the statute of limitations began to run from the date that withdrawal liability was accelerated, <u>i.e.</u>, on September 26, 2007, regardless of when Plaintiff obtained knowledge that Bergen Cove was a potential member of Hall-Mark's controlled group. (Support Memo at 6-8.) The Court already rejected this argument in its March 31, 2020 Memorandum & Order, reasoning that Defendants' argument "belie[s] the Supreme Court's explanation of alternate 6-year and 3-year limitations periods, '<u>each with different triggering events</u>,' and would render Section 1451(f)(2)'s discovery rule superfluous in the context of unknown and allegedly concealed control group members." (Mar. 31, 2020 M&O at 15-17 (citing <u>Intel Corp. Inv. Pol'y Comm. v. Sulyma</u>, 140 S. Ct. 768, 774 (2020) and abiding by <u>Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.</u>, 522 U.S. 192 (1997)).) As the Court explained, while ERISA's six-year time period began to run when the Joint Board elected to accelerate withdrawal liability (<u>id.</u> at 16), the statute's three-year limitations period has a different triggering event: the date that Plaintiff had actual knowledge, or should have acquired such knowledge, that it had a cause of action against Bergen Cove for control group liability (<u>id.</u> at 16-17). Thus, it is law of the case that the three-year limitation period on Plaintiff's control group claim against Bergen Cove did not begin to run when the Joint Board accelerated withdrawal liability,

13

and while Defendants argue the Court "wrongly adopted" this position (Support Memo at 7), they offer no "cogent or compelling" reasons, such as "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," to depart from this point of law. In re Nassau County Strip Search Cases, 958 F. Supp. 2d 339, 343 (E.D.N.Y. 2013) (quoting Pescatore v. Pan Am. World Airways, Inc., 97 F.3d 1, 8 (2d Cir. 1996)).

The question remains: If the three-year limitation period did not begin to run on the date the Joint Board accelerated withdrawal liability, when did it begin to run? Put otherwise, when did Plaintiff have actual knowledge, or should it have acquired actual knowledge through diligent investigation, that it possessed a control group claim against Bergen Cove? As the Court instructed the jury: "The three-year clock started ticking on the limitations period when the Plaintiff knew, or should have known through diligent investigation, of the facts giving rise to its claim that Bergen Cove was within Hall-Mark's controlled group. The Plaintiff asserted its controlled group claim against Bergen Cove on May 15, 2014," so "[t]he claim is barred by the statute of limitations if the Plaintiff knew or should have known through diligent investigation of the facts giving rise to the claim more than three years before May 15, 2014." (Tr. 319:4-14.) In rejecting Defendants' statute of limitations defense, the jury

necessarily found that the Joint Board had no such knowledge prior to May 15, 2011.   Defendants argue that this conclusion was unreasonable.   The Court disagrees.

Defendants argue that the Joint Board "did virtually nothing to investigate and uncover controlled group members," like Bergen Cove.  (Support Memo at 9.)  In support of their contention, Defendants point to (1) the Joint Board's knowledge as of November 2007 that Hall-Mark had no assets, and therefore that it would need to satisfy its debts elsewhere, which it did, first by timely suing Metropolitan Paper, and then by timely suing Primary Capital and Zizza & Co.; (2) the letter correspondence between Ms. Sessa and Ms. Hulbert, in which Defendants claim the Joint Board did little more than inquire "who is in the controlled group?" without asking for the production of documents or factual information that could disclose such entities; and (3) the April 22, 2008 settlement meeting between Mr. Zizza and counsel for the Joint Board, where Mr. Zizza provided his personal financial statement disclosing the value of his interest in Bergen Cove.  According to Defendants, this evidence shows that the Joint Board had actual knowledge, or at least should have known through diligent investigation, of its control group claim against Bergen Cove before May 15, 2011, rendering the claim untimely and the jury's finding unreasonable.

However, drawing all reasonable inferences in favor of Plaintiff as the non-moving party, the Court is unable to conclude

that there is a complete absence of evidence supporting the jury's finding that the Joint Board did not possess the requisite knowledge of its claim against Bergen Cove until after May 15, 2011, as the Court must to direct the entry of judgment on the issue. To the contrary, it was reasonable for the jurors to doubt that the Joint Board could have learned of its control group claim against Bergen Cove by "simply ask[ing] Mr. Zizza," as Defendants contend. (Support Memo at 12.) To begin, in response to the Joint Board's control group inquiry, Ms. Hulbert, counsel for Hall-Mark at the time, advised "Hall-Mark was not a member of a controlled group of corporations or trades or businesses under common control." This was inaccurate. The subsequent letter provided on March 11, 2008, in which Ms. Hulbert provided Plaintiff with a list that "identifie[d] all businesses in which [Mr. Zizza], the 80% shareholder of Hall-Mark, has an interest and the percentage of his interest," although closer to the truth, still provided inaccurate information as to Mr. Zizza's interest in Bergen Cove by stating he owned 76% of the company, rather than the 70% Mr. Zizza actually owned, with the remaining 30% being held in three discrete trusts for the benefit of each of his sons. And there is no evidence that Mr. Zizza dispelled these inaccuracies at the April 22, 2008 settlement conference. The fact that Mr. Zizza disclosed the value of his interest in Bergen Cove at that meeting did not mean the Joint Board had the information it needed to make

16

a determination as to its controlled group status, because, as discussed below, that determination is based on ownership percentage, not dollar amount.  Plaintiff adduced all of this evidence in support of its argument that Defendants "created a web of misinformation that prevented the Joint Board from learning the truth about Bergen Cove," i.e., its status as a control group member.  (Tr. 18:15-17.)  As a result, it was reasonable for the jury to conclude that the Joint Board did not have the necessary knowledge of its claim against Bergen Cove until, for example, Mr. Zizza's October 2011 deposition, when he clarified that he owned 70% of Bergen Cove and that his sons owned 10% each through trusts.

In sum, the jury's finding was neither completely unsupported by evidence or seriously erroneous.  Rather, based on the evidence adduced at trial, it was reasonable for the jury to conclude that the Joint Board -- neither Sherlock or Dogberry, but rather somewhere in between -- did not have actual knowledge, and should not have had such knowledge, prior to May 15, 2011. Accordingly, Defendants' motion for judgment as a matter of law or a new trial on its statute of limitations defense as to Bergen Cove's control group liability is DENIED.

B.   Control Group Liability as to Bergen Cove

Next, Defendants argue that, even if Plaintiff's control group claim is not barred by the statute of limitations, Bergen

Cove is entitled to judgment as a matter of law on that claim.  On this issue, the Court agrees with Defendants.

"Under the principles of the common control doctrine, 'all businesses under common control are treated as a single employer for purposes of collecting withdrawal liability, and each is liable for the withdrawal liability of another.'" Ret. Plan of UNITE HERE Nat. Ret. Fund v. Kombassan Holding A.S., 629 F.3d 282, 285 (2d Cir. 2010) (quoting Corbett v. MacDonald Moving Servs., Inc., 124 F.3d 82, 86 (2d Cir. 1997)); see also 29 U.S.C. § 1301(b)(1) (incorporating standard for determining common control from Internal Revenue Code regulations).  "'Common control' can be established where entities are members of a 'brother-sister' group of businesses under common control, which requires that they are 'controlled by the same five or fewer persons owning at least 80% of the shares of each corporation, with at least 50% of the shareholder's ownership interests in each corporation identical.'" Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. B & M Escorts, Inc., No. 16-CV-2498, 2018 WL 2417842, at *12 (E.D.N.Y. May 29, 2018) (citing I.L.G.W.U. Nat'l Ret. Fund v. ESI Grp., Inc., No. 92-CV-0597, 2002 WL 999303, at *5 (S.D.N.Y. May 15, 2002), aff'd sub nom. I.L.G.W.U. Nat'l Ret. Fund v. Meridith Grey, Inc., 94 F. App'x 850 (2d Cir. 2003)).

The parties agree that the 50% requirement was met, and that, as of April 20, 2007, Mr. Zizza owned 80% of Hall-Mark.  (SF

¶ 45.)  The parties further agree that Mr. Zizza owned 70% of the stock of Bergen Cove, and that the remaining 30% of Bergen Cove was owned, in equal parts, by three irrevocable trusts for the benefit of each of Mr. Zizza's three sons (the "FBO Trusts").  (SF ¶¶ 18-19.)  But the analysis does not end here.  Rather, as discussed below, "in the calculation of ownership interest, direct as well as indirect ownership is included."  I.L.G.W.U. Nat'l. Ret. Fund v. ESI Grp., Inc., 2002 WL 999303, at *6 (citing 26 C.F.R. § 1.414(c)-4); see also Ferrara v. Smithtown Trucking Co., Inc., 29 F. Supp. 3d 274, 287 (E.D.N.Y. 2014) (Bianco, J.) (applying voting power test promulgated at 26 C.F.R. § 1.1563-1(a)(6) to resolve the plaintiff's motion for leave to amend its complaint to add a claim for withdrawal liability against a control group defendant).

Thus, to prevail on its control group claim, Plaintiff needed to prove by the preponderance of the evidence that Mr. Zizza controlled at least 80% of the stock of Bergen Cove.  To make up for the ten percent differential, Plaintiff pursued two theories of indirect ownership: (1) the Voting Power Test and (2) the Stock Value Test.  The Court addresses each in turn.

### 1.   The Voting Power Test

Consistent with the foregoing, the Court instructed the jury that "[e]ven if a stockholder owns less than all of the corporation's stock, that stockholder can nonetheless be

considered, for purposes of controlled group analysis, to own all of the corporation's voting stock, if (1) there is an agreement, implicit or explicit, that the other shareholders will not vote their stock in the corporation, or (2) the other stockholders agree to vote their stock in the corporation in the manner specified by another shareholder." (Tr. 315:16-24; see also 26 C.F.R. § 1.1563-1(a)(6).)   Thus, Plaintiff could prevail under the Voting Power Test by proving (1) the other members of Bergen Cove, i.e., the trustees for the three FBO Trusts, had an agreement, explicit or implicit, with Mr. Zizza that they would not vote their interests in Bergen Cove; or (2) the trustees agreed to vote their interests as Mr. Zizza directed. (Tr. 315-16.)   The jury found for Plaintiff on its control group claim; however, the Court concludes that there was a complete absence of evidence at trial to support this finding.

        At trial, Mr. Zizza testified that the trustees had "full discretion" as to how they would vote their shares in Bergen Cove. (Tr. 123-24.)   This is dispositive on the Voting Power Test absent evidence to the contrary, and the evidence Plaintiff cites does not undermine Mr. Zizza's testimony. For example, Plaintiff points out that Mr. Zizza testified that he "ran" Bergen Cove. (Tr. 122.)   But this is not evidence of an agreement as to how the trustees would vote their shares in Bergen Cove.   Rather, Mr. Zizza's testimony related to his role as CEO of Bergen Cove.   (See Tr.

121:24-25.)  Plaintiff also refers to the lack of evidence that the trustees made any decisions regarding the management or operation of Bergen Cove.  To the contrary, the only evidence on this point was Mr. Zizza's testimony that he met quarterly with the trustees to discuss the company.  (Tr. 183.)  In any event, Plaintiff cannot shift the burden to Defendant to disprove the trustees' participation in Bergen Cove.  (Tr. 316 (Court instructing the jury that to find in Plaintiff's favor on the control group claim, "Plaintiff must prove by a preponderance of the evidence that (1) the other members of Bergen Cove had an agreement -- explicit or implicit -- with Mr. Zizza that they would not vote their interests in the entity; or (2) the other members of Bergen Cove agreed to vote their interest in any manner specified by Mr. Zizza").)  Plaintiff needed to come forward with evidence that the trustees agreed to vote or not to vote their shares as Mr. Zizza directed; it was not enough to rely on the absence of evidence that the trustees were involved, especially where Mr. Zizza testified that they were involved in quarterly meetings.

At a minimum, Plaintiff argues that the foregoing evidence, or lack thereof, provided the jury a sufficient basis to infer an "implicit agreement" existed that the trustees would not vote their shares, as the Court permitted in its instruction.  To determine whether an implicit agreement existed between Mr. Zizza

and the trustees required "some amount of inference."  Cf. Est. of Stewart v. Comm'r, 617 F.3d 148, 156 (2d Cir. 2010) (analyzing how to characterize for tax purposes a transaction involving a purported implied agreement).  The Court instructed the jurors to "draw any inferences that you deem to be reasonable and warranted from the evidence," (Tr. 304:1-3 (emphasis added)), but cautioned that, when drawing an inference, they were "not permitted to engage in mere guesswork or speculation" (Tr. 309:4-5).  Here, there was no evidence from which the jury could have inferred the existence of an implied agreement, because Plaintiff proffered none.  Accordingly, the jury's finding on the Voting Power Test "could only have been the result of sheer surmise and conjecture."[5]

### 2.   The Stock Value Test

Plaintiff advanced an alternative ground for control group liability under the Stock Value Test, pursuant to which Plaintiff attempted to prove that the interests Mr. Zizza's sons held in the FBO Trusts should be attributed to Mr. Zizza to meet the required 80% threshold for control group liability.

The Court instructed the jury on the complex rules governing attribution as follows:

> A child's stock can be considered to belong to the parent, even if the child does not own the

---

[5] Plaintiff's reliance on Ferrara is similarly unavailing, because Ferrara was decided on motion for leave to amend, and therefore its analysis related to "allegations" in support of the Voting Power Test, not evidence.  See Ferrara, 29 F. Supp. 3d at 287.

stock directly but owns it through a
trust. . . . The law states that if a
beneficiary has an "actuarial interest" in a
trust of 5% or more, the beneficiary is
considered to own the assets in the trust. An
actuarial interest is determined by assuming
the maximum exercise of discretion by the
fiduciary in favor of such beneficiary and the
maximum use of an interest owned directly or
indirectly by or for a trust to satisfy the
beneficiary's rights. A beneficiary of a
trust who cannot under any circumstances
receive any part of an interest held by the
trust, including the proceeds from the
disposition thereof, or the income therefrom,
does not have an actuarial interest in such
organization interest. Thus, a beneficiary of
a trust who cannot under any circumstances
receive any interest in the stock of a
corporation which is a part of the principal
or property of the trust (including any
accumulated income therefrom or the proceeds
from a disposition thereof) does not have an
actuarial interest in such stock. However, an
income beneficiary of a trust does have an
actuarial interest in stock if he has any
right to the income from such stock even
though under the terms of the trust instrument
such stock can never be distributed to him.

(Tr. 317-18.)

Thus, pursuant to the foregoing analysis, the Court
instructed the jury that if it found Mr. Zizza's sons to be the
beneficiaries of the FBO Trusts, and that they held an actuarial
interest of 5% or more, then the stock in that percentage would be
deemed held by them as beneficiaries of the respective Trusts.
(Tr. 318.) And since two of Mr. Zizza's sons were under 21 years
during the relevant period, their holdings would be attributed to
their father, Mr. Zizza, and the latter's ownership stake in Bergen

Cove would cross the 80% threshold for control group purposes. (Tr. 318.)

As Defendants correctly point out, Plaintiff did not introduce evidence of the terms of the FBO Trusts, let alone the amount of any beneficiary's actuarial interest as of the date that Hall-Mark withdrew from the plan. (Support Memo at 5.) The only evidence as to the terms of the FBO Trusts came during Mr. Zizza's testimony and consisted of the following: (1) Mr. Zizza's sons have not received a distribution of Bergen Cove stock or income from the Trusts; (2) Bergen Cove never declared a dividend; and (3) there has never been an actuarial valuation of the percentage value of the Trusts' beneficial stock holdings as of the date Hall-Mark withdrew from the plan. (Tr. 183.) According to Defendants, without any evidence regarding the Trusts' terms, the jurors could not reasonably conclude that Mr. Zizza's children had an actuarial interest in the trusts of 5% or more.

The Court agrees with Defendants that without such information, there was a complete absence of evidence to support the jury's finding in favor of Plaintiff on the control group claim. Plaintiff raises several arguments in response, none of which are persuasive.

First, Plaintiff argues that the Court's instructions did not require the jury to consider the Trusts' respective terms to make a finding under the Stock Value Test. This argument is

foreclosed by the instructions, which explicitly instructed the jurors to consider the trustee's discretion and the beneficiary's rights to receive income to determine whether the beneficiaries held the requisite actuarial interest. Only the Trusts' respective terms could have shed light on these questions.

        To avoid this conclusion, Plaintiff pivots to arguing that the jurors did not need to review the Trust terms to make a finding under the Stock Value Test.[6] According to Plaintiff, because each of Mr. Zizza's sons was the sole beneficiary of his respective trust, no one else other than each son could have had an actuarial interest in his trust. (Opp'n at 33-34.) Based on this fact, Plaintiff argues "the jury reasonably could have concluded that each son had an actuarial interest of at least 5 percent in his respective trust." (Id. at 34.) The Court finds the better view is that determination of an individual's interest in a trust requires an actuarial valuation under 26 C.F.R. § 1.414(c)-4(a), which necessitates a review of the relevant trust documents to determine whether, after assuming the "maximum exercise of discretion" by the trustee in favor of the beneficiary and the "maximum use of the organization interest to satisfy the

---

[6] The Court notes in passing that three years after discovery concluded Plaintiff sought to re-open discovery to obtain the terms of the trust agreements in order to use them at trial in support of their control group claim against Bergen Cove, but their request was denied by Judge Bianco. (ECF No. 159, at 10-11.)

beneficiary's rights," the beneficiary's actuarial interest exceeds the 5% threshold. See Trustees of S. Cal. IBEW-NECA Pension Plan v. Bypass Tr. Under 2010 Steelman Inter Vivos Tr., No. 17-CV-2078, 2018 WL 6163109, at *4-5 (C.D. Cal. Oct. 1, 2018) (reviewing the language of the relevant trust document to establish an individual's actuarial interest in the at-issue trust); Cent. States, Se. & Sw. Areas Pension Fund v. Ray C. Hughes, Inc., No. 09-CV-7201, 2012 WL 1520721, at *3 (N.D. Ill. Apr. 30, 2012) ("The terms of the trust, therefore, allow First Bank & Trust to consume the trust's entire interest in Hughes, Inc. and RARU in favor of Ruth, making its shares attributable to her."); Cent. States, Se. & Sw. Areas Pension Fund v. SCOFBP, LLC, 738 F. Supp. 2d 840, 846 (N.D. Ill. 2010) ("Cappy is presumed to have had a near 100 percent actuarial interest in the MLC Family Trusts' assets because nothing in the trust documents limits the trustees' discretion to use all of trust assets for Cappy's benefit."), aff'd, 668 F.3d 873 (7th Cir. 2011). But see Chi. Area I. B. of T. Health & Welfare Tr. Fund v. Olympic Wholesale Produce, Inc., No. 18-CV-0202, 2019 WL 2994525, at *5 (N.D. Ill. July 9, 2019) (attributing trust's interest to beneficiary where the individual was the sole beneficiary of the trust, which owned or controlled a 95% interest in the control group entity). Without such an analysis, any finding of attribution, like the jury's here, is based on assumption, not evidence.

Accordingly, Defendants' motion for judgment as a matter of law on the control group claim against Bergen Cove is GRANTED.

C.   Evade-or-Avoid Liability as to Zizza & Associates and Bergen Cove

Defendants also ask the Court for judgment as a matter of law on Plaintiff's evade-or-avoid liability claim.  At issue here is Mr. Zizza's decision to wind down the advisory and consulting business he operated under Zizza & Co., resume those operations under Zizza & Associates, and later shift them to Bergen Cove.  At trial Plaintiff pursued evade-or-avoid liability against Zizza & Associates and Bergen Cove based on Mr. Zizza's decision "to transact this business, not [at] Zizza & Company, but to transact it as Zizza & Associates," and later Bergen Cove.  (Tr. 232-33.)  Under 29 U.S.C. § 1392(c) ("Section 1392"), "[i]f a principal purpose of any transaction is to evade or avoid liability," including withdrawal liability, then the withdrawal liability "shall be determined and collected[] without regard to such transaction."

Defendants argue "[n]o reasonable jury could have found the existence of the required transaction on the trial record," because (1) no assets, such as money, accounts, equipment, or collateral, or any business opportunities were moved from Zizza & Co. to Zizza & Associates or, vice versa, from Zizza & Associates to Bergen Cove; and (2) there were no transactions between Zizza

& Co. and Zizza & Associates, or between Zizza & Associates and Bergen Cove.  (Support Memo at 15-16 (citing Tr. 172, 177, 180-81).)  "Instead," Defendants argue, "the only evidence at trial was that Mr. Zizza stopped working for Zizza & Company, started working for Zizza & Associates, stopped working for Zizza & Associates, and started working for Bergen Cove."  (Id. at 16.) Defendants make a related point that the jury's damages calculation, which awarded Plaintiff the entire withdrawal liability amount, was erroneous, because under the statute the remedy for an evade-or-avoid claim is to ignore the offending transaction.  (Id. at 17-20.)  Plaintiff counters that "[i]t was the affirmative act of transacting his business at those two companies, not the negative act of ceasing the business, that satisfied the 'transaction' requirement."  (Opp'n at 12.) According to Plaintiff, the asset that moved from one company to the next was Mr. Zizza's advisory and consulting business.  (Id.)

        The parties agree that before evade-or-avoid liability can be imposed, there must be a transaction.  The Court instructed the jury to find in favor of Plaintiff on its evade-or-avoid claim if the jury found "that one or more transactions occurred, that a principal purpose of one or more of the transactions was to evade or avoid payment of withdrawal liability, and that these transactions resulted in assets being transferred to Zizza & Associates and/or Bergen Cove." (Tr 322:3-7.)  Further, the Court

instructed the jury that the "word 'transaction' comes from the verb 'to transact,' which means to do, carry on, or conduct. Merely ceasing business operations is not a 'transaction' for purposes of ERISA." (Tr. 321:17-20.)

The Court finds for Defendants on this issue, because there was no evidence of a "transaction" between Zizza & Co. and Zizza & Associates, or Zizza & Associates and Bergen Cove, within the ambit of Section 1392.  The Court's conclusion comports with Second Circuit decisional law under Section 1392, which does not permit the Court to "create a transaction that never existed." N.Y. State Teamsters Conf. Pension & Ret. Fund v. C&S Wholesale Grocers, Inc., 24 F.4th 163, 173 (2d Cir. 2022) (quoting Sun Cap. Partners III, LP v. New England Teamsters & Trucking Indus. Pension Fund, 724 F.3d 129, 149 (1st Cir. 2013)).  Indeed, without a transaction, such as the sale of assets between counterparties, it was impossible for the jury to properly apply Section 1392's directive, which aims to "put the parties in the same situation as if the offending transaction never occurred," i.e., to "erase that transaction." Id.  The Court's conclusion is further supported by analogous decisions, issued by district courts throughout the country, that have declined to treat the cessation of business operations as a "transaction" within the meaning of Section 1392, reasoning instead that the transaction "must be, in substance, something that has been undertaken or completed, and something

that can be invalidated or unwound," such as the "sale of a business's assets." In re G.A.F. Seelig, Inc., No. 17-CV-46968, 2020 WL 1486785, at *8 (Bankr. E.D.N.Y. Mar. 9, 2020). Under these facts, the proper course for an ERISA fund is to pursue liability based on an alter ego theory, as Plaintiff did successfully here.

The starting point for the Second Circuit's decisions that address evade-or-avoid liability under ERISA has been a transaction, more specifically, an asset purchase. C&S Wholesale Grocers, Inc., 24 F.4th at 168-69; IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1053 (2d Cir. 1993) (applying Section 1392 to asset purchase between ERISA contributing employer and non-employer). For example, in C&S Wholesale, the defendant, C&S, sought to acquire non-party Penn Traffic, an operator of 80 retail grocery stores and two warehouses, one of which, located in Syracuse, employed union members pursuant to a CBA that required Penn Traffic to make contributions to a multiemployer pension plan fund. C&S Wholesale Grocers, Inc., 24 F.4th at 168. Because C&S did not want to acquire the withdrawal liability associated with the Syracuse warehouse, the parties transacted around it. Id. Penn Traffic filed for bankruptcy shortly after the deal closed, prompting the plaintiff-fund to pursue the remainder of Penn Traffic's withdrawal liability from C&S under a theory of evade-or-avoid liability, among others. Id. at 169.

On appeal, the Second Circuit drew a distinction between (1) a transaction involving an ERISA contributing employer and a non-employer where the primary purpose of the transaction is to evade or avoid ERISA liability, and (2) a transaction in which the non-employer merely declines to assume that liability under the terms of the purchase agreement. Id. at 172-73. This "difference is critical," the panel explained, because Section 1392 "requires courts to put the parties in the same situation as if the offending transaction never occurred; that is, to erase that transaction. It does not, by contrast, instruct or permit a court to take the affirmative step of writing in new terms to a transaction or to create a transaction that never existed." Id. at 173 (emphasis added) (first quoting Sun Cap. Partners III, LP, 724 F.3d at 149; and then citing Lopresti v. Pace Press, Inc., 868 F. Supp. 2d 188, 206 (S.D.N.Y. 2012)).

That distinction applies with equal force here. To begin, the trial record is devoid of any transaction that could support evade-or-avoid liability as articulated by Second Circuit caselaw. And the Court cannot create a transaction that never existed, such as by re-imagining Mr. Zizza's decision to move his advisory and consulting business from Zizza & Co. to Zizza & Associates and then to Bergen Cove as one that involved a transaction between those parties. Section 1392's directive that offending transactions are to be ignored when calculating ERISA

liability underscores the need for a transaction that, like an asset purchase, can be unwound or "erased."  As the Second Circuit explained:

> To calculate <u>and</u> collect liability, "without regard to such transaction," any assets that were transferred in order to "evade or avoid liability," as well as the parties to whom they were improperly transferred, must be within the reach of the statute.  Further, to apply the MPPAA "without regard to such transaction," the transferor entity must be deemed to be in possession of improperly transferred assets.  Those assets must therefore be recoverable from the parties to whom they have been illegitimately transferred.

<u>Id.</u> at 1056 (emphasis in original).  While Plaintiff argues that the "asset that moved from one company to the next . . . was Zizza's advisory and consulting business" (Opp'n at 12), "[t]o calculate and collect" liability based on that would be unworkable, as the jury's verdict proved, and contrary to Section 1392's plan text.[7]

The Court's conclusion is further supported by decisions issued by district courts that have found evade-or-avoid liability did not extend as far as the jury's verdict extended it here.  For example, in <u>CIC-TOC Pension Plan v. Weyerhaeuser Co.</u>, the district

---

[7] While the panel in <u>C&S Wholesale</u> observed that "an employer who is otherwise working <u>with</u> a non-employer to make recovery on withdrawal liability unavailable" is brought within the reach of Section 1392, the context of that line makes clear the panel was referring to collaboration in connection with a transaction.  <u>C&S Wholesale</u>, 24 F.4th at 173 (emphasis in original).

court rejected the plaintiff-fund's argument that the defendant's decision to cease business operations constituted a transaction for purposes of evade-or-avoid liability, <u>even where</u> the defendant admitted that it timed the cessation of operations to avoid incurring withdrawal liability.  911 F. Supp. 2d 1088, 1095-96 (D. Or. 2012).  The <u>CIC-TOC</u> court reasoned that according to the evade-or-avoid provision's "plain meaning, it connotes <u>conducting</u>, rather than <u>ceasing</u>, business and connotes an event involving more than one party -- in other words, a bilateral agreement or arrangement."  <u>Id.</u> at 1096 (emphasis in original).  Similarly, another court found that "no court has held the cancellation of an LLC to be the type of event that should be considered a transaction for purposes of [evade-or-avoid liability].  Simply stated, the [c]ourt does not find that [the defendant's] cancellation falls within the category of transactions covered by [that provision]."  <u>Int'l Union of Operating Eng'rs, Loc. 68, AFL-CIO v. RAC Atl. City Holdings, LLC</u>, No. 11-CV-3932, 2013 WL 353211, at *7 (D.N.J. Jan. 29, 2013); <u>see also</u> <u>In re G.A.F. Seelig, Inc.</u>, 2020 WL 1486785, at *8 (reasoning that, under Second Circuit decisional law, a transaction for purposes of evade-or-avoid liability "must be, in substance, something that has been undertaken or completed, and something that can be invalidated or unwound," such as the "sale of a business's assets").  For similar reasons, Mr. Zizza's decision to cease operating his consulting and advisory services

under Zizza & Co. was not a transaction within the meaning of Section 1392.

Plaintiff creatively recasts the evidence at trial, arguing that Defendant "Zizza conducting his advisory and consulting services at Zizza & Associates reflected a bilateral agreement between him and that company" that was equivalent to a transaction.  (Opp'n at 13.)  But the Court is not required or permitted "to engage in legal gymnastics in order to guarantee pension plans at all costs."  Teamsters Pension Tr. Fund of Phila. and Vicinity v. Central Mich. Trucking Inc.., 857 F.2d 1107, 1109-10 (6th Cir. 1988).  In any event, Plaintiff had ample tools at its disposal to recover from Zizza & Associates and Bergen Cove, including through alter ego liability, which the Court turns to next.

Accordingly, Defendants motion for judgment as a matter of law on Plaintiff's evade-or-avoid claim is GRANTED.[8]

---

[8] This is not an invitation for Defendants to re-raise their argument that the Court lacks subject matter jurisdiction.  The Court exercises supplemental jurisdiction over Plaintiff's alter ego and NY BCL claims, given the Court's "long history with this case and familiarity with the issues by the time it dismissed Plaintiff['s] claims."  Cangemi v. United States, 13 F.4th 115, 135 (2d Cir. 2021); see also Kroshnyi v. U.S. Pack Courier Servs., Inc., 771 F.3d 93, 102 (2d Cir. 2014) (holding that the district court did not abuse its discretion in exercising supplemental jurisdiction given "the advanced stage of the litigation and the Court's long familiarity with the issues in the case, combined with the likely hardship to both parties should plaintiff be forced to re-file in state court").

D.    *Alter Ego* Claims

Defendants' attack on the jury's verdict for Plaintiff on its alter ego claims against Zizza & Associates and Bergen Cove is twofold.  First, Defendants argue the Court applied the wrong legal standard by charging the jury on the alter ego test articulated in Kombassan Holdings, 629 F.3d 282 (2d Cir. 2010), rather than the traditional test for piercing the corporate veil under New York State law.  (Support Memo at 20-24.)  Second, Defendants argue that the jury's verdict was not based on sufficient evidence.  (Id. at 24-26.)  The Court disagrees on both points.

Defendants have pressed this Court to apply the traditional test for piercing the corporate veil under New York State law, rather than Kombassan, on several occasions; however, the Court has declined Defendants' invitation to do so at every turn.  (See, e.g., Jan. 4, 2016 Oral Ruling, ECF No. 110, at 14-15 (finding Kombassan controls Plaintiff's alter ego claims here).)  Thus, it is law of the case that the test set forth by Kombassan governs Plaintiff's alter ego claims, and Defendants offer no cogent or compelling reasons to depart from this point of law at this late juncture.  Chiari v. New York Racing Ass'n Inc., 972 F. Supp. 2d 346, 362 (E.D.N.Y. 2013) ("[C]ourts are 'understandably reluctant' to reconsider a ruling once made, 'especially when one

judge is asked to consider the ruling of a different judge.'"
(quoting Ali v. Mukasey, 529 F.3d 478, 490 (2d Cir. 2008))).

In any event, Defendants' arguments are unpersuasive.
Defendants primarily contend that the Kombassan standard applies
only where the third-party is the alter ego of the ERISA employer
obligated to make contributions to the plan. (Support Memo at 21.)
According to Defendants, because Plaintiff does not seek to have
the jury find that Bergen Cove or Zizza & Associates is the alter
ego of Hall-Mark, the contributing employer, Kombassan is
inapplicable. Defendants cite no case adopting such a narrow view
of Kombassan, and the Court declines to adopt such a view here in
light of "the important policy considerations for employing a
flexible alter ego test in the ERISA context." Kombassan, 629
F.3d at 289; see also id. at 288 ("The purpose of the alter ego
doctrine in the ERISA context is to prevent an employer from
evading its obligations under the labor laws 'through a sham
transaction or technical change in operations.'" (quoting
Newspaper Guild of N.Y., Local No. 3 of the Newspaper Guild, AFL-
CIO v. NLRB, 261 F.3d 291, 298 (2d Cir. 2001))); Div. 1181 A.T.U.-
N.Y. Emps. Pension Fund By Cordiello v. City of N.Y. Dep't of
Educ., 910 F.3d 608, 618 (2d Cir. 2018).

Defendants' alternative argument with respect to the
sufficiency of the evidence is similarly unavailing. Consistent
with Kombassan, the Court instructed the jury that it should

36

consider the following factors to determine whether a company is the alter ego of another company: management; business purposes; operations; equipment; customers; supervision; and ownership. (Tr. 320:13-16.)  The Court also instructed the jury to consider the absence of the formalities which are part and parcel of normal corporate existence, such as the issuance of stock, the election of directors, the keeping of corporate records; inadequate capitalization; personal use of corporate funds; and the perpetration of fraud by means of the corporate vehicle. (Tr. 320:17-22.)  At trial there was more than sufficient evidence to establish alter ego liability based on the foregoing factors. Mr. Zizza operated his advisory consulting business at Zizza & Co., Zizza & Associates, and Bergen Cove.  The evidence also showed a substantial overlap in the management, equipment, customers, supervision, and ownership between the three companies.  (Tr. 98, 121); see also Goodman Piping Prod., Inc. v. N.L.R.B., 741 F.2d 10, 11-12 (2d Cir. 1984).  Accordingly, Defendants cannot satisfy their burden of showing that there was a complete absence of evidence supporting the jury's alter ego findings, or that such findings were seriously erroneous.

The Court has considered Defendants' remaining arguments, many of which have been raised previously, and finds that they are without merit.  Accordingly, Defendants' motion for

judgment as a matter of law or a new trial on Plaintiff's <u>alter ego</u> claim is DENIED.

    E.   <u>NY BCL Claim</u>

Last, Defendants ask the Court for judgment as a matter of law on Plaintiff's claim under the NY BCL against Mr. Zizza. The jury awarded Plaintiff $358,862.05, plus attorney's fees and litigation costs accrued after October 23, 2009.  (Tr. 336.)  The Court notes that this amount is the same as the amount entered in the Judgment against Zizza & Co. in the Prior Action against Hall-Mark.  (DX A.)

"A federal court, in reviewing the amount of damages awarded on a state law claim, must apply New York law." <u>Patterson v. Balsamico</u>, 440 F.3d 104, 119 (2d Cir. 2006) (citing <u>Gasperini v. Ctr. for the Humanities</u>, 518 U.S. 415, 430-31 (1996)).  "New York law provides that the appellate division 'reviewing a money judgment . . . in which it is contended that the award is excessive or inadequate . . . shall determine that an award is excessive or inadequate if it deviates materially from what would be reasonable compensation.'"  <u>Id.</u> (quoting N.Y. C.P.L.R. § 5501(c)).  Section 720 of the NY BCL authorizes a plaintiff, such as a judgment creditor like Plaintiff here, to compel a defendant officer or director to account for any breaches of duties that he owed to the company.  Under the statute, "a director or officer of a corporation who breaches his or her fiduciary duty 'may be held

responsible for <u>all damages naturally flowing</u> from their
wrongdoing or misconduct, even though the precise result could not
have been foreseen.'" <u>M&M Country Store, Inc. v. Kelly</u>, 159 A.D.3d
1102, 1104 (N.Y. App. Div. 3d Dep't 2018) (emphasis in original).
Accordingly, the Court instructed the jury that "[i]f you find Mr.
Zizza violated his duty to Zizza & Company, Mr. Zizza is liable to
the extent of that injury to Zizza & Company caused by his
violation." (Tr. 323:7-9.)

       Defendants argue that the jury's award "bears no
relationship to the <u>injury suffered by Zizza & Company</u>." (Support
Memo at 27 (emphasis in original).) Plaintiff counters that the
award relates to the October 2009 Judgment against Zizza & Co.,
because "[b]y depriving Zizza & Co. of its income-producing
business," the advisory and consulting business, "Zizza deprived
it of income that it could have used to pay the [J]udgment."
(Opp'n at 19.) Thus, according to Plaintiff, "[t]he jury's award
reflects the income that Zizza & Co. would have had to pay the
[J]udgment but for Zizza's breach of his duty to the company."
(<u>Id.</u>) The Court agrees with Plaintiff and finds that there was
ample evidence in the trial record from which the jury could have
concluded that Mr. Zizza violated his duties to Zizza & Co. by
shifting his advisory and consulting business to Zizza & Associates
(and later Bergen Cove) such that Zizza & Co.'s average annual

income plummeted, leaving it injured in that it was unable to satisfy its obligations to Plaintiff and other creditors, if any.

However, the jury's award of attorney's fees under the NY BCL was legally erroneous.  "Under the general rule, attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule."  Hooper Assocs., Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 491, 548 N.E.2d 903 (1989).  There is no fee-shifting agreement between the parties, and the Court finds the cases cited by Plaintiff to support an attorney's fees award under the NY BCL (Opp'n at 20) are too thin a reed on which to support the jury's verdict here.  Accordingly, the Court strikes the jury's award of attorney's fees and litigation costs incurred after October 23, 2009 under the NY BCL.  However, the Court grants Plaintiff leave to file a motion for attorney's fees under 29 U.S.C. § 1132(g)(1), if applicable.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1) Defendants' motion for judgment as a matter of law or for a new trial (ECF No. 235) is:

    a)    DENIED with respect to Plaintiff's <u>alter ego</u> claim against Zizza & Associates and Bergen Cove, and Plaintiff's NY BCL claim against Mr. Zizza; and

    b)    GRANTED with respect to Plaintiff's control group claim against Bergen Cove, and Plaintiff's evade-or-avoid liability claim, to the extent Defendants are entitled to judgment as a matter of law; and

2) The jury's award of attorney's fees under the NY BCL is STRICKEN. <u>On or before May 2, 2022</u>, Plaintiff is directed to file a motion for reasonable attorney's fees and costs, if any. Should Plaintiff elect to file such a motion, Plaintiff is directed to assert the statutory (or other) basis which entitles it to such fees and costs. Plaintiff is warned that if it does not file a motion for attorney's fees by the above deadline, judgment will enter and this case will be marked this case CLOSED.

        **SO ORDERED.**

        /s/ JOANNA SEYBERT
        Joanna Seybert, U.S.D.J.

Dated:    March   31  , 2022
        Central Islip, New York