UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
DR. GERALD FINKEL, as Chairman of
the Joint Industry Board of the
Electrical Industry,                          MEMORANDUM & ORDER
                                              12-CV-4108 (JS)(ARL)
                    Plaintiff,

      -against-

ZIZZA & ASSOCIATES CORP.; BERGEN
COVE REALTY INC.; and SALVATORE
J. ZIZZA,

                    Defendants.
--------------------------------X
APPEARANCES
For Plaintiff:        Peter D. Chiara, Esq.
                      Michael S. Adler, Esq.
                      Dan M. Nesbitt, Esq.
                      Cohen, Weiss, and Simon LLP
                      900 Third Avenue, Suite 2100
                      New York, New York  10022

For Defendants:       Ira S. Sacks, Esq.
                      Benjamin R. Joelson, Esq.
                      Akerman LLP
                      1251 Avenue of the Americas
                      New York, New York  10020


SEYBERT, District Judge:

        Dr. Gerald Finkel, as Chairman of the Joint Industry

Board of the Electrical Industry ("Plaintiff" or the "Joint

Board"), moves, pursuant to Rules 54 and 58 of the Federal Rules

of Civil Procedure, seeking "issuance of a judgment holding Bergen

Cove Realty Inc. ("Bergen Cove") liable in the total amount of

$1,453,195.36[1], consisting of $273,209.00 in withdrawal principal, $830,666.10 in attorney's fees, $30,284.92 in costs, $159,517.67 in prejudgment interest and $159,517.67 in the additional statutory amount." (Pl.'s Motion, ECF No. 241, at 1; see also Pl.'s Support Memo.)  Plaintiff also seeks issuance of a judgment holding Defendant Salvatore J. Zizza ("Zizza") "liable in the total amount of $762,891.56, consisting of $358,862.05 in damages and $404,029.51 in pre-judgment interest." (Id.)  Zizza & Associates Corp. ("Zizza & Associates") and Bergen Cove (collectively the "Moving Defendants") likewise seek an Order: "(1) awarding the Moving Defendants attorneys' fees in the amount of $422,851.72 and costs/expenses in the amount of $11,854.34, pursuant to 29 U.S.C. 1132(g)(1) and/or 29 U.S.C. 1451(e), and (2) granting Moving Defendants "such other and further relief as the Court may deem just and proper." (Defs.' Motion, ECF No. 242; see also Defs.' Support Memo, ECF No. 242-5, attached to Defs.' Motion.)  For the reasons that follow, Plaintiff's Motion is GRANTED and Defendant's Motion is DENIED.

<u>BACKGROUND</u>

The factual history of this action, as well as the record evidence, is recounted in detail in the Court's March 31, 2022, Memorandum & Order granting in part and denying in part the Moving

---

[1] Zizza & Associates is no longer in business. (See Pl.'s Support Memo, ECF No. 241-3, at 4 n.1.)

Defendants' Motion for Judgment as a Matter of Law (the "Post-Trial Order").  See Finkel v. Zizza & Assocs. Corp., No. 14-CV-4108, 2022 WL 970670 (E.D.N.Y. Mar. 31, 2022).[2]  The Court refers the reader to the Post-Trial Order for a thorough recitation of the factual and procedural history of this case.

RELEVANT PROCEDURAL HISTORY

On March 31, 2022, in its Post-Trial Order, the Court granted the Moving Defendants' request for judgment as a matter of law (the "JMOL Motion") as to "Plaintiff's control group claim against Bergen Cove, and Plaintiff's evade-or-avoid liability claim."  See Finkel, 2022 WL 970670, at *13.  The Court denied the Moving Defendants' JMOL Motion "with respect to Plaintiff's alter ego claim against Zizza & Associates and Bergen Cove, and Plaintiff's NY BCL[3] claim against Mr. Zizza."  (Id.)  As part of its ruling on the JMOL Motion, the Court further struck "the jury's award of attorney's fees under the NY BCL."  (Id.)  Thereafter, the Court directed Plaintiff to file any motion for reasonable

---

[2] The Court's Memorandum & Order is also available on the Case Docket at ECF No. 238.  Going forward, the Court will refer to this Memorandum & Order by its Reporter citation.

Additionally, Magistrate Judge (now District Judge) Brown's January 7, 2020, Report and Recommendation (the "R&R") also contains a detailed summary of the factual and procedural history of this case.  The R&R is available either on the docket at ECF No. 193, or via its reporter citation at Finkel v. Zizza & Assocs. Corp., No. 12-CV-4108, 2020 WL 9812922 (E.D.N.Y. Jan. 7, 2020).

[3] NY BCL refers to the New York Business Corporation Law.

attorney's fees and costs "on or before May 2, 2022."   (Id. (emphasis in original).)   The Court added:

> Should Plaintiff elect to file such a motion, Plaintiff is directed to assert the statutory (or other) basis which entitles it to such fees and costs.  Plaintiff is warned that if it does not file a motion for attorney's fees by the above deadline, judgment will enter and this case will be marked [] CLOSED.

(Id.)

Upon docketing the Post-Trial Order, the Moving Defendants filed a letter with the Court stating, "[i]n light of the Court's rulings on the control group and evade-or-avoid claims, Defendants intend to seek recovery of their attorneys' fees and costs as the prevailing party." (Letter re: Briefing on Attorney's Fees, ECF No. 239, at 1.)   Subsequently, a briefing schedule was set on the Parties' respective motions.  (See May 2, 2022, Elec. Order.)  Both motions were filed on May 2, 2022.  (See Case Docket.) The Parties' respective Opposition Memoranda were filed on June 2, 2022 (see Pl.'s Opp'n, ECF No. 243; Def.'s Opp'n, ECF No. 244-2, attached to Sacks Decl.); likewise, both parties filed Reply Memoranda on June 23, 2022 (see Pl.'s Reply, ECF No. 245; Def.'s Reply, ECF No. 246).[4]

---

[4] On March 31, 2023, this Court administratively terminated the Moving Defendants' Motion, determining that, in the interests of judicial economy, both motions should be decided as part of a single Memorandum & Order.  (See March 31, 2023 Elec. Order.)

<u>DISCUSSION</u>

I.  <u>Legal Standards</u>

    A. <u>Mandatory Attorney's Fees Pursuant to 29 U.S.C.</u>
      <u>§ 1132(g)(2)</u>

Section 1132(g)(2) of ERISA contains a mandatory fee provision which applies when a plan fiduciary successfully brings an action to collect delinquent contributions.  See 29 U.S.C. § 1132(g)(2).  Section 1132(g)(2) provides:

> [i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan-- (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of-- (i) interest on the contributions, or liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).  "[C]ourts have cited these provisions in stating that ERISA provides for mandatory attorney's fees in actions brought by a fund to 'compel an employer to pay withdrawal liability.'"  <u>United Plant and Prod. Workers Local 175 Pension Fund by Kilkenny v. J. Pizzirusso Landscaping Corp.</u>, No. 20-CV-2572, 2022 WL 4139160, at *5 (E.D.N.Y. Aug. 9, 2022) (quoting <u>Sofco Erectors, Inc. v. Tr's. of Ohio Operating Eng'rs Pension Fund</u>, 15 F.4th 407, 434 (6th Cir. 2021) (collecting cases)).

Indeed, courts within this District have "uniformly applied the Section 1132(g)(2) mandatory fee provision in awarding fees where the fund commences an action to compel the payment of withdrawal liability." Id. at *6 (collecting cases); see also Bakery and Confectionary Union v. Mrs. Maxwell's Bakery, Inc., No. 21-CV-0308, 2022 WL 18107257, at *10 (E.D.N.Y. Dec. 6, 2022) ("because withdrawal liability is 'treated in the same manner as a delinquent contribution,' . . . ERISA provides for recovery of interest, liquidated damages, and reasonable attorney's fees and costs on withdrawal liability payments" (citations omitted)); Demopoulos v. Advance Transit Co. Inc., No. 20-CV-5186, 2021 WL 6424599, at *3 (E.D.N.Y. Dec. 17, 2021) ("[I]n addition to the amount of withdrawal liability due and owing, the plaintiffs are entitled to damages under 29 U.S.C. § 1132(g)(2), consisting of interest, liquidated damages and attorneys' fees and costs. In fact, '[s]uch award is a mandatory remedy.'" (quoting UNITE Nat. Ret. Fund v. Veranda Mktg. Co., No. 04-CV-9869, 2009 WL 2025163, at *4 (S.D.N.Y. July 13, 2009))).

   B. Discretionary Fees Pursuant to Section 1132(g)(1)

        Section 1132(g)(1) of ERISA provides, "[i]n any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Notwithstanding

the broad discretion afforded to the district court in determining whether to award discretionary fees and costs under this section, in <u>Hardt v. Reliance Standard Life Insurance Company</u>, the Supreme Court held that "a fees claimant must show 'some degree of success on the merits' before a court may award attorney's fees under 1132(g)(1)[.]"  560 U.S. 242, 255 (2010); <u>see also Donachie v. Liberty Life Assur. Co. of Bos.</u>, 745 F.3d 41, 46 (2d Cir. 2014) ("The Supreme Court has . . . cautioned that a district court's discretion to award attorneys' fees under ERISA 'is not unlimited,' inasmuch as it may only award attorneys' fees to a beneficiary who has obtained 'some degree of success on the merits.'" (quoting <u>Hardt</u>, 560 U.S. at 254-55)).  "A party satisfies this standard if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry into the question whether a particular party's success was substantial or occurred on a central issue."  <u>Empire State Carpenters Welfare v. Conway Constr. of Ithaca, Inc.</u>, 366 F. Supp. 3d 371, 376 (E.D.N.Y. 2019) (quoting <u>Dist. Photo Inc. Health Care Plan v. Pyrros</u>, No. 13-CV-4285, 2017 WL 2334027, at *3 (E.D.N.Y. May 30, 2017) (internal quotation and citation omitted)).  "[W]hether a [party] has obtained some degree of success on the merits is the sole factor that a court <u>must</u> consider in exercising its discretion."  <u>Donachie</u>, 745 F.3d 46 (emphasis in original).

Notwithstanding the Supreme Court's holding in <u>Hardt</u>, district courts in the Second Circuit may also consider the following five factors in deciding whether to award discretionary legal fees and costs:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

<u>Chambless v. Masters, Mates & Pilots Pension Plan</u>, 815 F.2d 869, 871 (2d Cir. 1987) <u>abrogation recognized by</u> <u>Levitian v. Sun Life & Health Ins. Co.</u>, 486 F. App'x 136 (2d Cir. 2012) (internal citations omitted); <u>see also</u> <u>Scarangella v. Grp. Health, Inc.</u>, 678 F. App'x 7, 9-10 (2d Cir. 2017) ("<u>Hardt</u> . . . did not foreclose the possibility that once a claimant has satisfied [a showing of some degree of success on the merits], and thus becomes eligible for a fees award under § 1132(g)(1), a court may also consider the five factors outlined in <u>Chambless</u>" (internal quotations and citation omitted)). "Although the <u>Chambless</u> test applies to both plaintiffs and defendants in ERISA actions, courts have cautioned that the five factors 'very frequently suggest that attorney's fees should not be charged against ERISA plaintiffs.'" <u>Salovaara</u>

v. Eckert, 222 F.3d 19, 28 (2d Cir. 2000) (quoting West v. Greyhound Corp., 813 F.2d 951, 956 (9th Cir. 1987)).

C. Discretionary Fees Pursuant to Section 1451(e)

Pursuant to Section 1451(e) of ERISA, "[i]n any action under this section, the court may award all or a portion of the costs and expenses incurred in connection with such action, including reasonable attorney's fees, to the prevailing party." 29 U.S.C. § 1451(e). "The decision to award fees under this section 'is committed to the discretion of the district court.'" Pizzirusso, 2022 WL 4139160, at *6 (quoting Laborers' Pension Fund v. W.R. Weis Co. Inc., 879 F.3d 760, 768 (7th Cir. 2018)). Additionally, "[a]lthough the fee-shifting provisions are available in withdrawal liability actions, when the prevailing party is the employer, 'courts exercise cautiously the discretionary power to award fees.'" Id. (quoting Sigmund Cohn v. Dist. No. 15 Machinists Pension, 804 F. Supp. 490 (E.D.N.Y. 1992)). "Both Section 1132(g)(1) and Section 1451(e) are governed by the same five-factor standard" outlined in Chambless. Id. (citing Anita Foundations, Inc. v. ILGWU Nat'l Ret. Fund, 902 F.2d 186, 191 (2d Cir. 1990)). "In Farrar v. Hobby, 506 U.S. 103 (1992), the Supreme Court held that 'a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" Vetrone

9

v. Holt Cos. Inc., No. 09-CV-1350, 2012 WL 4006327, at *3 (N.D.N.Y. Sept. 12, 2012) (quoting Farrar, 506 U.S. at 111-12).  Similarly, in determining whether a defendant is the "prevailing party" such inquiry "is not limited to whether a defendant prevailed on the merits, but also considers whether the district court's decision— 'a judicially sanctioned change in the legal relationship of the parties'—effects or rebuffs a plaintiff's attempt to effect a 'material alteration in the legal relationship between the parties.'"  Raniere v. Microsoft Corp., 887 F.3d 1298, 1306 (Fed. Cir. 2018) (quoting CRST Van Expedited, Inc. v. E.E.O.C., 578 U.S. 419 (2016)).

II.   Analysis

    A. Plaintiff is Entitled to Mandatory Attorney's Fees and Costs Pursuant to 1132(g)(2)

Plaintiff argues it is entitled to mandatory attorney's fees and costs pursuant to Section 1132(g)(2) "because the instant suit is an action under Section 1451 to collect withdrawal liability." (Pl.'s Support Memo at 5.)  Specifically, Plaintiff states its Second Amended Complaint (the "SAC") "rested in part on Section 1451." (Id.)  Plaintiff avers "[t]he Court's dismissal of the controlled group and 'evade-or-avoid' claims against Bergen Cove do not change that conclusion[,]" since "[c]ase law makes clear that Section 1132(g)(2) applies to a defendant . . . that is liable only on an ERISA alter ego claim." (Id. (emphasis in

original).)   Plaintiff continues, arguing Defendant was found
"liable for the withdrawal liability" and that this liability
"exists only by virtue of ERISA." (Id. at 7.) Plaintiff contends
the Court, by holding that the federal Kombassan standard applies
to the Plaintiff's alter ego claims, "left no doubt that those
claims arose in the ERISA context and that ERISA standards apply."
(Id. (internal quotations and citations omitted).) Similarly,
Plaintiff maintains:

> Bergen Cove is, for purposes of ERISA
> liability, indistinguishable from Zizza & Co.
> The jury found Zizza & Associates to be an
> alter ego of Zizza & Co., and Bergen Cove to
> be an alter ego of Zizza & Associates. Since
> Section 1132(g)(2) remedies attached to Zizza
> & Co.'s withdrawal liability, they attach to
> Bergen Cove as well, since Bergen Cove is
> liable for the same liability.

(Id.)

Finally, Plaintiff asserts awarding the Joint Board
"mandatory attorney's fees under Section 1132(g)(2) would further
the purpose of ERISA's alter ego doctrine[,]" since "[p]reventing
such evasion does not happen automatically [but] . . . requires a
determined plaintiff . . . willing to incur substantial legal fees
on behalf of a pension fund." (Id. at 8.)

The Moving Defendants demur, arguing Plaintiff's "alter
ego claim . . . is not a claim under ERISA." (Defs.' Opp'n at 3.)
They rely upon the Supreme Court's holding in Peacock v. Thomas
for this proposition. (See id. at 4-6.) The Moving Defendants

explain that, in Peacock, the Supreme Court "held that the federal court did not have subject matter jurisdiction over the lawsuit" because: (1) "the lawsuit did not arise under ERISA [since] it alleged no violation of ERISA or of the plan" (id. at 4 (emphasis in original)); (2) "there is no provision of ERISA that provides for imposing liability for an extant ERISA judgment against a third party" (id. (emphasis in original) (internal quotations and citations omitted)); and (3) "federal courts do not possess ancillary jurisdiction over new actions in which a federal judgment creditor seeks to impose liability for a money judgment on a person not otherwise liable for the judgment." (Id. at 5.)  Similarly, Defendant highlights that "[t]hroughout this action, the parties and the Court have repeatedly recognized and agreed that the alter ego claims are state law claims and that the Court exercised supplemental jurisdiction over those claims."  (Id. at 7-8.) Defendant distinguishes Plaintiff's alter ego caselaw by highlighting, inter alia, "[i]n those cases, the parties held liable were determined to be the alter ego of the actual employers, which were also parties to the lawsuit." (Id. at 9.)  The Moving Defendants contend that in those cases "the alter ego entities were deemed to be "'employers' responsible for the actual withdrawal liability." (Id.)

In response, Plaintiff highlights "Defendants cite no case" where a court denied "Section 1132(g)(2) remedies to an ERISA

plan that prevailed on an <u>alter ego</u> claim for withdrawal liability." (Pl.'s Reply at 1.) Regarding <u>Peacock</u>, Plaintiff argues that case "says nothing about the availability of Section 1132(g)(2) remedies to plaintiffs who bring a successful <u>alter ego</u> claim to collect withdrawal liability" and, if it did, "the <u>alter ego</u> decisions granting such remedies would have discussed the case." (<u>Id.</u> at 2.)

Here, the Moving Defendants' argument that the alter ego claim is not a claim arising under ERISA has been raised and adjudicated repeatedly throughout this litigation; the Court declines to entertain it again.[5]  <u>See</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation."). Regardless, and as noted by Plaintiff, <u>Peacock</u> is a case which discusses subject-matter jurisdiction, not the availability of ERISA remedies after a plaintiff has prevailed on an alter ego claim arising under ERISA. As highlighted by Plaintiff, Defendant provides no case law in which a court has denied a prevailing ERISA Plaintiff mandatory

---

[5] (<u>See e.g.</u>, Support Memo, ECF No. 235-1, <u>attached to</u> Motion for Judgment as a Matter of Law, at 20-23 (arguing the Court should apply state law test for alter ego liability because <u>Kombassan</u> is inapplicable to Plaintiff's alter ego claims since such claims did not arise under ERISA); Reply, ECF No. 237, at 10-13 (arguing the Court should not have instructed the Jury on the <u>Kombassan</u> standard for ERISA liability because "the claims for alter-ego liability are plainly <u>not</u> ERISA claims" (emphasis in original)); Support Memo, ECF No. 183, at 18-21 (arguing "[u]nder <u>Peacock</u>, Plaintiff's evade or avoid and alter-ego claims do not arise under ERISA.").)

fees and costs pursuant to Section 1132(g)(2), notwithstanding such liability was proven solely through alter ego liability. Likewise, this Court has found none.[6]  Conversely, Plaintiff cites caselaw in which courts in this Circuit have determined that alter ego defendants can be found liable for remedies pursuant to Section 1132(g)(2), notwithstanding the fact the sole basis for imposing liability is an alter ego claim.  See Ret. Plan of UNITE HERE Nat. Ret. Fund v. Kombassan Holding A.S., 629 F.3d 282, 287-89 (2d Cir. 2010) (affirming district court's findings that defendant was: (1) the alter ego of an acquired corporation and, as such, was "responsible for [the acquired corporation's] withdrawal liability[,]" and (2) further liable for prejudgment interest,

_____

[6] On the contrary, caselaw from outside this Circuit, while not binding, supports Plaintiff's argument that ERISA remedies are available to prevailing ERISA plaintiffs even where the basis for defendant's liability rests solely on an alter ego cause of action. See Cent. Ill. Carpenters Health and Welfare Tr. Fund v. S & S Fashion Floors, Inc., No. 05-CV-1094, 2009 WL 1064914, at *2 (C.D. Ill. Apr. 20, 2009) ("[F]rom the time the alter ego claim was first [pled], there has been no question that this claim was not a traditional state law alter ego claim.  Rather, it was an effort to impose individual ERISA liability for delinquent contributions on a corporate officer[.] . . . Defendant . . . argues that an alter ego claim is an equitable claim, so that the extent of any remedy is committed to the court's discretion.  Thus, according to Defendant, an award of attorney's fees is discretionary.  I disagree.  That might be the case if the liability that attached to Helen Struben by virtue of her status as an alter ego derived from state common law, but that is not the situation here. Struben's liability is ERISA liability.  Remedies under ERISA therefore are available to the Plaintiffs.  ERISA provides that an award of attorney's fees is mandatory in actions under § 1145.  As noted above, that is the proper description of Count III.").

14

attorney's fees, and costs pursuant to Section 1132(g)(2)); Burke
v. Hamilton Equip. Installers, Inc., No. 02-CV-0519, 2007 WL
9776820, at *1-2 (W.D.N.Y. Feb. 20, 2007) (finding where court had
"issued an order finding that Hamilton Equipment Installers, Inc.
was an alter ego of Hamilton Installers, Inc.", the alter ego was
"obligated to pay Hamilton Installers' withdrawal liability
contributions" as well as mandatory remedies pursuant to Section
1132(g)(2)); Bd. of Trs. of the Heat & Frost Insulators Local No.
33 Pension Fund v. D&N Insulation, No. 11-CV-1998, 2015 WL 5121458,
at *9 (D. Conn. Aug. 31, 2015) (finding, where defendant was the
"alter ego" of various entities liable for withdrawal liability,
defendant became liable to plaintiff for the unpaid withdrawal
liability and statutory damages pursuant to section 1132(g)(2)).
Moving Defendants' arguments that these cases are inapposite is
unconvincing and, regardless, has been raised and adjudicated
previously.  See Finkel, 2022 WL 970670, at *11-12.

      B. The Moving Defendants' Assertion They Achieved "Some
         Success on the Merits" is Specious Considering the
         Outcome of the Litigation

      Turning to the Moving Defendants' Motion, the Moving
Defendants argue they "were entirely successful on all ERISA claims
asserted by Plaintiff in this action" and, consequently, "Moving
Defendants' total victory on the ERISA claims . . . renders them
'prevailing parties' for purposes of 29 U.S.C. § 1451(e)." (Defs.'
Support Memo at 11.)  The Moving Defendants contend this qualifies

them "for an award of attorneys' fees and costs under both § 1132(g)(1) and § 1451(e)."  (Id. at 12.)

Plaintiff counters "an examination of the 'outcome of the litigation,' shows that Defendants achieved no success." (Pl.'s Support Memo at 11. (internal citation omitted).)  Plaintiff highlights, "[s]uccess would have been avoiding the withdrawal liability."  (Id.)  Additionally, notwithstanding the Moving Defendants' victory on the evade-or-avoid and controlled group claims, Plaintiff notes the result here is "exactly what it would have been if Defendants had lost" those claims, characterizing the Moving Defendants' successes as "purely procedural" victories. (Id. (emphasis in original).)  Plaintiff emphasizes "Defendants lost on the ultimate issue, namely, whether they are liable for the withdrawal liability," and, as such, are not "prevailing" parties for purposes of § 1451(e).  (Id. at 13.)  As to the Moving Defendants' contentions that they prevailed on all of their ERISA claims, Plaintiff highlights that the alter ego claim arose in the ERISA context and that the Court, "in resolving the alter ego claims, . . . applied the Kombassan ERISA alter ego standard." (Id. at 12.)

Here, the Court finds Defendants' success in refuting Plaintiff's evade-or-avoid and controlled group claims was a pyrrhic victory when considering the outcome of the litigation. Defendants were found liable for the withdrawal liability under

Plaintiff's alter ego theory, which, as the Court has previously found, was a claim under ERISA to which the <u>Kombassan</u> ERISA standard applied.[7]  <u>See</u> <u>Finkel</u>, 2022 WL 970670, at *11-12.  The Moving Defendants' argument that they achieved "far more than some degree of success on the merits" because they prevailed upon all the ERISA claims in this action, (<u>see</u> Defs.' Reply at 2-5), is therefore erroneous.[8]

  C. <u>The *Chambless* Factors Counsel Against Awarding the Moving Defendants' Attorney's Fees and Costs</u>

   Even assuming <u>arguendo</u>, the Moving Defendants were eligible for discretionary fees and costs, the Court finds that an analysis of the <u>Chambless</u> factors, which the Court may consider under either Section 1132(g)(1) or 1451(e), does not favor granting an award.[9]

---

[7] For the same reasons, the Court finds Defendant is likely not a "prevailing party" for purposes of Section 1451, since, despite refuting two of the Joint Board's theories of liability, losing on the alter ego claim effects a material alteration in the legal relationship of the parties in the same way it would have had the Moving Defendants lost those claims.

[8] Even if the Moving Defendants were entitled to a discretionary award of attorney's fees and costs, as detailed <u>infra</u> at Part II.C, the Court would decline to award them.

[9] On the contrary, given Plaintiff's success in establishing the Moving Defendants' responsibility for the withdrawal liability, the Court finds Plaintiff's degree of success on the merits would qualify it for a discretionary award under Section 1132(g)(1). Consequently, even if Plaintiff was not entitled to mandatory fees, the Court would exercise its discretion and award attorney's fees and costs pursuant to 1132(g)(1).  (<u>See</u> <u>infra</u> at Part II.C.)

1. The Degree of Culpability Factor Weighs in Favor of the Joint Board, Not the Moving Defendants

"[A] party is only culpable when its conduct is intentional, blameworthy, and results in the breach of a legal duty." Tedesco v. I.B.E.W. Local 1249 Ins. Fund, No. 14-CV-3367, 2019 WL 140649, at *6 (S.D.N.Y. Jan. 9, 2019) (quoting Vangas v. Montefiore Med. Ctr., No. 11-CV-6722, 2014 WL 5786720, at *6 (S.D.N.Y. Nov. 5, 2014)); see also Benesowitz v. Metro. Life Ins. Co., No. 04-CV-0805, 2009 WL 2196785, at *9 (E.D.N.Y. July 9, 2009) ("In a civil context, culpable conduct is commonly understood to mean conduct that is 'blameable; censurable; . . . at fault; involving the breach of a legal duty or the commission of a fault. . . . Such conduct normally involves something more than simple negligence. . . . [B]ut not that it involves malice or guilty purpose'." (quoting McPherson v. Emps.' Pension Plan of Am. Re-Ins. Co., Inc., 33 F.3d 253, 256-57 (3d Cir. 1994))). "[C]ourts have found that the 'culpability' of a losing plaintiff 'significantly differs' from that of a losing defendant.'" Caccavo by Caccavo v. Reliance Standard Life Ins. Co., No. 19-CV-6025, 2022 WL 16631101, at *5 (S.D.N.Y. Nov. 2, 2022) (quoting Salovaara, 222 F.3d at 28). As explained by the Second Circuit, "'[a] losing defendant must have violated ERISA, thereby depriving plaintiffs of rights under a pension plan and violating a congressional mandate. A losing plaintiff, on the other hand, will not

necessarily be found 'culpable,' but may be only in error or unable to prove his case.'"   (Id.)

The Moving Defendants argue the first factor weighs in their favor.   (Defs.' Support Memo at 12.)   Specifically, the Moving Defendants contend, "Plaintiff contrived its evade or avoid and control group claims against the Moving Defendants, knowing that they were unsupported in both fact and law at the time each claim was asserted, and throughout the case thereafter."   (Id. at 13.)   Moving Defendants assert, "Plaintiff's pursuit of its evade or avoid and control group claims 'was culpable because there was no colorable basis for the plaintiff's claim' in view of the facts known to Plaintiff at the time it commenced this action."   (Id.) The Moving Defendants aver that, at various stages of this litigation, they argued:

> (1) [m]erely ceasing business operations is not a "transaction" for purposes of § 4212(c), (2) no assets, equipment, contracts, stocks, money or clients were sold or transferred from Zizza & Company to Zizza & Associates, and (3) the unilateral incorporation of Zizza & Associates did not involve any transaction with Zizza & Company.

(Id. at 13-14 (internal quotations omitted).)   Regarding the Joint Board's control group theory, Moving Defendants argue, "Plaintiff knew when it filed its motion for summary judgment that it did not have evidence to support that the stock held in trust for the

benefit of Mr. Zizza's children could be attributed to Mr. Zizza."[10] (Id. at 14.)   The Moving Defendants elaborate: "Plaintiff could have and should have abandoned the control group claim" when it realized it "did not have the trust documents."   (Id. at 15.)

Plaintiff counters the Moving Defendants are the culpable parties, "having refused for years to pay the withdrawal liability that they owed as alter egos, requiring the Joint Board to undertake a decade of intense litigation to obtain a judgment against them."   (Pl.'s Opp'n at 14.)   Similarly, Plaintiff avers that, while it "ultimately failed to persuade the Court on two of its three legal claims against Defendant[,]" a party does not act in bad faith or with culpability "merely because it has pursued an unsuccessful legal theory."   (Id. (citation omitted).)   Plaintiff further highlights, regarding its controlled group and "evade or avoid" claims, "the Court repeatedly determined" Plaintiff's claims "were not frivolous."[11]   (Id. at 15.)   Likewise, Plaintiff

---

[10] The Moving Defendants further state that in its summary judgment decision, "the Court expressly noted that 'the relevant trust documents are not part of the record.'"   (Defs.' Support Memo at 14-15.)

[11] Specifically, Plaintiff emphasizes:

> In denying Defendants' motion to dismiss, Judge Bianco concluded that the Joint Board's "evade-or-avoid" count against Zizza & Associates alleged a "plausible claim."   He reached the same conclusion when the Joint Board moved to assert an "evade-or-avoid" claim against Bergen Cove.   When Defendants

argues the Moving Defendants' assertion that Plaintiff lacked evidence to support its claims does not support its bad faith argument since "under the Joint Board's reading of the law, evidence of a direct transaction between the companies was unnecessary because it was undisputed that Zizza [had] shifted his advisory business, first transacting it at Zizza & Associates and then at Bergen Cove." (<u>Id.</u> at 16.)  Further, Plaintiff asserts "[t]hat the Court ultimately accepted Defendants' reading of the law does not mean the Joint Board's reading was culpable or in bad faith." (<u>Id.</u> at 17.)  Plaintiff continues, "it would be impossible to conclude that the Joint Board's reading of the law applicable to its 'evade-or-avoid' claim was culpable or bad faith because, until the Court's post-trial ruling, the Court had repeatedly <u>accepted</u> that reading." (<u>Id.</u> (emphasis in original).)  Regarding

---

argued in their sanctions motion that the "evade-or-avoid" claims were frivolous, Judge Bianco denied the motion.  In denying Defendants' summary judgment motion, Judge Bianco reaffirmed that, on the facts the Joint Board alleged, "<u>a reasonable fact finder can conclude</u>" that Zizza acted to avoid liability . . . The same is true for the controlled group claim.  In his summary judgment ruling, Judge Bianco did not find that the absence of trust documents was fatal to the Joint Board's claim, but allowed the claim to proceed.

(Pl.'s Opp'n at 15-16 (emphasis in original).)

the lack of any trust documents, Plaintiff argues that, based on its reading of the law, "undisputed evidence that Zizza ran Bergen Cove, and the absence of evidence that other shareholders ever cast a vote, sufficed to establish an <u>implicit</u> agreement that the trustees would not vote their shares." (<u>Id.</u> at 18 (emphasis in original).)

Here, the Court finds no bad faith or culpability on the part of Plaintiff; similarly, it rejects Defendants' argument that the Joint Board's failure to adduce evidence sufficient to prove its evade-or-avoid and controlled group claims weighs in favor of awarding Defendant discretionary fees and costs. <u>See T & M Meat Fair, Inc. v. United Food and Com. Workers, Local 174</u>, No. 00-CV-7968, 2002 WL 31202711, at *4 (S.D.N.Y. Oct. 3, 2001) ("There is no requirement . . . that plaintiffs be successful on every cause of action—or even one claim—in order to avoid a finding of bad faith."); <u>see also</u> <u>Salovaara</u>, 222 F.3d at 29-30 ("[T]he 'lack of evidentiary support' for [plaintiff's] central arguments does not amount to culpability or bad faith."); <u>United Union of Roofers, Waterproofers, and Allied Workers, Local No. 210, AFL-CIO v. A.W. Farrell & Son, Inc.</u>, No. 07-CV-0224, 2013 WL 140101, at *3-4 (W.D.N.Y. Jan. 10, 2013) (finding "plaintiffs' ultimate failure to present evidentiary support at trial for their claims . . . does not automatically lead to a finding that the claims were brought in bad faith"). Similarly, the Court rejects

22

Defendants' contention that there was no colorable basis for
Plaintiff's control group and/or evade-or-avoid claims. Indeed,
each of these claims was subject to, and survived, a Rule 12(b)(6)
motion to dismiss and a Rule 56 summary judgment motion.[12]
Specifically, regarding the evade-or-avoid claim, in his summary
judgment ruling, Judge Bianco determined:

> If all the plaintiff's evidence is credited
> and all reasonable inferences are drawn in its
> favor, I conclude a rational fact finder could
> conclude that a principal purpose was to avoid
> withdrawal liability. Defendants further
> argue that plaintiff cannot identify a
> transaction undertaken to evade ERISA
> liability . . . Although the defendants
> argue that Mr. Zizza merely ceased to work for
> Zizza & Company, which they claim was not a
> transaction, plaintiff points to evidence in
> records that show that Zizza & Associates was
> paid $260,000 by BAM after Mr. Zizza began
> working for them and that Zizza & Company had

---

[12] Defendant also filed a motion for sanctions arguing Plaintiff's
evade-or-avoid and alter ego claims were frivolous. (See Sanctions
Mot., ECF No. 54; Sanctions Support Memo, ECF No. 57.) In ruling
on the sanctions motion, Judge Bianco found:

> There is not a sufficient basis for this Court
> to conclude at this juncture that the
> plaintiff's claims against Bergen Cove Realty
> lack a basis in fact or, as we've just heard,
> a basis in law. . . . There's not conclusive
> proof at this point that the claim is
> factually frivolous and there's certainly
> insufficient proof that the time, even if it
> turned out to factually be incorrect, that at
> the time the plaintiffs filed the allegation
> they knew it to be factually incorrect or had
> no reasonable basis from investigation to make
> such a good faith allegation.

(Sanctions Tr., ECF No. 73, at 15:5-8; 17:16-21.)

> been paid over $100,000 by BAM in the two prior
> years. . . .  Although defendants cite cases
> for the proposition that ceasing business
> operations is not a transaction[,] here,
> plaintiff has pointed to more than simply
> ending Zizza & Company's operation. Again, if
> plaintiff's evidence is credited and all the
> reasonable inferences from the record drawn in
> plaintiff's favor, a reasonable fact finder
> can conclude that Mr. Zizza redirected the
> business from BAM, that that is a transaction,
> and again could conclude potentially
> that . . . it was done to avoid paying
> withdrawal liability.

(Summ. J. Tr., ECF No. 110, at 11:17-12:24.)  Likewise, Judge
Bianco found "there[] [is] a disputed issue of fact as to Bergen
Cove's membership in Zizza & Company's alleged control group",
which precluded granting Defendants' summary judgment motion.
(Id. at 14:13-18.)  This ruling alone is sufficient to support
Plaintiff's position in opposition to Defendants' fee application.
See A.W. Farrell & Son, Inc., 2013 WL 140101, at *3 (finding, where
court had previously denied defendants' motion for partial summary
judgment, "[t]his ruling alone provide[d] ample support for
plaintiffs' position in opposition to [the] fee application
[because] a reasonable basis existed for them to pursue their ERISA
claims"); cf. Div. 1181, Amalgamated Transit Union - N.Y. Emps.
Pension Fund v. N.Y. Dep't of Educ., No. 13-CV-9112, 2018 WL
4757938, at *3 (S.D.N.Y. Oct. 2, 2018) (finding plaintiff's alter
ego-based withdrawal liability claim was potentially meritorious
where "the claim survived the [defendant's] Rule 12(b)(6) motion"

24

but, nevertheless, did not survive summary judgment). Additionally, Defendant's argument that Plaintiff pursued "bogus" ERISA claims against the Moving Defendants, in bad faith, is spurious considering the Moving Defendants were ultimately found liable for the withdrawal liability through proof of Plaintiff's alter ego claim.[13]

### 2. The Court Ascribes Little Weight to Plaintiff's Ability to Pay a Fee Award

"A party's ability to satisfy an award of attorney's fees is not dispositive." Mahoney v. J.J. Weiser & Co., 646 F. Supp. 2d 582, 593 (S.D.N.Y. 2009); see also Empire State Carpenters Welfare v. Conway Constr. of Ithaca, Inc., 366 F. Supp. 3d 371, 377 (E.D.N.Y. 2019) ("As for the ability of the offending party to satisfy an award, 'it is only a party's inability to pay an award that weighs in its favor while its ability to pay is generally neutral in effect.'" (quoting Tedesco, 2019 WL 140649, at *7)).

The Moving Defendants assert that "Plaintiff . . . has a clear ability to pay a reasonable fee and cost award in this action." (Defs.' Support Memo at 16.) The Moving Defendants argue the Joint Board's ability to pay is "confirmed by the Plaintiff's latest filing with the IRS, which indicates over $575 million in total assets, over $500 million in net assets or fund balances,

---

[13] The Joint Board's success in establishing the Moving Defendants' liability in this regard supports a finding that the Moving Defendants are in fact a culpable party.

and over **$480 million** in total revenue." (Id. at 16-17 (emphasis in original).) Notwithstanding its ability to pay a fee award, Plaintiff emphasizes the second Chambless factor favors it or is, at worst, neutral, "[b]ecause money paid in a fee award would be money not paid to pensioners." (Pl.'s Opp'n at 20.)

While the Court finds Plaintiff can satisfy a potential fees and costs award, the Court ascribes this factor little weight in its analysis, finding it to be neutral in effect.

### 3. Awarding Attorney's Fees and Costs to the Moving Defendants Could Have a Chilling Effect on ERISA Plaintiffs Bringing Colorable ERISA Claims

"It is the general rule that 'attorney's fees should not be charged against ERISA plaintiffs.'" Celardo v. GNY Auto. Dealers Health & Welfare Tr., 318 F.3d 142, 147 (2d Cir. 2003) (quoting Salovaara, 222 F.3d at 28); see also Seitzman v. Sun Life Assurance Co. of Can., Inc., 311 F.3d 477 (2d Cir. 2002) ("The deterrence factor should be used 'as a shield, to protect beneficiaries from the fear of having to pay to pursue an important ERISA claim in the event of failing to prevail,' and not 'as a sword to discourage beneficiaries' from pursuing certain meritless claims." (quoting Gibbs v. Gibbs, 210 F.3d 491, 505 (5th Cir. 2000))); Mahoney, 646 F. Supp. 2d at 586 ("[G]iven ERISA's policy of protecting plan beneficiaries, colorable claims pursued in good faith, even if ultimately unsuccessful, should not be discouraged

26

by awards of attorney's fees to prevailing defendants") (citing Seitzman, 311 F.3d at 485).  The general rule applies to the "typical unsuccessful ERISA plaintiff, who fails to show defendant's culpability but is not himself a culpable party." Sewell v. 1199 Nat'l Ben. Fund for Health and Human Servs., No. 04-CV-4474, 2007 WL 1434952, at *1 (S.D.N.Y. May 15, 2007) (finding, where ERISA plaintiffs were "clearly culpable parties operating in bad faith", such plaintiffs fell "outside the scope of [the] general rule").

The Moving Defendants argue "an award of attorneys' fees against a culpable or bad faith claimant 'will not have any chilling effect on good faith claimants but rather will simply serve to discourage bad faith claimants from filing meritless suits.'" (Defs.' Support Memo at 18 (citation omitted).)  Plaintiff counters this factor heavily disfavors awarding the Moving Defendants a fee award because, as stated by the Second Circuit, such an award would "deter suits to protect employee benefits." (Id. at 20-21.)

Considering:  (1)  the  foregoing  general  policy considerations; (2) Plaintiff's success in proving its alter ego claim, and (3) the Court's determination Plaintiff had a colorable basis for pursuing its control group and evade-or-avoid claims, the Court finds this factor heavily favors the Joint Board.  See Salovaara, 222 F.3d at 31 ("[W]here . . . an ERISA plaintiff has

27

pursued a colorable (albeit unsuccessful) claim, the third Chambless factor likely is not merely neutral, but weighs strongly against granting fees to the prevailing defendant.  Awarding fees in such a case would likely deter beneficiaries and trustees from bringing suits in good faith for fear that they would be saddled with their adversary's fees in addition to their own in the event they failed to prevail; this, in turn, would undermine ERISA's essential remedial purpose of protecting beneficiaries of pension plans.").

     4. <u>Since the Degree-of-Culpability Factor Favors the Joint Board, So Too Does the Relative Merits Factor</u>

   "The degree-of-culpability and relative-merits factors are closely related."  <u>Slupinksi v. First Unum Life Ins. Co.</u>, 554 F.3d 38, 48 (2d Cir. 2009).  Indeed, the Second Circuit had "found it useful in some circumstances to consider them together."  <u>Id.</u>  Plaintiff asserts that since "the first <u>Chambless</u> factor weighs decisively in the Joint Board's favor, the fourth factor does too."  (Pl.'s Opp'n at 21.)  The Court agrees.  (<u>See</u> <u>supra</u> Part II.C.1.)

     5. <u>The Common Benefit Factor</u>

   "[T]he fifth factor [is] . . . inapplicable to an ERISA defendant."  <u>Salovaara</u>, 222 F.3d at 28-29; <u>see also</u> <u>Mahoney</u>, 646 F. Supp. 2d at 594 ("[T]he fifth <u>Chambless</u> factor, whether the action conferred a common benefit on a group of plan participants,

is generally regarded as either inapplicable or neutral where an ERISA defendant is seeking attorney's fees.").

Plaintiff argues this factor likewise weighs in its favor since, "[b]y holding Defendants liable for the withdrawal liability that they owe, this action will bring money into the pension plan that can and will be used to provide pensions to eligible pension plan participants." (Pl's. Opp'n at 21.)  The Moving Defendants highlight this factors inapplicability "where an ERISA defendant is seeking attorneys' fees." (Defs.' Support Memo at 11 (citation omitted).)

For purposes of its discretionary fees analysis, the Court finds this factor is neutral as to Defendant's application but favors the Joint Board to the extent the Court would have awarded it discretionary fees had it not awarded mandatory ones.

In sum, and for the reasons articulated above, the Court finds the Chambless factors do not support awarding Moving Defendants discretionary fees and costs pursuant to either § 1132(g)(1) or 1451(e).  Rather, the Chambless factors weigh decidedly in favor of awarding fees and costs to the Joint Board.

D. Reasonableness of Attorney's Fees

    1. Joint Board's Counsels' Hourly Rates Are Excessive Compared to Rates Generally Found to be Reasonable in this District

Having determined the Joint Board is entitled to an award of mandatory attorney's fees pursuant to Section 1132(g)(2), the

Court must now determine whether the amount of fees sought by Plaintiff is reasonable.

In determining whether attorney's fees are reasonable the Second Circuit has held "that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (quoting Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany, 522 F.3d 182, 183 (2d Cir. 2008)). "The party seeking reimbursement of attorneys' fees must demonstrate the reasonableness and necessity of hours spent and rates charged." Finkel v. Omega Comm'n Servs., Inc., 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008) (citing N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136 (2d Cir. 1983)). "The reasonableness of hourly rates are guided by the market rate '[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation[.]'" Sheet Metal Workers' Nat'l. Pension Fund v. RHB Installations Inc., No. 12-CV-2981, 2015 WL 1509498, at *5 (E.D.N.Y. Mar. 31, 2015) (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)). "The relevant community is generally the 'district in which the court sits[.]'" Id. (quoting Polk v. N.Y.S. Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983)). In ERISA cases, courts in this District have approved hourly rates "ranging from $300-$450 per hour for partners, $200

30

to $300 per hour for senior associates, $100 to $200 per hour for junior associates, and $70 to $100 per hour for paralegals." <u>Ret. Fund of Local 1482 Paint and Allied Prods. Manufacturers v. N. Adhesives, Inc.</u>, No. 19-CV-5609, 2020 WL 6370060, at *4 (E.D.N.Y. May 27, 2020) (citing <u>Div. 1181 Amalgamated Transit Union-N.Y. Emps.' Pension Fund v. D & A Bus. Co., Inc.</u>, 270 F. Supp. 3d 593, 618-19 (E.D.N.Y. 2017) (collecting cases)), <u>Report & Recommendation adopted</u>, 2020 WL 5587271 (E.D.N.Y. Sept. 17, 2020).

Here, Plaintiff requests an award of $830,666.10 in attorney's fees and $40,284.93 in costs against the Moving Defendants. (<u>See</u> Adler Decl., ECF No. 241-1, <u>attached to</u> Pl.'s Mot.) Counsel's billing rates and hours billed per attorney are as follows:

| Attorney Name | Position | Hours Billed | Hourly Rate | Total ($) |
|---|---|---|---|---|
| Rachelson, Jani | Partner | 0.3 | 390 | 117.00 |
| Rachelson, Jani | Partner | 2.5 | 430 | 1,075.00 |
| Abram, Michael | Partner | 1.3 | 390 | 507.00 |
| Ciantra, Thomas | Partner | 1 | 430 | 430.00 |
| Vitale, Joseph | Partner | 0.1 | 430 | 43.00 |
| Hock, David | Partner | 7 | 375.00 | 2,625.00 |
| Hock, David | Partner | 251.6 | 390 | 98,124.00 |
| Hock, David | Partner | 304.8 | 410 | 124,968.00 |
| Hock, David | Partner | 59 | 430 | 25,370.00 |
| Leeds, Zachary | Partner | 0.3 | 410 | 123.00 |
| Leeds, Zachary | Partner | 0.8 | 430 | 344.00 |
| Adler, Michael | Partner | 495.2 | 430 | 212,936.00 |
| Adler, Michael | Partner | 132.4 | 452 | 59,844.80 |

| Attorney Name | Position | Hours Billed | Hourly Rate | Total ($) |
|---|---|---|---|---|
| DeChiara, Peter | Partner | 165.9 | 430 | 71,337.00 |
| DeChiara, Peter | Partner | 179.60 | 452 | 81,179.20 |
| Harmon, Richard | Associate | 2.2 | 390 | 858.00 |
| Harmon, Richard | Associate | 5.4 | 410 | 2,214.00 |
| Harmon, Richard | Associate | 2.8 | 430 | 1,204.00 |
| Adler, Michael | Associate | 0.3 | 285 | 85.50 |
| Adler, Michael | Associate | 1.2 | 315 | 378.00 |
| Nesbitt, Daniel | Associate | 93.7 | 331 | 31,014.70 |
| Malloy, Kelly | Associate | 5.3 | 331 | 1,754.30 |
| Medina, Erika | Associate | 7.5 | 347 | 2,602.50 |
| Mackson, Tzvi | Associate | 1.9 | 330 | 627.00 |
| Mackson, Tzvi | Associate | 19.5 | 347 | 6,766.50 |
| Hurtado, Noelia | Associate | 74.1 | 285 | 21,118.50 |
| Hurtado, Noelia | Associate | 135.1 | 315 | 42,557.60 |
| Hurtado, Noelia | Associate | 5.1 | 330 | 1,683.00 |
| Berger, Benjamin | Paralegal | 1.2 | 90 | 108.00 |
| Berger, Benjamin | Paralegal | 5.4 | 95 | 513.00 |
| Ellis, Elizabeth | Paralegal | 56.6 | 95 | 5,377.00 |
| Tsuckerman, Lev. | Paralegal | 0.8 | 95 | 76.00 |
| Fitzgerald, Caitlin | Paralegal | 20.5 | 95 | 1,947.50 |
| Ellis, Peter | Paralegal | 25.4 | 95 | 2,413.00 |
| Kramer, George | Paralegal | 3.2 | 95 | 304.00 |
| Kramer, George | Paralegal | 25.1 | 100 | 2,510.0 |
| Kramer, George | Paralegal | 52 | 105 | 5,460.00 |
| McDaniels, Kelly | Paralegal | 22 | 95 | 2,090.00 |
| Viera, Clara | Paralegal | 34.7 | 95 | 3,296.50 |
| Lore, Matthew | Paralegal | 2.2 | 100 | 220.00 |

| Attorney Name | Position | Hours Billed | Hourly Rate | Total ($) |
|---|---|---|---|---|
| Morrisey, Nycol | Paralegal | 14.5 | 100 | 1,450.00 |
| Brack, Katelyn | Law Clerk | 11.5 | 95 | 1,092.50 |
| Hart, Nicholas | Law Clerk | 0.9 | 95 | 85.50 |
| Cartwright, Briana | Law Clerk | 47.4 | 95 | 4,503.00 |
| Heydemann, Sarah | Law Clerk | 7.3 | 95 | 693.50 |
| Lynch, Michael | Law Clerk | 6 | 95 | 570.00 |
| Ettinger, Lori | Law Clerk | 17.9 | 100 | 1,790.00 |
| Malloy, Kelly | Law Clerk | 7.3 | 100 | 730.00 |
| Turner, Wes | Law Clerk | 4.6 | 100 | 460.00 |
| Brooks, Zachary | Law Clerk | 8.8 | 100 | 880.00 |
| Spwight, Montene | Law Clerk | 3.9 | 100 | 390.00 |
| Stevens, Jake | Law Clerk | 18.2 | 100 | 1,820.00 |
| Total | | 2,353.3 | | 830,666.10 |

(Id. ¶ 4-5.)  Counsel affirms "the fees charged in this matter are comparable to rates charged by other attorneys in this District for similar work."  (Id. at ¶ 5.)  To aid the Court in its determination of the reasonableness of the hourly rates, Plaintiff has provided the Court with biographies for each attorney, paralegal, and law clerk who billed to this matter.  (See id. at ¶¶ 7-27.)

Upon review of Plaintiff's attorneys' experience and expertise, and considering the cases articulated herein, the Court finds, with the exception of those hourly rates exceeding the $450.00-per-hour upper limit approved in this District, Counsel's fees for its partners are reasonable considering their levels of

experience and expertise. Plaintiff offers no reasoning as to why partners are entitled to rates above this District's $450.00-per-hour-for-partners cap, and the Court sees no reason to depart from this limitation.  Consequently, to the extent any partner's hourly rate exceeds $450.00 per hour, it is reduced to said $450-per-hour cap.  Likewise, to the extent an associate's rate exceeds $300.00 per hour, such rate shall be reduced to conform to that figure.[14] Regarding paralegals, the Court finds no hourly rate charged by such professional shall exceed $100.00 per hour; similarly, regarding Law Clerks, the Court finds a $75.00 per hour rate to be fair and reasonable.

    2. The Fee Award Will Not be Reduced Based on the Unsuccessful ERISA Claims

The Supreme Court has observed that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees[.]"  Hensley, 461 U.S. at 439.[15]  In Hensley, the Supreme Court held that "[w]here [a]

---

[14] In reviewing the biographies provided by Plaintiff regarding the associates that worked on this case, the Court finds they each possess the requisite skill and experience to be classified as "senior associates" and so awards them a rate in keeping with such status.  (See Adler Decl. ¶¶ 16-20.)

[15] "Though Hensley deals with attorney's fees pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, courts have applied the same standards when determining the reasonableness of fees sought pursuant to" ERISA. Caban v. Emp. Sec. Fund of the Elec. Prods. Indus. Pension Plan, No. 10-CV-0389, 2015 WL 7454601, at *6 n.3 (E.D.N.Y. Nov. 23, 2015) (citing Scarangella, 731 F.3d at 156 n.14).

plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." Id.  For example, in cases where a plaintiff pursues "distinctly different claims for relief that are based on different facts and legal theories. . . . even where the claims are brought against the same defendants . . . counsel's work on one claim will be unrelated to his work on another claim"; as such, the work on the unsuccessful claim "cannot be deemed to have been expended in pursuit of the ultimate result achieved." Id. at 434-35 (quotation marks and citation omitted).  Conversely, "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." Id. at 439; see also Murphy v. Lynn, 118 F.3d 938, 952 (2d Cir. 1997) ("A plaintiff's lack of success on some of his claims does not require the court to reduce the lodestar amount where the successful and the unsuccessful claims were interrelated and required essentially the same proof"); Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994) (finding reduction not required so long as the unsuccessful claims were not "wholly unrelated to the plaintiff's successful claims" (internal quotation marks and citation omitted)).  There is "no certain method of determining when claims are 'related' or 'unrelated.'"

Hensley, 461 U.S. at 437 n.12.  However, claims may be considered
related where they "involve a common core of facts or [are] based
on related legal theories,' and are therefore not severable[.]"
Green v. Torres, 361 F.3d 96, 98 (2d Cir. 2004) (quoting Hensley,
461 U.S. at 435.)

        Plaintiff avers that "[b]ecause the Joint Board achieved
its goal of holding Bergen Cove liable for the withdrawal
liability, the Court's dismissal of the Joint Board's alternative
ERISA claims provide no basis for reducing the Joint Board's
attorney's fee award."  (Pl.'s Support Memo at 11.)  Plaintiff
highlights that even if the Joint Board had prevailed on the
controlled group and/or evade-or-avoid claims they "would have
obtained nothing more than the withdrawal liability that the Joint
Board obtained on the alter ego claims."  (Id.)  Similarly,
Plaintiff argues all of its claims "arose from the same common
core of fact, namely, the withdrawal liability judgment against
Hall-Mark and Zizza & Co."  (Id. at 12; see also Pl.'s Reply at 9-
10.)  Specifically, Plaintiff notes "[a]ll three ERISA claims
rested on the theory that Zizza's conduct created links between
the judgment debtors and Bergen Cove that made Bergen Cove liable."
(Id.)  The interrelatedness of its claims, according to Plaintiff,
would make it "practically impossible to separate out what time
the Joint Board's attorneys spent on one claim versus another"
since "the litigation was one overall effort."  (Id.)

The Moving Defendants counter that the controlled group and evade-or-avoid claims were "factually and legally unrelated" to the alter-ego claim "and required completely different evidence to be collected during discovery and introduced at trial." (Defs.' Opp'n at 12.)[16]   Defendant proposes the Court apply a percentage decrease of Plaintiff's total hours to account for the work done on the unsuccessful claims.

Here, the Court finds no reduction warranted based upon Plaintiff's unsuccessful claims because they shared with Plaintiff's alter ego claim a common core of fact.  That is, each claim arose from the withdrawal liability judgment against

---

[16] Specifically, Defendant argues:

> The controlled group claim was based on Mr. Zizza's and certain trusts' ownership interests in Hall-Mark and Bergen Cove.

> The evade or avoid claims were based on Mr. Zizza purportedly transferring assets from Zizza & Company to Zizza & Associates, and then from Zizza & Associates to Bergen Cove.

> The alter ego claims, on the other hand, were based on the theory that Zizza & Company, Zizza & Associates and Bergen Cove had similar management, business purposes, operations, equipment, customers, supervision and ownership.  The alter ego claims did not rely on any ownership structure of Hall-Mark or any transfers of assets between Zizza & Company, Zizza & Associates and Bergen Cove.

(Id. at 12.)

Hall-Mark and Zizza & Co., and the subsequent actions taken by
Zizza to avoid paying that withdrawal liability, including the
transfer of his business from Zizza & Co. to Zizza & Associates
and then to Bergen Cove.  As highlighted at trial, there also
existed overlap in Plaintiff's claims such that the common core of
facts relevant to one claim were also relevant to others.[17]
Regarding the degree of success obtained: Prevailing on the alter
ego claim provides a total recovery for Plaintiff since all its
claims sought identical relief -- i.e., to hold the Moving
Defendants liable for the withdrawal liability.  As such, failure
to prevail on the evade-or-avoid, or controlled group claims does
not warrant a reduction in fees.

### 3. A Percentage Cut is Necessary However to "Trim the Fat" From Plaintiff's Fee Application

"To enable a court to determine the reasonableness of
the hours expended, a party seeking an award of attorneys' fees
must submit contemporaneous time records indicating the number of
hours expended and the nature of the work done."  Taaffe v. Life
Ins. Co. of N. Am., 769 F. Supp. 2d 530, 543 (S.D.N.Y. 2011)
(collecting cases).  When reviewing the overall reasonableness of
a fee application, "a district court is not required to 'set forth
item-by-item findings concerning what may be countless objections
to individual billing items[.]'"  Reiter v. Metro. Transp. Auth.

---

[17] (See e.g., Tr. 263:3-264:23; 265:4-267:13.)

of State of N.Y., No. 01-CV-2762, 2007 WL 2775144, at *13 (S.D.N.Y. Sept. 25, 2007) (quoting Lunday, 42 F.3d at 134); see also Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (recognizing "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application'" (quoting Carey, 711 F.2d at 1146)); Congregation Rabbinical Coll. Of Tartikov, Inc. v. Vill of Pomona, 188 F. Supp. 3d 333, 344 (S.D.N.Y. 2016) ("It is common practice in this Circuit to reduce a fee award by an across-the-board percentage where a precise hour-for-hour reduction would be unwieldy or potentially inaccurate" (quoting Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank of Austria Creditanstalt AG, No. 04-CV-3600, 2005 WL 3099592, at *7 (S.D.N.Y. Nov. 17, 2005))).

The Moving Defendants argue "the fees and costs incurred in this matter were escalated because of Plaintiff's and Plaintiff's counsel's own conduct." (Defs.' Opp'n at 15.) They elaborate, asserting "Plaintiff repeatedly amended its pleading, thereby causing the parties to incur additional fees and costs on motions to dismiss those pleadings." (Id.) Likewise, Defendants highlight "the parties [also] expended significant time and money on the issues of whether Defendants were entitled to a jury trial, whether Plaintiff could obtain the trust documents through a discovery request disguised as a trial subpoena, and the

Plaintiff's refusal to produce a witness for deposition." (<u>Id.</u>)
The Moving Defendants highlight these were issues upon which they
prevailed. (<u>Id.</u>)[18] The Moving Defendants argue courts in this
district countenance "fees should not be awarded where incurred
for unjustified tasks" and, thus, where necessary, "the district
court should exclude excessive, redundant or otherwise unnecessary
hours." (<u>Id.</u> (citations omitted).) Similarly, since Plaintiff is
not entitled to attorney's fees on the BCL claim, Defendant asserts
any time attributable to this claim must be excised from the fee
award. <u>See</u> <u>Finkel</u>, 2022 WL 970670, at *13 (striking jury's award
of attorney's fees and litigation costs incurred after October 23,
2009 and pursuant to New York Business Corporation Law).

        In reply, the Joint Board highlights its time entries
are fully compliant with Second Circuit requirements since "they
are contemporaneous time records specifying the date, hours
expended and the nature of the work done." (Pl.'s Reply at 11.)
Moreover, Plaintiff contends, like its own time entries, the Moving
Defendants' time entries do not break down the time worked on each
individual claim but, rather, detail work done on the litigation
as whole.

---

[18] Defendants also argue Plaintiff cannot seek reimbursement of
costs caused by any delay associated with the resignation from the
bar of Plaintiff's former counsel, though they do not expound upon
what costs were associated with that resignation or how they were
adversely impacted by the resignation.

Having conducted a thorough review of Plaintiff's billing records, the Court finds a twenty percent (20%) across-the-board reduction is appropriate to mitigate instances of duplicative and/or unnecessary billing, as well as instances where tasks could have been conducted by personnel billing at lower rates.  Additionally, the Court observes Plaintiff's billing entries do not separate time worked on individual claims; as such, the Court is unable to accurately determine the precise amount of time Plaintiff's counsel spent exclusively on BCL-related issues for which they are not entitled to recover attorney's fees.[19]  As such, a percentage decrease which also takes into consideration the time spent on this non-ERISA claim is appropriate.  See Marshall v. Deutsche Post DHL, No. 13-CV-1471, 2015 WL 5560541, at *13 (E.D.N.Y. Sept. 21, 2015) ("In lieu of a line item review and reduction of counsel's time, the Court will impose an across-the-board percentage cut in hours . . . in order to trim the excess from these billing entries.").

Accordingly, the Court awards Plaintiff's Counsel attorneys' fees as follows:

---

[19] While the Joint Board argued no reduction was warranted based upon its failure to prove either the evade-or-avoid or controlled group claims, it makes no such argument regarding the BCL claims. (See Pl.'s Support Memo, in toto; Pl.'s Reply, in toto.)

| Attorney Name | Position | Adjusted Hours (reduced 20%) | Adjusted Hourly Rate | Total ($) |
|---|---|---|---|---|
| Rachelson, Jani | Partner | 0.24 | 390 | 389.76 |
| Rachelson, Jani | Partner | 2.0 | 430 | 860.00 |
| Abram, Michael | Partner | 1.04 | 390 | 388.96 |
| Ciantra, Thomas | Partner | 0.8 | 430 | 344.00 |
| Vitale, Joseph | Partner | 0.08 | 430 | $34.40 |
| Hock, David | Partner | 5.6 | 375.00 | 2,100.00 |
| Hock, David | Partner | 201.28 | 390 | 78,499.20 |
| Hock, David | Partner | 243.84 | 410 | 99,974.40 |
| Hock, David | Partner | 47.2 | 430 | 20,296.00 |
| Leeds, Zachary | Partner | 0.24 | 410 | 98.40 |
| Leeds, Zachary | Partner | 0.64 | 430 | 275.20 |
| Adler, Michael | Partner | 396.2 | 430 | 170,366.00 |
| Adler, Michael | Partner | 105.92 | 450 | 47,664.00 |
| DeChiara, Peter | Partner | 132.72 | 430 | 57,069.60 |
| DeChiara, Peter | Partner | 143.68 | 450 | 64,656.00 |
| Harmon, Richard | Associate | 1.76 | 300 | 528.00 |
| Harmon, Richard | Associate | 4.32 | 300 | 1,296.00 |
| Harmon, Richard | Associate | 2.24 | 300 | 672.00 |
| Adler, Michael | Associate | 0.24 | 300 | $72.00 |
| Adler, Michael | Associate | 0.96 | 300 | 288.00 |
| Nesbitt, Daniel | Associate | 74.96 | 300 | 22,488.00 |
| Malloy, Kelly | Associate | 4.24 | 300 | 1,272.00 |
| Medina, Erika | Associate | 6.0 | 300 | 1,800.00 |
| Mackson, Tzvi | Associate | 1.52 | 300 | 456.00 |
| Mackson, Tzvi | Associate | 15.6 | 300 | 4,680.00 |
| Hurtado, Noelia | Associate | 59.28 | 285 | 16,894.80 |
| Hurtado, Noelia | Associate | 108.08 | 300 | 32,424.00 |

| Attorney Name | Position | Adjusted Hours (reduced 20%) | Adjusted Hourly Rate | Total ($) |
|---|---|---|---|---|
| Hurtado, Noelia | Associate | 4.08 | 300 | 1,224.00 |
| Berger, Benjamin | Paralegal | 0.96 | 90 | 86.40 |
| Berger, Benjamin | Paralegal | 4.32 | 95 | 410.40 |
| Ellis, Elizabeth | Paralegal | 45.28 | 95 | 4,301.60 |
| Tsuckerman, Lev. | Paralegal | 0.64 | 95 | 60.80 |
| Fitzgerald, Caitlin | Paralegal | 16.4 | 95 | 1,558.00 |
| Ellis, Peter | Paralegal | 20.32 | 95 | 1,930.40 |
| Kramer, George | Paralegal | 2.56 | 95 | 243.20 |
| Kramer, George | Paralegal | 20.08 | 100 | 2,008.00 |
| Kramer, George | Paralegal | 41.6 | 100 | 4,160.00 |
| McDaniels, Kelly | Paralegal | 17.6 | 95 | 1,672.00 |
| Viera, Clara | Paralegal | 27.76 | 95 | 2,637.20 |
| Lore, Matthew | Paralegal | 1.76 | 100 | 176.00 |
| Morrisey, Nycol | Paralegal | 11.6 | 100 | 1,160.00 |
| Brack, Katelyn | Law Clerk | 9.2 | 75 | 690.00 |
| Hart, Nicholas | Law Clerk | 0.72 | 75 | 54.00 |
| Cartwright, Briana | Law Clerk | 37.92 | 75 | 2,844.00 |
| Heydemann, Sarah | Law Clerk | 5.84 | 75 | 438.00 |
| Lynch, Michael | Law Clerk | 4.8 | 75 | 360.00 |
| Ettinger, Lori | Law Clerk | 14.32 | 75 | 1,074.00 |
| Malloy, Kelly | Law Clerk | 5.84 | 75 | 438.00 |
| Turner, Wes | Law Clerk | 3.68 | 75 | 276.00 |
| Brooks, Zachary | Law Clerk | 7.04 | 75 | 528.00 |
| Spwight, Montene | Law Clerk | 3.12 | 75 | 234.00 |
| Stevens, Jake | Law Clerk | 15.16 | 75 | 1,137.00 |

| Attorney Name | Position | Adjusted Hours (reduced 20%) | Adjusted Hourly Rate | Total ($) |
|---|---|---|---|---|
| Total | | 1883.28 | | 655,587.72 |

### 4. Plaintiff's Costs Must be Reduced

In addition to an award of attorneys' fees, the Joint Board seeks reimbursement of its Counsels' incurred costs and expenses, which are recoverable under ERISA.  See 1132(g)(2)(d); 1132(g)(1).  "Costs are defined by 28 U.S.C. § 1920, and include filing and subpoena fees, as well as costs of transcripts, printing, making copies, and disbursements for witnesses." King v. JCS Enters., Inc., 325 F. Supp. 2d 162, 171 (E.D.N.Y. 2004) (citing 28 U.S.C. § 1920).  Courts in the Second Circuit will also "generally award 'those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee paying clients.'" DeVito v. Hempstead China Shop, Inc., 831 F. Supp. 1037, 1045 (E.D.N.Y. 1993) (quoting Reichman v. Bonsignore, Brignati & Mazzotta, P.C., 818 F.2d 278, 283 (2d Cir. 1987)). "This excludes amounts that constitute an attorney's overhead, since those are not typically charged to a client." King, 325 F. Supp. 2d at 171 (citing LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998)).  However, "[i]t is well settled that

online legal research, general document delivery, and telephone charges are not recoverable costs under § 1920." LeBombard v. Winterbottom, No. 14-CV-0071, 2015 WL 9450838, at *1 (N.D.N.Y. Dec. 3, 2015) (collecting cases); see also King, 325 F. Supp. 2d at 171-72 (reasoning "[p]rivate market attorney fee rates reflect overhead costs like electronic research, just as they would reflect the cost of case reporters and other necessary books purchased for a law firm's library"); Torres v. Gristede's Operating Corp., No. 04-CV-3316, 2012 WL 3878144, at *5 (S.D.N.Y. Aug. 6, 2012). Indeed, costs associated with electronic research are "routinely disallowed in the Eastern District of New York." United States v. City of N.Y., No. 07-CV-2067, 2013 WL 5542459, at *12 (E.D.N.Y. Aug. 30, 2013) (quoting Coated Fabrics Co. v. Mirle Corp., No. 06-CV-5415, 2008 WL 163598, at *9 (E.D.N.Y. Jan. 16, 2008)).

Plaintiff's counsel seeks a total costs award of $30,284.92, broken down as follows: (1) Filing Fees ($350.00); (2) Service Costs ($540.00); (3) Transcripts ($4,288.15); (4) Electronic Research ($15,566.17); (5) Postage Costs ($55.12); (6) Overnight Delivery Costs ($374.25); (6) Copies ($5,193.30); (7) Overtime Costs ($533.01); (8) Plane Fare ($41.19); (9) Transportation ($1,515.10); (10) Meals ($449.30); (11) Printer Costs ($887.47); (12) Mileage ($108.36); and (13) hotel costs ($382.80). (See Adler Decl. at ¶¶ 31-45; see also Exs. A-D, ECF No. 241-2, attached to Pl.'s Motion.) In view

45

of the case law articulated above, the Court finds costs associated with electronic research should be disallowed since they are expected to be reflected in the attorneys' hourly rates. However, the remainder of the costs are allowable; moreover, the Court is satisfied with the documentation the Joint Board has provided to substantiate them. (Id.) As such, the Court awards Plaintiff's $14,718.75 in costs.

E. Plaintiff is Entitled to Prejudgment Interest at the IRC Section 6621 Rate

ERISA's mandatory fee provision further provides a court shall award, in addition to reasonable attorney's fees and costs, "interest on the unpaid contributions," and "an amount equal to the greater of-- (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent." 29 U.S.C. § 1132(g)(2)(B)-(C). "For purposes of [Section 1132(g)], interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." Id. Interest on withdrawal liability runs from the initial date the withdrawal liability was due. See Ferrara v. Heavy Constr. Lumber, Inc., No. 21-CV-2562, 2022 WL 1085380, at *5 (E.D.N.Y. Jan. 5, 2022) (calculating prejudgment interest due under § 1132(g)(2) and stating "[p]ursuant to ERISA, plaintiffs are entitled to an award of interest on unpaid withdrawal liability calculated from the

46

date that the first liability payment was due until the date of final judgment" (citing 29 U.S.C. § 1132(g)(2)(B)).

"Like an award of attorney's fees for a successful ERISA claim by an employee benefit plan participant, prejudgment interest is an element of [the plaintiff's] complete compensation." Slupinski v. First Unum Life Ins. Co., 554 F.3d 38, 53-54 (2d Cir. 2009) (internal quotations and citation omitted). Indeed, "[a]s the Supreme Court has explained, 'a monetary award does not fully compensate for an injury unless it includes an interest component.'" Id. (quoting Kansas v. Colorado, 533 U.S. 1, 10 (2001) (emphasis in original)). Likewise, "an award of prejudgment interest may be needed in order to ensure that the defendant [does] not enjoy a windfall as a result of its wrongdoing." Id.; see also Algie v. RCA Glob. Comms'ns, Inc., 891 F. Supp. 875, 899 (S.D.N.Y. 1994) ("[A]n award [of prejudgment interest] is particularly appropriate as a means of ensuring that plaintiffs are made whole and that defendants do not profit by their failure to comply with their ERISA obligations.") (emphasis in original); but see Slupinski, 554 F.3d at 54 ("[T]here may be circumstances in which an award of prejudgment interest should not be made, such as where the funds at issue have been placed in an interest-bearing account and the judgment orders that the entire account be paid to the plaintiff . . . or where the funds have been deposited with the court and the plaintiff could have, but

did not, seek a court order requiring that they be held in an interest-bearing account . . . [a]nd if the record revealed that the plaintiff had engaged in tactics that were dilatory." (citing Mendez v. Tchrs. Ins. & Annuity Assoc. & Coll. Ret. Equities Fund, 982 F.2d 783, 790 (2d Cir. 1992)).

To the extent Defendant argues Plaintiff is not entitled to an award of prejudgment interest because it is only "liable for the default judgment entered in the Prior Action" together with post-judgment interest, (Defs.' Opp'n at 18), this argument was raised previously and adjudicated by Judge Bianco in his July 31, 2017 oral ruling denying Moving Defendants' Motion for Interlocutory Appeal. Specifically, in that ruling Moving Defendants sought leave to file an immediate interlocutory appeal on four issues, the second being "[w]hether Zizza Associates and Bergen allegedly evaded or avoided ERISA withdrawal liability or merely a judgment." (Mot. for Interlocutory Appeal, ECF No. 121, at 1.) In denying said Motion, Judge Bianco stated he was "aware of no case law that suggests that when a judgment is entered . . . somehow the fact of withdrawal liability ceases to exist."[20] (See Interlocutory Appeal Tr., ECF No. 128, at 8:8-14.

---

[20] Additionally, the Court again determined:

> [O]verall with respect to the raising of the Peacock decision . . . it's the court's view that Peacock has no application here for the following reasons . . . Peacock, as well as

(citing <u>Cent. State Se. and Sw. Areas Pension v. Lloyd SZTANYO Tr.,</u> 693 F. Supp. 531 (E.D. Mich. 1988).)  Since the Court finds Plaintiff is entitled to mandatory attorney's fees and costs pursuant to Section 1132(g)(2), as part of that section, Plaintiff is also entitled to prejudgment interest measured at the IRC Section 6621 rate, as well as an additional amount equal to prejudgment interest.

Upon review of Plaintiff's prejudgment interest calculations, (<u>see</u> Interest Calculations, Ex. C), together with the published IRC Section 6621 rates,[21] the Court finds Plaintiff's calculations to be accurate; therefore, Plaintiff is awarded $159,517.67 in prejudgment interest pursuant to Section 1132(g)(2)(B), together with an additional amount equal to the

---

the Second Circuit precedent applying <u>Peacock</u>[,] made clear that district court's [sic] do not have subject magisterial jurisdiction over claim[s], based on theories of alter ego or successor liability that involved another entity's ERISA violation, -- and I emphasize this part -- unless some independent ground for federal jurisdiction exists.

(Interlocutory Appeal Hr'g Tr., ECF No. 128, at 8:20-9:9.)  Since Judge Bianco determined there were two independent bases of original jurisdiction asserted in this case, the Court found it had jurisdiction over Plaintiff's ERISA based Alter Ego claim. (<u>Id.</u> at 9:9-15.)

[21]   <span style="font-variant: small-caps">See   Employee Benefits Security Administration</span>, https://www.dol.gov/agencies/ebsa/employers-and-advisers/plan-administration-and-compliance/correction-programs/vfcp/table-of-underpayment-rates (last visited Dec. 4, 2023).

amount of interest owed for a total sum of $319,035.34.  See 1132(g)(2)(C); (see also Adler Decl., ¶ 55.)  Moreover, from May 3, 2022, until the date of judgment is entered prejudgment interest on the withdrawal liability continues to accrue at a per-diem rate of $29.94.  See Gesualdi v. Seacost Petroleum Prods., Inc., 97 F. Supp. 3d 87 (E.D.N.Y. 2015) (finding prevailing ERISA plaintiffs were entitled to "$4,160.16 in accrued interest on the outstanding withdrawal liability, through the filing of the instant motion, together with daily interest . . . for each day until judgment is entered" pursuant to § 1132(g)(2)(B)); Bd. of Trs. Of the UFCW Local 50 Pension Fund v. Baker Hill Packing Inc., No. 13-CV-1888, 2015 WL 867013, at *11 (E.D.N.Y. Feb. 27, 2015) ("[S]ince [d]efendant's withdrawal liability remains delinquent, daily interest continues to accrue until judgment is entered"); (Adler Decl., ¶ 53.)

    F. NY BCL Prejudgment Interest

        Pursuant to Section 5001 of the C.P.L.R:

        [i]nterest shall be recovered upon a sum
        awarded because of a breach of performance of
        contract, or because of an act or omission
        depriving or otherwise interfering with title
        to, or possession or enjoyment of, property,
        except that in an action of an equitable
        nature, interest and the rate and date from
        which it shall be computed shall be in the
        court's discretion.

C.P.L.R. § 5001(a).  "Pre-judgment interest attaches to [a] fiduciary duty breach where . . . the damages awarded [are]

50

compensatory for property damage." J. Barrows, Inc. v. Uvino, 514 F. App'x 23, 23 (2d Cir. 2013) (citing Lewis v. S.L. & E., Inc., 831 F.2d 37, 39 (2d Cir. 1987)); see also Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508-09 (2d Cir. 1991) ("[E]ven on a claim with equitable underpinnings, such as one for breach of fiduciary duty, [the statutory rate of] prejudgment interest would be mandatory where the only relief sought was compensatory damages.") (quoting United Bank Ltd. v. Cosmic Int'l, Inc., 542 F.2d 868, 878 (2d Cir. 1976)). Interest is to be computed "from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred." C.P.L.R. § 5001(b). Pursuant to C.P.L.R. § 5004(a), the statutory rate of interest in "nine per centum per annum."

Plaintiff avers "[u]nder New York law, prejudgment interest is mandatory on damages paid on a breach-of-fiduciary-duty claim." (Pl.'s Support Memo at 18.) Moving Defendants counter that such an award is discretionary because "Plaintiff brought his claim for breach of fiduciary duty against Mr. Zizza under BCL § 720, seeking an 'accounting' from Mr. Zizza." (Defs.' Opp'n at 20.) Defendant expounds, "New York law recognizes an 'accounting' as a distinctly 'equitable remedy . . . designed to require a person in possession of financial records to produce them, demonstrate how money was expended and return pilfered funds

51

in his or her possession.'" (Id. (citation omitted).)
Additionally, Moving Defendants contend Plaintiff had previously
argued that it sought equitable and restitutionary relief before
the Court.  Plaintiff demurs, highlighting that Judge Bianco
previously ruled its BCL claim was not a claim for equitable relief
when he found Defendant was entitled to a jury trial on that cause
of action.  (Pl.'s Reply at 12-13.)

        The Court agrees with the Joint Board in that whether
the BCL claim was equitable in nature, or sought monetary relief,
was an issue previously determined by Judge Bianco.  (See Req. for
Jury Trial Hr'g Tr., ECF No. 159 at 6-7 ("The Court notes that
although Plaintiffs point out that they use the word equitable and
seek equitable relief, . . . the case law is clear that to simply
characterize something as equitable if in reality it is seeking
monetary damages does not somehow bind the Court.  . . . [T]he
Court should not just look at the label that a plaintiff chooses
in their pleading, but look at the type of relief that in reality
is being sought.  And I believe that is the situation here.").)
Therefore, the Court determines prejudgment interest at the
statutory rate on Plaintiff's BCL claim is mandatory.  Having
reviewed Plaintiff's calculations on this issue, the Court finds
such calculations accurate.  (See Adler Decl. at ¶¶ 58-61.)  As
such, the Court awards prejudgment interest on Plaintiff's BCL
claim; such interest (1) equates to $404,029.51 through May 2,

2022, and (2) accrues at a per-diem rate of $88.49 from May 3, 2022, until the date of entry of Judgment.

To the extent not explicitly addressed, the Court has considered the remainder of the Moving Defendants' arguments and finds them to be without merit.

<u>CONCLUSION</u>

Accordingly, **IT IS HEREBY ORDERED that:**

I.   Plaintiff's Motion for Issuance of Judgment (ECF No. 241) is **GRANTED to the extent that:**

    A. As to Bergen Cove Realty Inc., Plaintiff is entitled to entry of judgment consisting of:

        1. **$273,209.00** in withdrawal liability principal;

        2. Mandatory attorney's fees pursuant to Section 1132(g)(2)(D) in the sum of **$655,587.72;**

        3. Costs pursuant to Section 1132(g)(2)(D) in the sum of **$14,718.75;**

        4. Prejudgment interest at the applicable IRC Section 6621 rate pursuant to Section 1132(g)(2)(B) in the sum of **$159,517.67.** Prejudgment interest shall continue to accrue at a per-diem rate of $29.94 from

May 3, 2022, until the date of entry of Judgment; and

5. A sum equal to the prejudgment interest awarded pursuant to Section 1132(g)(2)(C)(i), equating to **$159,517.67.**

B. As to Salvatore J. Zizza Plaintiff is entitled to entry of Judgment consisting of:

1. **$358,862.05** in damages; and

2. Mandatory prejudgment interest on its New York Business Corporation Law claim pursuant to C.P.L.R Section 5001 at the statutory rate (9%), through May 2, 2022, for a sum equating to **$404,029.51.** Prejudgment interest shall continue to accrue at a per-diem rate of $88.49 from May 3, 2022, until the date of entry of Judgment; and

II.   The Moving Defendants' Motion for Attorney's Fees
(ECF No. 242) is **DENIED IN ITS ENTIRETY.**


                        SO ORDERED.

                        /s/ JOANNA SEYBERT
                        Joanna Seybert, U.S.D.J.

Dated:  December 6, 2023
        Central Islip, New York